No. 13-14376-P

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

DOYLE LEE HAMM,

Petitioner-Appellant,

v.

RICHARD ALLEN,

Commissioner of the Alabama
Department of Corrections,

Respondent-Appellee.

_____

## APPELLANT'S BRIEF
_____

BERNARD E. HARCOURT
COLUMBIA LAW SCHOOL
Jerome Green Hall 515
435 West 116th Street
New York, New York 10027
Phone: (312) 404-5061
Email: harcourt@uchicago.edu

_Counsel for Doyle Lee Hamm_

No. 13-14376-P                                         *Hamm v. Allen*

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies that the following persons may have an interest in the outcome of this case:

Allen, Richard — Commissioner, Department of Corrections and Respondent;

Bowdre, Karon Owen – United States District Court Judge;

Crenshaw, J. Clayton – Assistant Attorney General;

Cunningham, Patrick – Victim;

Dobbs-Ramey, Kimberly – Prior counsel for Petitioner-Appellant;

Hamm, Doyle Lee – Petitioner-Appellant;

Harcourt, Bernard E. – Counsel for Petitioner-Appellant;

Hardeman, Donald – Cullman County Circuit Court Judge;

Harris, Hugh – Prior counsel for Petitioner-Appellant;

Hughes, Beth Jackson – Assistant Attorney General;

King, Troy – Alabama Attorney General;

Nail, Pamela – Prior counsel for Petitioner-Appellant;

Nunnelley, Kenneth – Former Assistant Attorney General;

Roden, Douglas – Co-defendant;

Roden, Regina – Co-defendant; and

Williams, Martha – Prior counsel for Petitioner-Appellant.

STATEMENT REGARDING ORAL ARGUMENT

Petitioner-Appellant Doyle Lee Hamm respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules. This is a capital case in which the death penalty was improperly imposed due to a combination of (a) trial counsel's ineffective assistance during the penalty phase of Mr. Hamm's trial and (b) the jury and judge's improper consideration of an invalid and unconstitutional prior conviction from the state of Tennessee.

The issues in this case are unique and procedurally complex for a number of reasons: first, because the state court, in Rule 32 post-conviction proceedings, immediately adopted *verbatim* and wholesale, without the slightest alteration, the 89-page "PROPOSED MEMORANDUM OPINION" that was written and submitted to the circuit court by the Alabama Attorney General—without even striking the term "PROPOSED"—rendering the final state judgments on the merits and on procedural matters suspect and unreliable; second, because the district court below ruled on Mr. Hamm's claims without a hearing and without properly addressing the problematic treatment Mr. Hamm received in state court in Rule 32; and third, because the mutually inconsistent procedural and merits rulings that the state courts made when they adopted the "PROPOSED MEMORANDUM

OPINION" would benefit from oral argument, questioning and answering before this Court.

Moreover, this case raises complex questions about the Supreme Court's evolving jurisprudence surrounding the recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which makes room for equitable relief on claims that have never before been heard substantively.

Mr. Hamm's case raises a number of difficult *Martinez* issues at the heart of all three of his substantive claims: first, regarding the fact that the merits of his challenge, under *Boykin v. Alabama*, 395 U.S. 238 (1969), to his prior Tennessee conviction have never been reviewed by a state or federal court; second, regarding the question of ineffective assistance of Rule 32 counsel in relation to the claim of ineffective assistance of counsel at the penalty phase; and third, regarding the applicability of the Supreme Court's decision in *Martinez* to a *Brady v. Maryland*, 373 U.S. 83 (1963) claim.

For all these reasons, Mr. Hamm firmly believes that oral argument would assist the Court in ruling on this death penalty habeas corpus appeal and he respectfully requests oral argument.

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C–1

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

ARGUMENT AND CITATIONS TO AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

I.    IMPROPER INTRODUCTION AND USE OF PRIOR TENNESSEE CONVICTION. . . 9

II.    INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO DEVELOP
MITIGATION EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III.    THE STATE OF ALABAMA VIOLATED *BRADY V. MARYLAND* . . . . . . . . . . . . .   49

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  59

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  60

TABLE OF CITATIONS

<u>Cases</u>

*Ake v. Oklahoma*, 470 U.S. 68 (1985). .................................................................35

*Bottoson v. Moore*, 234 F.3d 526 (11th Cir. 2000)..................................................46

*Boyd v. Allen*, 592 F.3d 1274 (2010) ........................................................................6

*Boykin v. Alabama*, 395 U.S. 238 (1969) ......................................................... passim

*Brady v. Maryland*, 373 U.S. 83 (1963); .............................................................1, 57

*Brown v. Sanders*, 546 U.S. 212 (2006) ............................................................ 28, 29

*Brownlee v. Haley*, 306 F.3d 1043 (11th Cir. 2002)........................................ 33, 46

*Capri Adult Cinema v. Tennessee*, 537 S.W.2d 896 (Tenn. 1976)........................23

*Cunningham v. Zant*, 928 F.2d 1006 (11th Cir. 1991) .............................................49

*Dobbs v. Turpin,* 142 F.3d 1383 (11th Cir. 1988) ...................................................42

*Douglas v. California*, 372 U.S. 353 (1963)...........................................................14

*Drew v. Dep't. of Corr.,* 297 F.3d 1278.................................................................28

*Ex parte Hamm*, 564 So.2d 469 (Ala. 1990) ......................................... 2, 49, 50, 55

*Ex parte Monk*, 557 So.2d 832 (Ala. 1989) ............................................................51

*Ex parte Pierce*, 851 So.2d 606 (Ala. 2000)..........................................................15

*Ferrell v. Hall*, 640 F.3d 1199 (11th Cir. 2011) ........................................ 41, 44, 45

*Fisher v. United States,* 425 U.S. 391 (1976) ........................................................19

*Gamble v. Sec'y, Fla. Dep't of Corr*., 450 F.3d 1245 (11th. Cir 2006) ...................6

*Gardner v. Florida*, 430 U.S. 349 (1977)................................................................14

*Gideon v. Wainwright*, 372 U.S. 335 (1963) .................................................... 14, 21

*Hamm v. Alabama*, 498 U.S. 1008 (1990)...............................................................2

*Hamm v. Allen*, No. 5:06-cv-00945-KOB, 2013 WL 1282129 (N.D. Ala. 2013)

  ............................................................................................................... passim

*Hamm v. State*, 564 So.2d 453 (Ala. Crim. App. 1989) .......................................2, 5

*Hamm v. State*, 913 So.2d 460 (Ala. Crim. App. 2002) ................................. passim

*Hardwick v. Crosby*, 320 F.3d 1127 (11th Cir. 2003) ............................................31

*Jackson v. Herring*, 42 F.3d 1350 (11th Cir. 1995).................................................42

*Johnson v. Mississippi*, 486 U.S. 578 (1988)................................................. 8, 13, 24

*Johnson v. Secretary, Dept. of Corrections*, 643 F.3d 907 (11th Cir. 2011).... 31, 43

*King v. Strickland*, 714 F.2d 1481 (11th Cir. 1983) ................................................20

*King v. Strickland* 467 U.S. 1211 (1984)...................................................................20

*King v. Strickland* 748 F.2d 1462 (11th Cir. 1984).                                        20

*Kyles v. Whitley*, 514 U.S. 419 (1995)                                              54, 55

*Lackawanna v. Coss*, 532 U.S. 394 (2001).......................................... 14, 24, 27, 28

*Macklin v. Singletary*, 24 F.3d 1307, 1311 (11th Cir. 1994)...................................28

*Marks v. United States*, 430 U.S. 188 (1977) ..........................................................27

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012) ...................................................... passim

*Melson v. Allen*, 548 F.3d 993, 997 (11th Cir. 2008). ...............................................6

*Rompilla v. Beard*, 545 U.S. 374 (2005) ........................................... 16, 17, 19, 32

*Strickland v. Washington*, 466 U.S. 668 (1984). ........................................... passim

*Tennessee v. Mackey*, 553 S.W.2d 337 (Tenn. 1977),...............................................23

*Thompson v. State*, 444 So.2d 899 (Ala. Crim. App. 1984) .....................................15

*Todd Kelvin Wessinger v. Burl Cain, Warden*, No. 04-637, 2012 U.S. Dist. LEXIS
  68396 at *8 (M.D. La. May 15, 2012).....................................................22

*Tyler v. Kemp*, 755 F.2d 741, (11th Cir. 1985)........................................................20

*United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007)...........................27

*Wiggins v. Smith*, 539 U.S. 510 (2003).................................................. 17, 18, 31, 33

*Williams v. Allen*, 542 F.3d 1326, 1340 (11th Cir. 2008)................................. 42, 43

*Williams v. Taylor*, 529 U.S. 362........................................................ 31, 32, 33, 46

## Statutes

28 U.S.C. § 2254 ...................................................................... vi, 3, 5, 16

§ 13A-5-40(a)(2), Code of Alabama 1975.................................................................2

28 U.S.C. § 2241(d) ...................................................................................... vi

Federal Rule of Civil Procedure 59(e) .................................................................. vi

STATEMENT OF JURISDICTION

Jurisdiction was proper in the United States District Court for the Northern District of Alabama under 28 U.S.C. § 2254, because it was the district where Hamm was convicted and sentenced to death. *See* 28 U.S.C. § 2241(d). The district court entered a final judgment, denying Mr. Hamm's habeas petition on March 27, 2013. Mr. Hamm timely filed a motion to alter judgment under Federal Rule of Civil Procedure 59(e) on April 22, 2013, which the district court granted in part and denied in part on August 15, 2013. On September 12, 2013, Mr. Hamm filed a timely notice of appeal. This Court granted a Certificate of Appealability on January 13, 2014. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1291, 1294(1), and 2253(a).

STATEMENT OF THE ISSUES

1) Whether the district court erred in denying Mr. Hamm's federal constitutional challenge to the introduction and use of his prior Tennessee conviction as an aggravating circumstance, where (a) the prior Tennessee conviction rested on an invalid plea in clear violation of *Boykin v. Alabama*, 395 U.S. 238 (1969); (b) Mr. Hamm was denied the effective assistance of counsel in his prior case in Tennessee and in these capital proceedings in Alabama; and (c) Mr. Hamm was actually innocent of the underlying offense charged in Tennessee.

2) Whether the district court erred in denying Mr. Hamm's federal constitutional ineffective assistance of counsel claim with respect to counsel's failure to present mitigating evidence at the penalty phase.

3) Whether the district court erred in denying Mr. Hamm's federal constitutional claim with respect to the alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and also whether the district court erred in finding that the Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), did not apply to these three claims and did not constitute cause to excuse potential procedural bars.

STATEMENT OF THE CASE

This is a habeas corpus case in which the death penalty has been imposed. Doyle Hamm is incarcerated on death row at Donaldson Correctional Facility in Bessemer, Alabama.

A. *Proceedings and Dispositions Below*

Mr. Hamm was convicted of the capital offense of murder during the course of a robbery under § 13A-5-40(a)(2), Code of Alabama 1975, on September 26, 1987. On September 28, 1987, a sentencing hearing was conducted and the jury returned a verdict in favor of death by a vote of 11 to 1. The circuit court sentenced Mr. Hamm to death on December 1, 1987. On June 16, 1989, the Alabama Court of Criminal Appeals affirmed Mr. Hamm's conviction and death sentence. *Hamm v. State*, 564 So.2d 453 (Ala. Crim. App. 1989). The Alabama Supreme Court granted certiorari and affirmed on March 23, 1990, and denied rehearing on June 15, 1990. *Ex parte Hamm*, 564 So.2d 469 (Ala. 1990). On December 3, 1990, the United States Supreme Court denied certiorari review. *Hamm v. Alabama*, 498 U.S. 1008 (1990).

Mr. Hamm filed a Rule 32 petition on December 3, 1991. The circuit court held a hearing on July 26, 1999, and denied relief on December 6, 1999. Vol.11-PCR-29. The Alabama Court of Criminal Appeals affirmed the judgment on

February 1, 2002. *Hamm v. State*, 913 So.2d 460 (Ala. Crim. App. 2002). The Alabama Supreme Court denied certiorari review on May 20, 2005.

On May 16, 2006, Mr. Hamm timely filed his first and only petition for habeas corpus relief in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 2254. (Doc. 1) On March 27, 2013, the district court denied relief. *Hamm v. Allen*, No. 5:06-cv-00945-KOB, 2013 WL 1282129 (N.D. Ala. 2013) (Doc. 35). The district court also denied a motion to reconsider (Doc. 39), and *sua sponte* declined to issue a certificate of appealability for any of Mr. Hamm's claims (Doc. 41). Mr. Hamm timely filed a notice of appeal and a motion with this Court for a certificate of appealability. On January 13, 2014, this Court granted a certificate of appealability limited to the issues raised in this brief (Doc. 7).

B. *Statement of the Facts*

This case grows out of the tragic death of Patrick Cunningham in Cullman County, Alabama. On the night of January 24, 1987, Mr. Cunningham was working as the night clerk at the Anderson Motel and was fatally shot during the course of a robbery. Vol.2-TR-259. Two individuals were initially found in the car used to commit the crime: Regina Roden and Douglas Roden.  Vol.3-TR-489-504. The Rodens claimed that they had been kidnapped by Mr. Hamm and held in captivity at gunpoint. Vol.3-TR-489; Vol.5-TR-907; Vol.5-TR-838. After time in

3

detention in the county jail (Vol.5-TR-855-56), Regina and Douglas Roden changed their story and told the police that they were the unwitting accomplices to Doyle Hamm, who was the trigger-man. Vol.5-TR-832; Vol.5-TR-916.

At the guilt-phase, the state presented the accomplice testimony of Regina and Douglas Roden, who both testified in exchange for lenience (Vol.5-TR-902; Vol.5-TR-843), and a statement obtained from Doyle Hamm after lengthy interrogation (Vol.6-TR-1080). As the court below noted, "both of the Rodens entered into an agreement with the state whereby they would testify against appellant at trial, which they did, in exchange for being allowed to plead guilty to lesser offenses." *Slip op.* at 3. Apart from that, there was no direct, independent evidence, nor any physical evidence, as to who pulled the trigger.

The jury penalty phase trial began on September 28, 1987 at 11:15 a.m. Vol.7-TR-1201. Mr. Hamm's attorney made a two-page opening statement. Vol.7-TR-1210. The state incorporated the evidence from the guilt phase and moved to admit only two exhibits, State's Exhibits No. 1-A and 1-B, corresponding to the prior Tennessee convictions from 1978. Vol.7-TR-1213. Mr. Hamm's attorneys called only two witnesses, *see* Vol.7-TR-1214 to 1240. That same day, the jury returned a death verdict by 4:30 P.M. by a vote of 11 to 1. Vol.7-TR-1307.

The circuit court sentenced Mr. Hamm to death on the basis of two aggravating circumstances:  (1) the prior convictions in Tennessee; and (2) the fact

4

that the murder occurred during the course of a robbery, which was already included in the jury's guilt-phase verdict. *Hamm v. State*, 564 So.2d at 466

In state post-conviction, undersigned counsel discovered a wealth of mitigating evidence that is presented and summarized *infra* in Part II.B, and contained in the record of this appeal. The evidence was admitted at the Rule 32 hearing. Vol.21-PCH-5-7. Subsequent to the hearing, on Friday, December 3, 1999, the Alabama Attorney General filed a "PROPOSED MEMORANDUM OPINION" with the circuit court. Vol.11-PCR-29 (stamped "FILED IN OFFICE DEC 3, 1999"). The very next business day, on Monday, December 6, 1991, the circuit court signed the "PROPOSED MEMORANDUM OPINION" without so much as removing the word "proposed" or making a single alteration to the document. Vol. 11-PCR-117 (stamped "FILED IN OFFICE DEC 6, 1999").

C. *Statement of the Standard of Review*

An application for a writ of habeas corpus shall be granted if a state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This Court reviews *de novo* a district court's denial of habeas relief. *Gamble v. Sec'y, Fla. Dep't of Corr*., 450 F.3d 1245, 1247 (11th Cir. 2006). Specifically,

this Court applies *de novo* review to the district court's resolution of questions of law and of mixed questions of law and fact and to its "conclusion concerning the reasonableness of the state court's application of federal law." *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010). The district court's factual findings are reviewed for clear error. *Melson v. Allen*, 548 F.3d 993, 997 (11th Cir. 2008).

SUMMARY OF THE ARGUMENT

This capital habeas appeal raises *three independent grounds for relief*, which will be addressed in this order in the brief: (1) the improper introduction of a prior 1978 Tennessee conviction as an aggravating circumstance at the 1987 capital trial in Alabama; (2) trial counsel's ineffective assistance of counsel in conducting such limited investigation and presenting insufficient mitigating evidence at the penalty phase; and (3) the prosecutor's failure to disclose exculpatory *Brady* evidence regarding the pathological unreliability of Douglas Roden.

The second ground—trial counsel's ineffective assistance in marshaling mitigation evidence—is the simplest claim, both procedurally and on the merits, and as a result is the most legally compelling in this case and clearly entitles Mr. Hamm to a new death penalty sentencing hearing. Trial counsel called only two witnesses at his death sentencing—Mr. Hamm's sister and a bailiff—who presented in their combined testimony the equivalent of 25 pages of typed

transcript, *see* Vol.7-TR-1214 to 1240. *Their testimony takes 19 minutes to read*. The entire examination of the bailiff only took two pages of transcript. Vol.7-TR-1239-41. Counsel's representation clearly fell below *Strickland v. Washington*, 466 U.S. 668 (1984).

The first ground for relief—the improper use of the Tennessee prior conviction—is technically more complicated, but extremely compelling and clearly meritorious. Mr. Hamm urges this Court to focus on this consequential claim. A simple review of the 2,000-word plea hearing in Tennessee in February 1978 (*see* Vol.13-PCR-522-537) demonstrates that Mr. Hamm was not notified of his privilege against self-incrimination or his right to confront witnesses, in direct violation of *Boykin v. Alabama*, 395 U.S. 238 (1969). The facts surrounding the use of the Tennessee plea as an aggravating circumstance in his death penalty trial raise *three separate and independent constitutional reasons* to grant Mr. Hamm a new penalty phase hearing—and together, they constitute clear constitutional error:

First, as a substantive matter, it was improper for the Alabama jury and sentencing court to consider the prior Tennessee conviction obtained in patent violation of *Boykin v. Alabama* as an aggravating circumstance. In a death penalty case, if a jury and sentencing court use an invalid prior out-of-state conviction as an aggravating circumstance, the death sentence is unconstitutional. *Johnson v. Mississippi*, 486 U.S. 578, 586 (1988).

Second, it was well established at the time that trial counsel had a duty to investigate prior convictions that would be used as aggravating circumstances. *Strickland v. Washington*, 466 U.S. 668 (1984); *Johnson v. Mississippi*, 486 U.S. 578 (1988). Had Mr. Hamm's trial counsel *simply requested and read* the transcript of the 1978 Tennessee plea hearing, the prior conviction could have been excluded because the transcript, on its face, reveals that the plea hearing was unconstitutional.

Third, Mr. Hamm's trial counsel was woefully inadequate in failing to ensure that the capital jury in Alabama was not informed that Mr. Hamm was charged with "ARMED ROBBERY" in a death penalty case involving armed robbery-murder.

There should be little doubt that the combination of these three errors entitles Mr. Hamm to a new penalty phase hearing before a capital jury.

The third ground for relief—the *Brady* violation—although a guilt-phase claim in this posture, also militates heavily in favor of a new death penalty sentencing hearing. The entire question surrounding guilt was whether Douglas Roden or Doyle Hamm was the trigger person. The state's case rested primarily on the credibility of the two accomplices, Regina and Douglas Roden, and therefore the failure to turn over the impeachment evidence regarding Douglas Roden was

especially prejudicial. This error clearly affected the jurors' deliberations about a life or death sentence.

The last state court judgments on each of the three grounds discussed in this brief is the decision of the Alabama Court of Criminal Appeals dated February 1, 2002, in *Hamm v. State*, 913 So.2d 460 (Ala. Crim. App. 2002), *cert. denied* (Ala., May 20, 2005). That decision adopted all of the merits and procedural rulings from the Attorney General's 89-page "<u>PROPOSED MEMORANDUM OPINION</u>," immediately signed by the circuit court *verbatim*, without even striking the word "proposed" or making a single edit on the 89 pages, and for that reason are not independent judicial findings. In any event, they are contrary to and involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

ARGUMENT

I.    IMPROPER INTRODUCTION AND USE OF PRIOR TENNESSEE CONVICTION

On February 2, 1978, Doyle Hamm pled guilty to two counts of simple robbery in Tennessee, at a perfunctory plea hearing during which he was *not* informed of his constitutional right to be free from self-incrimination, *not* informed of his constitutional right to confront witnesses, and *not* informed that by pleading guilty he was waiving those bedrock constitutional rights, in direct violation of *Boykin v. Alabama*, 395 U.S. 238 (1969). The short transcript of the plea hearing

from February 2, 1978—which amounts to less than 2,000 spoken words—is in the record of this habeas corpus litigation at Vol.13-PCR-522-537. At the close of the rapid plea hearing, the Tennessee circuit judge, the county prosecutor, and his defense counsel erroneously told Mr. Hamm that he had *no* right to review of his guilty plea.

Prior to and during his capital murder trial in 1987, Appellant's defense attorney, Mr. Hugh Harris, *did not* investigate Mr. Hamm's 1978 Tennessee conviction, *did not* so much as request a copy of the transcript of the 1978 Tennessee plea hearing, *did not* challenge the admission of the prior Tennessee conviction, and *did not* even ensure that the exhibits received into evidence for the jury to consider in jury deliberations did not prejudicially state that Mr. Hamm had been suspected of two counts of "ARMED ROBBERY" when in fact he had only pled guilty to *simple* robbery.

A subsequent investigation of Mr. Hamm's 1978 Tennessee conviction revealed that Mr. Hamm was actually innocent of robbery, that Mr. Hamm did not voluntarily plead guilty to simple robbery, that Mr. Hamm's defense counsel in Tennessee made no investigation of the alleged robbery, and that Mr. Hamm was denied the effective assistance of counsel at his Tennessee plea hearing. Undersigned counsel challenged the Tennessee conviction in Tennessee state court in 1992, and pursued federal habeas corpus relief with an appeal to the U.S. Court

of Appeals for the Sixth Circuit and *certiorari* denial at the Supreme Court. The full record of those proceedings is before this Court (Vol.12-PCR-213 through Vol.15-PCR-852) and demonstrates that Mr. Hamm was innocent of the charged robbery in Tennessee.

    A. *The Tennessee Plea Hearing Was Unconstitutional*

As a straightforward factual matter, a review of the short, 2,000-word transcript of the plea hearing, in the record at Vol.13-PCR-522-537, reveals that no one in Tennessee—neither the state judge, nor the prosecutor, nor defense counsel—informed Mr. Hamm of his constitutional right to confront his accusers and his constitutional privilege against self-incrimination, or that, by pleading guilty, he was waiving these bedrock constitutional rights.  This failure-to-inform clearly violates *Boykin v. Alabama*, 395 U.S. 238, 243–44 (1969). As a result, Mr. Hamm was unaware that he had the privilege against self-incrimination and the right to confront his accusers: "I didn't know all the rules about me not having to testify, about my lawyer being able to ask questions of the witnesses, and about me having the right to have my witnesses testify." Vol.13-PCR-552 (Doyle Hamm Affidavit at paragraph 22). The only thing the trial court explained to Doyle was his right to a trial by jury:

> <u>The Court</u> - I'm going to ask you these questions now, do you understand you have an absolute right to a trial by jury, do you understand that?

11

<u>A.</u> -        Yes, sir.

<u>The Court</u> -  You understand you have a right to a trial by a jury and that the jury would pass on your guilt or innocence and fix your punishment if found guilty; do you understand that if you waive a jury trial, the Judge of the Court will pass on your innocence or guilt and fix your punishment if you're found guilty; do you understand that?

<u>A.</u> -        Yes, sir.

Transcript of Plea at page 3 (Vol.13-PCR-524).

Mr. Hamm was *only* notified of the right to a jury trial. He was never informed—and did not know—of any other rights guaranteed by the Constitution. Had he known of those rights, Mr. Hamm would not have pled guilty:

If I had known . . . that I could have this whole trial with cross-examination and arguments, I never would have done what Travis Gobble told me to do [plead guilty.] I did not rob anybody and I know now that I could have proven that at trial. Doyle Hamm Affidavit at paragraph 23 (Vol.13-PCR-552).

Doyle Hamm never had the constitutionally guaranteed process to ensure that he understood the impact and import of his plea. As a result, Mr. Hamm was denied the protections of the Constitution. In *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969), the Supreme Court squarely held that a defendant must voluntarily and understandingly enter a guilty plea and must understand what he is foregoing by pleading guilty.

12

At the time of the plea, Doyle Hamm was twenty years old. He had barely finished the ninth grade, and his reading level was in the bottom first percentile of the country. *See infra* Part II.B. Doyle Hamm had never before been through a criminal trial and was unfamiliar with court procedure. Mr. Hamm incorrectly believed that had the case gone to trial, he would have had to disclose his use of marijuana and his fighting. *See* Doyle Hamm Affidavit at paragraph 22 (Vol.13-PCR-552). The evidence in the record is undisputed that at no time did the trial judge, the prosecutor, or trial counsel ascertain whether Mr. Hamm understood the rights he was waiving. *See* Gobble Affidavit (Vol.13-PCR-574 et seq.) and Doyle Hamm's Affidavit (Vol.13-PCR-546 et seq.). Doyle Hamm would not have pled guilty if he had known the rights he was waiving. Vol.13-PCR-552. Under these circumstances, Mr. Hamm's guilty plea was clearly invalid under *Boykin*.

B. *The rule in* Johnson v. Mississippi *applies*

In *Johnson v. Mississippi*, 486 U.S. 578 (1988), the capital defendant was convicted of murder and sentenced to death based on a prior felony conviction that was later reversed. The Court held that the invalidity of the prior conviction affected the validity of the later death sentence based on that conviction. *Id.* at 586. The Court noted that "The fundamental respect for humanity underlying the Eight Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate

13

punishment' in any capital case." *Id*. at 584 (quoting *Gardner v. Florida*, 430 U.S. 349, 363-64 (1977)).

In Mr. Hamm's case, the *Johnson* rule applies for several reasons: first, because this is a death penalty case and the Supreme Court has never extended to the capital context the non-capital limitations to the *Johnson* rule articulated in *Lackawanna v. Coss*, 532 U.S. 394 (2001); second, because *Coss* was decided more than eleven years after Mr. Hamm's trial and appeal, and therefore it is the *Johnson* rule that applied at the relevant time; third, because Doyle Hamm's conviction in Tennessee involved the outright denial of the right to the effective assistance of counsel and the right to counsel on appeal, in direct violation of *Gideon v. Wainwright*, 372 U.S. 335 (1963), *Douglas v. California*, 372 U.S. 353 (1963), and *Strickland v. Washington*, 466 U.S. 668 (1984), which would negate any such non-capital limitations; and fourth, because Mr. Hamm's situation is the rare type of case where, after the time for collateral review of the underlying prior conviction has expired, a defendant obtains evidence of actual innocence. These latter two points throw Mr. Hamm's case squarely within the two narrow, exceptional circumstances that Justice O'Connor set forth in *Lackawanna v. Coss,* 532 U.S. at 405-06—which represent "the narrowest grounds" of interpretation of the *Coss* decision, *see* Part I.G below—and that effectively would revert this case

back to the *Johnson* rule. As a result, Mr. Hamm's case falls within the *Johnson* rule.

C. *The Last State Ruling is an Unreasonable Application of Federal Law*

The last state court decision was clearly in error because it contains two inconsistent holdings. First, it holds that the claim that the Tennessee convictions were unconstitutionally obtained "could have been raised on trial or on appeal," and therefore was procedurally barred. *Hamm v. State*, 913 So.2d 460, 479. But in the very next paragraph, the state court holds that counsel was effective even though counsel failed to discover that the convictions were invalid and challenge them. *Id*. Both of these contentions cannot be true: either trial counsel was in fact effective, in which case counsel would have undertaken a reasonable investigation of the prior conviction under the circumstances and with due diligence, discovered the invalidity of the prior, *Thompson v. State*, 444 So.2d 899, 901 (Ala. Crim. App. 1984); or a reasonable investigation could not unearth the invalidity of the conviction, and the claim could not have been raised on trial or direct appeal. *See Ex parte Pierce*, 851 So.2d 606, 616 (Ala. 2000). It is clear error for the state court to hold both that the claim could have been raised and that counsel was effective.

With regard to the state and district courts holdings that the *Johnson* claim is procedurally barred because it was not raised at trial or on direct appeal (*slip op.* at 64-65), cause and prejudice for any such failure to raise the claim is established by

15

the inadequate assistance of counsel, discussed in the next section. Moreover, as discussed in Part I.F below, this case raises a pervasive *Gideon*-type problem that places it squarely within the ambit of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

D. *The Failure to Investigate the Prior is Ineffective Assistance of Counsel*

The district court acknowledged that Mr. Hamm's trial counsel "limited" his investigation of the prior Tennessee convictions "to obtaining copies of the Tennessee convictions," *Hamm v. Allen*, *Slip op*. at 89. Nonetheless, the court concluded that such a "limited" investigation satisfies a capital defendant's right to counsel. This is contrary to *Strickland v. Washington*, 466 U.S. 668 (1984), as evidenced by the Court's recent opinion in *Rompilla v. Beard*, 545 U.S. 374 (2005), where the Court made clear that counsel has an obligation to investigate the prior conviction file, to specifically "look at … that [prior conviction] file, *including the transcript*," *id.* at 384 (emphasis added), and to challenge unreliable prior convictions that will be used against a defendant.

The Supreme Court decided *Rompilla* after the last state court judgment in this case; however, the very same standard of review applies in this case and was articulated in *Rompilla*, 545 U.S. at 380, as follows:

> Under 28 U.S.C. § 2254, Rompilla's entitlement to federal habeas relief turns on showing that the state court's resolution of his claim of ineffective assistance of counsel under *Strickland v. Washington, supra*, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1). An "unreasonable application" occurs when a

16

state court "'identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." That is, "the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." (internal quotations omitted)

That standard of review applied in *Rompilla*, as it does here. As in *Rompilla*, Mr. Hamm is entitled to relief because, under the well-established *Strickland* test:

> The notion that defense counsel must obtain information that the State has and will use against the defendant is not simply a matter of common sense. As the District Court points out, the American Bar Association Standards for Criminal Justice in circulation at the time of Rompilla's trial describes the obligation in terms no one could misunderstand in the circumstances of a case like this one.

*Rompilla*, 545 U.S. at 387.

Seeing that the Court has "long referred [to these ABA Standards] as guides to determining what is reasonable," *id*. (internal quotation marks omitted), it is clear that trial counsel's failure to investigate Mr. Hamm's prior Tennessee convictions contravenes the same "objective standard of reasonableness" and "prevailing professional norms" that the Supreme Court applied in *Rompilla*. *Id*. at 380 (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

Trial counsel's failure to review the plea hearing transcript cannot be excused as "an informed tactical decision" about how his time would be best spent. *Id*. at 395 (O'Connor, J., concurring). For such a tactical decision to be deemed reasonable, it must have been based upon some knowledge that suggests further

17

investigation would be fruitless or counterproductive. *Id*. at 383 (citing *Wiggins*, 539 U.S. at 525). Since investigation of the plea hearing transcript would have quickly revealed that the plea hearing was unconstitutional, defense counsel could not have had any reasonable basis for determining that reading the transcript was unnecessary. Indeed, based on the knowledge that Mr. Hamm's prior conviction would be "at the very heart of the prosecution's case," *id*. at 394 (O'Connor, J., concurring) (emphasis omitted), trial counsel had every reason to believe that reading the transcript was vital.

Trial counsel testified that, because he "contacted the various courts in Tennessee where [Mr. Hamm's] convictions were and [got] copies of the convictions" in preparation for trial, he "knew exactly what [Mr. Hamm] had actually been convicted of in Tennessee" and that the convictions were "consistent with what Doyle had told [him] all along with those cases." Vol.21-PCR-16. The district court inferred from that—completely inappropriately—that Mr. Hamm had confessed his guilt to trial counsel. *Slip op.* at 88. This is entirely at odds with the post-conviction record, which includes rock-hard evidence of Mr. Hamm's actual innocence coming from the mouth of the alleged-victim in the Tennessee case. *See* Vol.13-PCR-565-69.

The lower court's speculative fact-finding is also at odds with the evidence in the record regarding what trial counsel and Doyle Hamm spoke about. As is clear

from the record, *see* Vol. 21, Tab. 42, pages 7-39, the only thing that Mr. Hamm and Harris spoke about regarding the Tennessee convictions was what Mr. Hamm had pled guilty to: it is the plea process, not guilt or innocence, that "came back exactly like [Hamm] told [Harris] that they happened." *Id.* at 38-39. As a matter of factual inference, the only proper inference from the short examination of Harris (*see slip op.* at 88 n. 32) is that Mr. Hamm was never asked whether he was actually innocent, but only whether and what he pled guilty to.

Insofar as the lower court's fact finding is purely speculative, it is clearly erroneous. Moreover, the inference plainly infringes on the attorney-client privilege, one of the most fundamental and constitutionally-based privileges of the accused. *See Fisher v. United States,* 425 U.S. 391, 403 (1976). It is difficult to fathom how the district court could make such a significant and important factual finding regarding attorney-client privileged communications without holding an evidentiary hearing on the matter.

In any event, as a legal matter under *Strickland*, trial counsel's conduct did not constitute a "reasonable effort[] to review the prior conviction *file*" because, aside from the convictions, "defense counsel did not look at any part of that file, *including the transcript*." *Rompilla*, 545 U.S. at 384, 385 (emphasis added). Absent defense counsel's "efforts to learn the details," *id*. at 386, and consequently

challenge the 1978 Tennessee conviction, defense counsel could not effectively rebut the prosecution's aggravation case.

E. *The Legal Representation Was Otherwise Deficient and Prejudicial*

Mr. Harris also failed to adequately make sure that the evidence of the two convictions presented to the jury were purged of the incorrect references to "ARMED ROBBERY." The trial court did not allow the indictments into evidence because they charged Doyle Hamm with a greater crime (armed robbery) than that of which he was convicted (simple robbery); nevertheless, the judgments of conviction were admitted into evidence as State's Exhibits 1-A and 1-B. State's Exhibit 1-A bears a caption in large, capitalized letters that says "ARMED ROBBERY," and both Exhibit 1-A and 1-B state in the text of their very first paragraphs that Doyle Hamm has been arraigned upon the indictment for "Armed Robbery." Vol.8-TR-1562-63.

At the penalty phase of a capital trial, defense counsel has a duty to object to inadmissible evidence and to see that the sentencer exercises its discretion in accordance with constitutional principles and the law. *See, e.g.*, *Tyler v. Kemp*, 755 F.2d 741, 745 (11th Cir. 1985) (overruled on other grounds); *King v. Strickland*, 714 F.2d 1481, 1490-91 (11th Cir. 1983), *vacated and remanded*, 467 U.S. 1211 (1984), *adhered to on remand*, 748 F.2d 1462, 1463-64 (11th Cir. 1984). Since Mr. Hamm's jury was presented with completely *inaccurate* information, defense

counsel's conduct was clearly "outside the wide range of professionally competent assistance" and constituted ineffective assistance of counsel. *Strickland*, 466 U.S. 668, 690 (1984).

The last state court and the district court ruled that trial counsel was effective because he actually objected to the admission of this evidence. *Hamm v. State*, 913 So.2d at 488; *Hamm v. Allen*, *Slip op.* at 121-122. And indeed he did. Vol.7-TR-1213. Moreover, the circuit court granted that objection. And yet, defense counsel made no effort to ensure that the ruling was complied with or that the misleading information was withheld from the jury. It is doubly ineffective that trial counsel would prevail on his objection, but then not even pay enough attention to notice that the prejudicial evidence went into the jury room anyway.

F. *The Gideon Problem Is Pervasive*

The fact that a *Gideon*-type right to effective assistance of counsel problem *permeates* Mr. Hamm's claim regarding the prior Tennessee conviction militates, in this specific case, in favor of granting the habeas corpus petition. This case is somewhat unique insofar as the *Gideon*-type errors permeate Mr. Hamm's claim *at every level*: from the original ineffective assistance of trial counsel Travis Gobble at the 1978 plea in Tennessee; to Mr. Gobble's subsequent ineffective assistance on the question of appeal; to the ineffective assistance of Doyle Hamm's capital trial counsel in Alabama in 1987; to the ineffectiveness assistance of those same

attorneys on appeal from 1988 through 1990; and to the ineffective assistance of Mr. Hamm's Rule 32 counsel during the Rule 32 proceedings, especially during the Rule 32 hearing in 1999.

The pervasiveness of the *Gideon*-type problem puts this federal habeas case on all fours with the narrow exception for relief that the Supreme Court has begun to carve out in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). As the district court held in *Todd Kelvin Wessinger v. Burl Cain, Warden*, No. 04-637, 2012 U.S. Dist. LEXIS 68396 at *8 (M.D. La. May 15, 2012), *Martinez* "provides for equitable relief in situations where a petitioner would otherwise not have the substance of a claim heard."

In this case, the *Martinez* limited circumstance applies and requires that the Court grant relief: first, Hamm was sentenced to death on the basis of a prior conviction from Tennessee that has *never* been reviewed by a court of law; second, the evidentiary record, on its face—*i.e.*, the transcript of the Tennessee plea colloquy alone—establishes the unconstitutionality of the underlying prior; third, the evidentiary record in this federal habeas corpus case establishes that Mr. Hamm is actually innocent of the underlying offense to which he pled guilty in Tennessee and which formed the aggravating circumstance in his Alabama death penalty case; and fourth, the evidentiary record also clearly establishes that Mr. Hamm was

denied the effective assistance of counsel in Tennessee and was wrongly told by the Tennessee judge that he had no right of appeal.[1]

Despite all this, *not one single judge* since Mr. Hamm was sentenced to death has ever reviewed the Tennessee conviction on the merits—as a result of a succession of *Gideon*-type problems. This Court should not allow a man to go to his death without at least one merits review of the constitutionality of the aggravating circumstance. To fail to do so, and avoid substantive review by means of purely procedural hurdles, would amount to a straightforward violation of the principles of equity which drove the Court's holding in *Martinez*.

---

[1] The district court erred in believing that there was no right to appeal a plea of guilty in Tennessee for *Boykin* violations in 1978, as evidenced by the case of *Tennessee v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), decided six months earlier, a case in which the Tennessee Court of Criminal Appeals had heard an appeal from a guilty plea and the Supreme Court of Tennessee affirmed in relevant part. The district court erroneously believed that *Capri Adult Cinema v. Tennessee*, 537 S.W.2d 896, 899 (Tenn. 1976) (cited in *Slip opinion* at 62)) barred appeal of all guilty pleas in Tennessee at the relevant time. In fact, *Capri* recognizes that appeal would be possible on jurisdictional questions, such as where the plea was involuntary—as Mr. Hamm's plea was because of the *Boykin* violations. *See Capri*, 537 S.W.2d at 898. *Mackey* is the relevant precedent, but *Capri* is consistent with *Mackey*, not contrary as the lower court apparently believed. In any event, the relevant question is the right to appeal as a matter of federal, not state, constitutional law, and on that score, Mr. Hamm had a right of review of the *Boykin* violations. *See Boykin v. Alabama*, 395 U.S. 238 (1969); *Douglas v. California*, 372 U.S. 353 (1963). To be sure, a plea of guilty waives all entitlement to appeal "*non-jurisdictional and procedural defects*" of the plea process. *Tollett v. Henderson*, 411 U.S. 258, 262-6 (1973). But Doyle Hamm's challenges to his guilty plea rested entirely upon constitutional infirmities in the plea process which invalidated his guilty plea.

G. *This Court Should Address the Merits*

The district court ruled that the claims regarding the Tennessee prior conviction were barred under the limitations created in *Lackawanna v. Coss*, 532 U.S. 394 (2001). However, as noted earlier, the Supreme Court has never extended the *Coss* restrictions to a death case, so *Johnson v. Mississippi* applies. The *Johnson* rule was also in effect during Mr. Hamm's appeal.

But even if this Court reviews Mr. Hamm's case under *Coss*, Mr. Hamm is nevertheless entitled to review on the merits because, first, this case involves the denial of a *Gideon* right, and second, this is a case of actual innocence.

First, as noted earlier, there is a *Gideon*-type right to counsel problem that permeates the claim regarding the prior Tennessee conviction *at every level*, and the pervasiveness of the *Gideon* problem puts this federal habeas case on all fours with the narrow exception articulated in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and in *Coss*.

Second, Mr. Hamm is innocent of the Tennessee charge. The evidence is in the record of this appeal (Vol.12-PCR-213 through Vol.15-PCR-852). Very briefly, it consists of the following newly discovered evidence from the 1992 post-conviction investigation: Don Harrison, who Mr. Hamm is accused of robbing, states under oath that he was never robbed by Mr. Hamm. On the night in question, Mr. Harrison and Mr. Hamm were smoking marijuana together and subsequently

got into a fist-fight. *See* Harrison Affidavit at para. 14 (Vol.13-PCR-556). Harrison was later approached by the police and he and a friend "were very worried about our own welfare. The police officers looked as if they were about ready to take us in on marijuana charges, so we told them we had been assaulted at Tony's place and robbed." *Id*. at para. 18 (Vol.13-PCR-557). Mr. Harrison implicated Mr. Hamm and, when he went back to the precinct a week later, was concerned "to tell the same story I had told the night of the incident, particularly because my father accompanied me and was paying very close attention to what was going on." *Id*. at para. 21 (Vol.13-PCR-558).

After Mr. Harrison gave his original statement, he was never again asked any further questions, never had any subsequent contact with Doyle Hamm, was never contacted by the state, and was never interviewed by attorneys for Mr. Hamm. *Id*. at para. 22 (Vol.13-PCR-558). At the time of the allegations and hearing, and unbeknownst to either Mr. Hamm's attorney or the court, Mr. Harrison had been arrested for possession of marijuana in the Spring of 1977 and pled guilty early the next year—one month before Mr. Hamm's hearing. *Id*. at para. 11 (Vol.13-PCR-556).

In addition, eye-witnesses also offer newly discovered evidence proving that Mr. Hamm was innocent. Mr. Jimmy Ray Johnson, who was with Mr. Hamm that evening, states that no robbery occurred and that the only interaction between Mr.

Hamm and Mr. Harrison was a late-night fight. *See* Affidavit of Jimmy Ray Johnson at paras. 9, 10 (Vol.13-PCR-561). Mr. Johnson, an eye-witness, was never contacted by the state or by Mr. Hamm's attorney. *Id*. at para. 12 (Vol.13-PCR-562). Mr. Ronald Dale Hollins was also an eye-witness to the fight between Mr. Hamm and Mr. Harrison. He states that there was no robbery. *See* Affidavit of Ronald Dale Hollins at para. 3 (Vol.13-PCR-563). He was not contacted by the state or by Mr. Hamm's attorney. *Id*. at para. 4 (Vol.13-PCR-564). Mr. Mickey Lee was also at Tony's Lounge on September 17, 1977. He saw the fight between Mr. Harrison and Mr. Hamm and testifies that there was no robbery. *See* Affidavit of Mickey Lee at para. 7 (Vol.13-PCR-565-66). He was arrested with Mr. Hamm on that night, but was soon released. He was never contacted by the state or by Mr. Hamm's attorney. *Id*. at para. 10 (Vol.13-PCR-566). Mr. David Leo Hamm, Doyle Hamm's older brother, also testifies about the fight between Mr. Hamm and Mr. Harrison. *See* Affidavit of David Leo Hamm (Vol.13-PCR-567). Mr. David Hamm was never contacted by the state or by Mr. Hamm's attorney. *Id*. at paras. 17-18 (Vol.13-PCR-568-69).

Doyle Hamm's appointed attorney in Tennessee failed to contact any of these eye-witnesses and failed to discuss the allegations with the complainant. The evidence itself conclusively establishes that Doyle Hamm is actually innocent of the underlying Tennessee charge that led to his conviction of two counts of simple

robbery. Doyle Hamm exercised due diligence in finding this evidence and presenting it to the state courts and the court below.

As a legal matter, the lower court erroneously believed that Justice O'Connor's plurality opinion in *Coss* was not controlling on whether actual innocence could be considered an exception to the limiting principle articulated in that case. *See Slip op.* at 63. As the lower court recognized, Justice O'Connor's plurality opinion stated that actual innocence was an exception to the result in *Coss*; but then the court failed to apply the rule of *Marks v. United States*, 430 U.S. 188 (1977), and instead concluded that the plurality opinion was not controlling. As this Court has recognized, "*Marks* expressly directs lower courts, including this Court, that '[w]hen a fragmented [Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding ... may be viewed as that position taken by those Members who *concurred in the judgments* on the narrowest grounds." *United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007). In *Coss*, the narrowest ground among those who concurred in the judgment was the view that actual innocence of the prior conviction remained open as a potential exception to the limiting principle expressed in that

case, where the challenge to the prior conviction has never been heard on the merits. Therefore the exception in *Coss* remains open.[2]

At the very least, this case should be remanded to the District Court with instructions to hold an evidentiary hearing on the merits of the evidence of actual innocence, and for a finding on whether Mr. Hamm was diligent in procuring this evidence. *See Drew v. Dep't. of Corr.,* 297 F.3d 1278, 1283 (11th Cir. 2002); *cf. Macklin v. Singletary*, 24 F.3d 1307, 1311 (11th Cir. 1994).

H. *Consideration of the Tennessee Conviction Was Not Harmless*

It would be improper to find that any error in considering the invalid prior conviction as an aggravating circumstance was harmless in this case. In *Brown v. Sanders*, 546 U.S. 212 (2006), the Supreme Court announced a uniform rule for determining when constitutional error will result from the application of invalid aggravators (to be applied in weighing and non-weighing states alike): "An invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing

_____

[2] Moreover, in *Coss*, three justices dissented and would have allowed challenges to predicate convictions *under any circumstances. See Coss*, 532 U.S. at 408 (Souter, J., joined by Stevens and Ginsburg, JJ., dissenting) (adhering to view that challenges to predicate convictions should be allowed). There were therefore at least six votes for the direct proposition that actual innocence was explicitly left open as an exception to the limitations in *Coss*.

factors enables the sentencer to give aggravating weight to the same facts and circumstances." *Id*. at 220. Thus, constitutional error occurs "where the jury could not have given aggravating weight to the same facts and circumstances under the rubric of some other, valid sentencing factor." *Id*. at 221.

Under the rule in *Brown*, Mr. Hamm is entitled to relief. Since "the jury could not have given aggravating weight to the same [prior-conviction-related] facts and circumstances under the rubric of some other, valid sentencing factor," *id*. at 221, the invalid prior conviction sentencing factor "add[ed] an improper element to the aggravation scale in the weighing process," *id*. at 220. Thus, Mr. Hamm's sentence is unconstitutional, reliance on his invalid prior conviction was not harmless error, and he is entitled to habeas corpus relief.

II.    INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO DEVELOP MITIGATION EVIDENCE

The time it took to present Mr. Hamm's mitigation at the penalty phase may have set a record: It took about 19 minutes. This in a case where undersigned counsel discovered more than 2,000 pages of mental health, medical, educational, family and criminal mitigation records that independently corroborate a psychologist's findings that Doyle Hamm suffers from brain damage and impaired judgment. At his capital trial, Doyle Hamm's attorneys decided, instead of presenting this evidence, to simply call Mr. Hamm's sister, Ruthie, and a deputy

sheriff who, in one page of monosyllabic testimony, stated that Mr. Hamm had been "cooperative" while pending trial.

The penalty phase jury trial began on Monday morning, September 28, 1987 at 11:15 A.M. Vol.7-TR-1201. Defense counsel presented, in mitigation, the equivalent of 25 pages of transcript, *see* Vol.7-TR-1214 to 1240—just in time for the jury to go to lunch. That same day, September 28th, the jury heard closing arguments starting at 2:00 p.m. (Vol.7-TR-1244) and returned a death verdict by 4:30 P.M. by a vote of 11 to 1. Vol.7-TR-1307. Doyle Hamm was sentenced to death in record breaking time—including a long lunch break.

The district court nevertheless concluded that Mr. Hamm was not entitled to relief on his claim of ineffective assistance because defense counsel had presented some mitigating evidence at the trial and therefore, "the jury *was well aware of Hamm's piteous background, poor education, and mental and medical difficulties*." *See Slip op.* at 106 (emphasis in original). Putting aside the question of whether Mr. Hamm's background should properly be called "piteous," there is clearly no basis in the record to conclude that the jury was aware of the extent of Mr. Hamm's mental difficulties given that there was absolutely *no psychological or psychiatric expert testimony or evidence* presented at the penalty phase.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), an ineffective assistance of counsel claim has two components: deficient performance and

30

prejudice. In this case, Mr. Hamm's trial counsel's incompetent representation satisfies both prongs of *Strickland*, and the state court decisions unreasonably failed to grant appropriate relief.

A. *Trial Counsel's Performance Was Deficient*

An attorney's performance is constitutionally deficient if it falls "below an objective standard of reasonableness" based on "prevailing professional norms." *Strickland*, 466 U.S. at 688. For a case in which the death penalty is imposed, this standard requires trial counsel to conduct a thorough investigation for potentially relevant mitigation evidence in the defendant's background, including his childhood, social history, and mental health. *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003). Indeed, "the most essential purpose of the sentencing proceeding was for defense counsel to present the jury with background mitigating information to enable . . . an individualized sentence based on the particular circumstances of [petitioner]'s life and the murder." *Hardwick v. Crosby*, 320 F.3d 1127, 1180 (11th Cir. 2003). As this Court has explained, the question of deficient performance is "whether [trial counsel] conducted an adequate background investigation or reasonably decided to end the background investigation." *Johnson v. Secretary,* 643 F.3d 907, 931 (11th Cir. 2011).

The last state court ruled on the merits of the *Strickland* challenge, stating that—referring of course to the Alabama Attorney General's 89-page

"PROPOSED MEMORANDUM OPINION" that the circuit court signed *verbatim*:

> We agree with the circuit court's finding that defense counsel were not ineffective for failing to introduce at trial the records that were introduced at the Rule 32 hearing. The attorneys investigated Hamm's background and that of his family, and presented this information through the testimony of Hamm's sister. This type of strategy is virtually unassailable. *Strickland v. Washington,* 466 U.S. 668, 689–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Hamm v. State*, 913 So.2d at 487.

That holding is clearly erroneous and contrary to *Strickland* and *Williams v. Taylor*, 529 U.S. 362 (2000), as evidenced, for example, by *Rompilla v. Beard*, 545 U.S. 374 (2005). In *Rompilla*, the Supreme Court found defense counsel ineffective at the penalty phase of a capital case precisely for failing to investigate and present available mitigating evidence despite the fact that at trial, counsel presented the testimony of "five of [the defendant's] family members." 545 U.S. at 378. As in *Rompilla*, the mere fact that Mr. Hamm's counsel presented *some* mitigation (his sister) did not alleviate counsel of the responsibility to investigate and present the type of mitigating evidence placed in the record by petitioner in state postconviction. Both the Supreme Court and this Court have held that the type of evidence that Mr. Hamm presented in his Rule 32 hearing—and that was never presented to the jury—is the type of evidence that is crucial to present in mitigation. *See Wiggins v. Smith*, 539 U.S. 510, 535 (2003) (counsel ineffective for

failing to present evidence of defendant's "diminished mental capacities"); *Williams v. Taylor*, 529 U.S. 362, 369 (2000) (counsel ineffective for failing to present, *inter alia*, evidence that defendant was "borderline mentally retarded"); *Brownlee v. Haley*, 306 F.3d 1043, 1071 (11th Cir. 2002) (counsel ineffective for failing to investigate and present, *inter alia*, the "powerful mitigating evidence of [defendant's] borderline mental retardation").

B. *A Wealth of Mitigating Evidence – None of It Presented*

Mr. Hamm's attorneys failed to investigate, discover, and present *a wealth of documents and testimonial evidence* that could have been presented at the sentencing. *See* Vol.11-PCR-128 through Vol.12-PCR-212; Vol.15-PCR-978 through Vol.17-PCR-1399; and Supplemental PCR (Exhibits). This documentary evidence includes lengthy criminal records of his family members, his school records, and his medical and mental health records. PCR-978-1399; Supplemental PCR (Exhibits). The testimonial evidence includes the testimony of a social worker, Gaye Nease, and of a psychologist, Dr. Dale Watson. Vol.11-PCR-177-212; Supplemental PCR (Exhibits). In essence, Mr. Harris tried to show that Doyle Hamm had significant mental health problems and came from a terrible background *without introducing the kind of documentary evidence* that proves these allegations. Without these documents, the bald assertions of his sister, Ruthie Murphy, sounded like a bunch of lies made up for the sentencing hearing. Yet

everything that Ruthie Murphy said could have been corroborated by documentary evidence—evidence that *could not have been fabricated for the jury*. There is no acceptable reason—no possible strategic reason—why Mr. Harris did not corroborate Ruthie Murphy's testimony with this wealth of mitigating evidence, documentary and testimonial.

There is *a wealth of documentary evidence concerning Doyle Hamm's medical history, including his history of seizures and drug and alcohol abuse* that was never even investigated. Vol.17-PCR-1311 to 1399; Vol.16-PCR-1195 to Vol.17-PCR-1275; Supplemental PCR. These records reveal that Mr. Hamm had a history of seizures, which is indicative of brain damage, a history of head injuries, which cause brain damage, and a history of drug, alcohol and other substance abuse. As a sample of these voluminous records, when he was living in Booneville, Mississippi in 1980, he was reported as having a seizure disorder, Vol.17-PCR-1273, and in 1981, he was being prescribed Dilantin (an epilepsy drug) and was reported to have a "chronic seizure disorder," Vol.17-PCR-1331. These records corroborate other documentary evidence about schooling, family background, and mental health disorders. *See e.g.* Vol.17-PCR-1368. Although Mr. Hamm's attorney, Mr. Harris, inquired into his mental health with his sister, Ruthie Murphy, at trial, Mr. Harris did nothing to prove up Doyle's mental health impairments.

Gaye Nease, a social worker, interviewed a large number of family members, relatives, and friends of Doyle Hamm, and had a wealth of information to present about those interviews, which would have corroborated his extremely poor background and history of substance abuse and head injuries. *See* Vol.11-PCR-185-211; Supplemental PCR. Most of that evidence was incorporated in a *Chronology* that Nease prepared and that was admitted at the post-conviction hearing. All of that evidence corroborates the testimony presented by Ruthie Murphy. It, too, should have been presented at the sentencing hearing by Mr. Harris.

Moreover, Mr. Harris failed to have Doyle Hamm evaluated by an independent psychologist, despite Mr. Hamm's right to have an expert appointed in his defense under *Ake v. Oklahoma*, 470 U.S. 68 (1985). Had he done so, he would have been able to prove that Mr. Hamm was suffering from "neuropsychological impairment and presumptively brain damage" and that "these impairments are sufficient to have a significant impact upon his daily functioning." Vol.11-PCR-181.

There is *a wealth of original school records from when Doyle Hamm was a little boy* that were never investigated, obtained, or presented at trial by his defense counsel. *See* Vol.17-PCR-1276-1310; Supplemental PCR. These records reveal that Doyle Hamm had an extremely difficult time in school. He regularly received

Ds, U[nsatisfactory]s, and N[eeds improvement]s in reading, spelling, writing, science, and social studies. Vol.17-PCR-1295-96. His standardized test scores in the eighth grade placed him in the *bottom first percentile of the nation for reading and the bottom fourth percentile in the nation for spelling.* Vol.17-PCR-1299. His attendance was very poor, Vol.17-PCR-1296, and he eventually dropped out of the ninth grade after several social promotions. Vol.17-PCR-1290.

This documentary evidence corroborates entirely Dr. Dale Watson's diagnosis of Doyle. Dr. Watson found that Doyle Hamm is in the "borderline range of measured intellectual ability overall." Vol.11-PCR-165. Dr. Watson found that Doyle is in the bottom 1st percentile for reading and spelling, and in the bottom 0.5 percentile for arithmetic—meaning that 99% of the comparable American population reads, spells, and does arithmetic better than him. Dr. Watson diagnosed a 19-point difference between verbal and performance IQ, which "increases the probability of left hemisphere brain dysfunction." Vol.11- PCR-166. Dr. Watson concludes that "there are significant limitations in his verbal intellectual abilities, indications of impaired 'executive functions,' academic deficits likely due to learning disabilities and motor impairments. These impairments are sufficient to have a significant impact upon his daily functioning." Vol.11-PCR-168. Based on these findings, Dr. Watson diagnosed

"neuropsychological impairment and presumptively brain damage." Vol.11- PCR-168.

None of this evidence was investigated or developed or presented to the jury by Mr. Harris. Mr. Harris concedes that he did nothing to get any of these records. *See* Transcript of Rule 32 Hearing at 12 (in Vol.21-PCR). Yet they would have been crucially important to show to the jury the level of intellectual functioning at which Doyle Hamm operates, and the degree to which his judgment was impaired—putting aside the drugs and alcohol that he had consumed. Hamm's impaired judgment is what Mr. Harris' own mitigation case *was all about.* As Mr. Harris explained, their strategy at trial was to show that Doyle's background excused his actions:

> our strategy was just to present—and I still believe today that I don't know that any of us sitting here today could have come up under the circumstances that Doyle came up and not been in a situation exactly like Doyle was.

Vol.21-PCR-41. Mr. Harris' conduct at the penalty phase was unreasonable because he did nothing to investigate and prove up that strategy.

In addition, there are detailed and extensive records about the criminal history of Doyle Hamm's father, uncles, and brothers. The records are overwhelming. To give this Court just a glimpse of these records (the complete records are in the post-conviction record at PCR-978-1276), they reveal the following *sample* of convictions for Major Edward Hamm, Doyle's father:

| | |
|---|---|
| 10/27/47 | Major Edward charged case #17115 (Drunk) City of Sheffield, AL |
| 01/25/48 | Major Edward charged in Florence Alabama (Public Drunk) |
| 05/07/48 | Major Edward charged case # 1795, City of Tuscumbia, AL |
| 09/16/48 | Major Edward charged case # 20,480 (Drunk) City of Sheffield, AL |
| 10/03/49 | Major Edward charged case # 3,905, City of Tuscumbia. |
| 01/21/49 | Major Edward charged case # 21,654 (Drunk) City of Sheffield, AL |
| 10/12/51 | Major Edward charged case # 32,214 (DWI) City of Sheffield, AL |
| 02/09/52 | Major Edward charged case # 35,269 (Drunk) City of Sheffield, AL. |
| 07/31/52 | Major Edward charged case # 3,908 (public drunk) Colbert County |
| 11/20/52 | Major Edward charged case # 3,908 (bond forfeiture) Colbert County |
| 03/19/54 | Major Edward charged case #967 (public drunk) City of Tuscumbia |
| 03/22/54 | Major Edward charged in City of Tuscumbia, AL (Public Drunk) |
| 03/28/55 | Major Edward charged in City of Tuscumbia, AL (public drunk) |

*See* PCR-978-979.

The records also reveal the following *sample* of charges against Doyle's brothers:

| | | | | |
|---|---|---|---|---|
| 1957-1969 | James | Grand Larceny | Colbert Cty CC | 9886 |
| 1957-1969 | Horace | Forgery | Colbert Cty CC | 10,140 |
| 1957-1969 | Horace | Burg 2nd | Colbert Cty CC | 10,295 |
| 1970-1977 | Roy | hwy intox | Colbert Cty | 7016 |
| 1970-1977 | Roy | hwy intox | Colbert Cty | 7664 |
| 1970-1976 | Jimmy | Burg 2nd | Colbert Cty CC | 10,736 |
| 1970-1976 | Jimmy | Burg 2nd | Colbert Cty CC | 10,734 |
| 1970-1976 | Jimmy | Shooting into dwell | Colbert Cty | 3909 |
| 1970-1976 | Jimmy | Burg 2nd | Colbert Cty CC | 11,247 |
| 1970-1976 | Jimmy | Burg  2nd | Colbert Cty CC | 11,248 |
| 08/05/65 | Horace # 13,775 Lauderdale County, AL. (Assault and Battery) | | | |
| 08/05/65 | Horace # 13,776 Lauderdale County, AL. (Malicious Injury) | | | |
| 05/07/74 | Jimmy # CC11,147, Colbert County, AL (Assault intent Murder) | | | |
| 05/07/74 | Jimmy #CC 11,146, Colbert County, AL. (Assault intent Murder) | | | |
| 05/07/74 | Horace # 1108, Colbert County, Al. (Assault intent Murder) | | | |
| 03/23/77 | Horace #DC 77-000671, Colbert County, Al.(Assault intent murder) | | | |
| 03/23/77 | David # DC 77-000670, Colbert County, AL (Assault intent Murder) | | | |
| 07/00/78 | Danny # 4,162, City of Boonville, Ms. (Juvenile - simple assault) | | | |
| 04/16/79 | Danny # 5,198, City of Boonville, MS. (Assault 2nd) | | | |
| 05/09/79 | Danny # 5,361, City of Boonville, MS. (Assault) | | | |

38

*See* PCR-978-1276. Again, this is a *small sample of the voluminous criminal records* of the Hamm family.

At the post-conviction hearing, Mr. Harris claimed that, even if he had investigated and found these documents, he would not have wanted to go into these materials at trial. He claimed that "the majority of that information would have been detrimental to Doyle, and as a trial tactic we would not have gone into those issues." Transcript of Hearing at 14. *That, however, is simply not true.* It is not credible—in fact, in this particular case, it is a straight lie. The truth of the matter is that at the sentencing hearing, Mr. Harris *did* go into these matters. During the examination of Ruthie Hamm—the only mitigation witness, other than the deputy sheriff—Mr. Harris had Ruthie testify (1) that brother James was incarcerated for burglary or grand larceny, Vol.7-TR-1216; (2) that brother Roy served time in the penitentiary, Vol.7-TR-1217; (3) that brother Horace was in prison for burglary or grand larceny, Vol.7-TR-1217; (4) that brother Jimmy was incarcerated at Parchman Prison in Mississippi, Vol.7-TR-1218; (5) that brother O'Neal was incarcerated at Parchman Prison in Mississippi, Vol.7-TR-1218; (6) that brother Danny was incarcerated at Parchman Prison in Mississippi for robbery, Vol.7-TR-1219; and (7) that Doyle's father had been sent home from the penitentiary on a grand larceny charge to die. Vol.7-TR-1220. Mr. Harris had Ruthie testify that her

father made all the children drink, and that he would say "If you don't steal, you are not a Hamm." Vol.7-TR-1225. Yet none of this superficial testimony by Ruthie Murphy was credible or believable *because Mr. Harris presented no documentary evidence to prove it*. Mr. Harris' conduct was unreasonably deficient in failing to prove up what sounded like preposterous testimony. Mr. Harris knew about this evidence. He conceded at the post-conviction hearing that "Although we did not have the exact documents, we knew of the extensive history of the members of his family, which was brought out at the sentencing phase." Transcript of Hearing at 13.

Those documents were needed to prove the allegations brought out in Ruthie's testimony. But Mr. Harris presented *no* documentary evidence. He presented *no* mental health experts. In effect, he presented *no* evidence to prove his defense strategy. He just called Mr. Hamm's sister, Ruthie Murphy—and did *nothing* to corroborate her testimony. He also conducted a two-page examination of a deputy sheriff.

Finally, the district court erred when it stated that much of the evidence presented here was not admitted into evidence in the post-conviction court. *See Slip op.* at 95. Doyle Hamm specifically asked the court to "admit into evidence and consider in support of my Rule 32 Petition all of the evidence that I sent to the courts." Vol.21-PCH-5. The Rule 32 court granted Mr. Hamm's motion and

received all the records into evidence. Vol.21-PCH-6. The lower court's statement that the evidence was not admitted into evidence is clearly erroneous. Any technical defect in the request for admission should be resolved in Mr. Hamm's favor in light of the fact that he was effectively proceeding *pro se* at the Rule 32 hearing.[3]

### C. *This Amounts to Deficient Conduct of Counsel*

By this Court's standards, Mr. Harris' performance was clearly deficient under the first prong of *Strickland*. In *Ferrell v. Hall*, 640 F.3d 1199, 1231 (11th Cir. 2011), trial counsel's performance was found deficient where he failed to uncover available mitigating evidence regarding the defendant's mental health problems and difficult childhood, and, significantly, "failed to adequately utilize the witnesses who did testify on his behalf." *Id.* As the Court made clear in that case, simply calling a witness to testify does not amount to adequate performance: an attorney in a capital case must also do whatever is reasonably within his or her power to adequately use the witnesses they call. Mr. Harris utterly failed to do so. Counsel's use of—or, more accurately, complete failure to use—Ruthie Murphy as

---

[3] If there is any question as to the admission of the voluminous mitigation evidence and exhibits, this would raise a clear *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) issue. At the Rule 32 hearing, Mr. Hamm was formally represented by an attorney, Pam Nail, and it would have amounted to ineffective assistance of counsel for Ms. Nail to fail to ensure the proper admission of the exhibits or, alternatively, to call the witnesses herself.

a witness at sentencing was wholly inadequate under *Ferrell* and cannot be considered the product of trial strategy. Mr. Harris' only "strategy" was to show that Doyle Hamm had significant mental health problems and came from a terrible background, yet he presented *no* expert testimony or documentary evidence to support these allegations—this, despite the availability of over 2,000 pages worth of documentary evidence that would directly support such a defense. Without these documents, the bald assertions of Mr. Hamm's sister, Ruthie Murphy, sounded wholly concocted for the jury.

This Court has further found deficient performance in cases where an attorney's efforts to speak with available witnesses were insufficient "to formulate an accurate life profile of [the] defendant." *Jackson v. Herring*, 42 F.3d 1350, 1367 (11th Cir. 1995); *see also Williams v. Allen*, 542 F.3d 1326, 1340 (11th Cir. 2008) (finding that reliance on a single family member's mitigating evidence was insufficient performance); *Dobbs v. Turpin, 142 F.3d 1383,* 1388 (11th Cir. 1988) (finding deficient performance where counsel failed to interview potential witnesses who could have testified regarding defendant's unfortunate childhood). Any even marginally complete version of Mr. Hamm's "life profile" would include the fact that Mr. Hamm suffers from brain damage and impaired judgment; his history of seizures and drug and alcohol abuse; his struggles in school and placement in the bottom 1st percentile for all subjects; and his families members'

voluminous criminal records. Yet none of the documentary and testimonial evidence supporting these factors was presented to the jury. As this Court has held, presenting a full picture of the defendant means establishing the *weight* of given factors, not merely the fact that they exist. *See Williams*, 542 F.3d at 1342 (indicating that a witnesses' testimony to the defendant's abuse-filled past painted an incomplete picture by failing to fully flesh out that history).

Similarly, in *Johnson v. Secretary, Dept. of Corrections*, 643 F.3d 907 (11th Cir. 2011), this Court upheld petitioner Johnson's ineffective assistance of counsel claim, holding that trial counsel's failure to adequately investigate Johnson's past was deficient assistance. *Id.* at 937-38. At the sentencing phase of trial, Johnson's attorney presented four witnesses: Johnson's father, a friend, a psychologist who had evaluated Johnson, and Johnson himself. Though Johnson testified to a difficult childhood, which his father confirmed, the court held that counsel's failure to draw out the *extent* of that difficulty—namely abuse and emotional trauma—entitled Johnson to relief on his ineffective assistance claim. In so holding, the court emphasized that "any reasonable attorney would have known…that the sentencing stage was the only part of the trial in which Johnson had an reasonable chance of success," and suggested that therefore the attorney's investigative efforts should have been focused on potential mitigation. *Id*. at 932. Defense counsel did present psychiatric and social history of Mr. Johnson, but not to the extent that a

capital case demands. Defense counsel in Mr. Hamm's case, on the other hand, did not present any psychiatric evidence at all.

In *Ferrell*, this Court found that "trial counsel conducted a profoundly incomplete investigation, and its judgment to so sharply limit its inquiry fell far outside the wide range of professional competence." *Ferrell*, 640 F.3d at 1227. In that case trial counsel had employed a mental health expert to evaluate the defendant, but had limited the evaluation to whether the defendant was mentally retarded or otherwise incapable of validly waiving his *Miranda* rights. *Id*. This Court emphatically highlighted all of the things the counsel failed to address to the expert: the expert "had *not* been asked to look for evidence of brain damage, was provided *no* material from counsel other than school records, and was *not* asked to perform a clinical interview, or do anything else for possible use in mitigation." *Id*. (emphasis in original). The reviewing court found that counsel should have realized the potential relevance of further mental health mitigation evidence, and that paired with counsel's failure to flesh out the defendant's background with witnesses—though he interviewed 40–45 witnesses regarding the defendant's character—it was an unreasonable application of *Strickland* for the Georgia Supreme Court to have denied the defendant's ineffective assistance claim. *Ferrell*, 640 F.3d at 1228.

The deficiency of Mr. Hamm's attorney went well beyond that of the attorney in *Ferrell*: Not only did Mr. Harris fail to address similar concerns to an expert, he failed to consult an expert at all. It is true that ineffective use of an expert once one has been deemed necessary and failure to employ an expert in the first instance are arguably different problems. Here, however, the cases are analogous: the Court's criticism in *Ferrell* was that, despite the fact that an expert could have provided significant mitigation information regarding the defendant's brain damage and personal history, he was *not employed to do so*. *See id.* at 1227. The Court's emphasis on the questions not addressed to the expert shows that the gravity of the attorney's deficiency came, in essence, from his failure to consult an expert *at all* on the most relevant mitigating factors in his client's case. Mr. Harris similarly failed to engage an expert on what could have and should have been strong mitigating evidence in the case of Mr. Hamm. This, despite Mr. Hamm's history of seizures—a factor which the Court found to be a significant "red flag" in *Ferrell*—as well as his previous drug and alcohol problems and his well-documented academic struggles.

Dr. Dale Watson, a licensed psychologist, diagnosed Mr. Hamm with "neuropsychological impairment and presumptively brain damage." Vol.11-PCR-168. This information is unquestionably essential to formulating any accurate picture of Mr. Hamm—the sort of picture mandated by this Court's decision in

*Johnson*—yet none of it was developed or presented to the jury by Mr. Harris at sentencing.

D. *Trial Counsel's Deficient Performance Was Prejudicial*

Under *Strickland*, a defendant must show a reasonable probability that counsel's ineffective assistance affected the outcome of the case, though the defendant "need *not* show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland v. Washington*, 466 U.S. 668, 693 (1984) (emphasis added). When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. This Court has explained that "[t]he appropriate analysis of the prejudice prong of *Strickland* requires an evaluation of 'the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceedings—in reweighing it against the evidence in aggravation.'" *Bottoson v. Moore*, 234 F.3d 526, 534 (11th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 397 (2000)).

In this case, the expert psychological testimony and the more than 2,000 pages of mitigating mental health, medical, educational, and family records discovered by undersigned counsel had a reasonable probability of tipping the balance against death at Mr. Hamm's sentencing. In *Brownlee v. Haley*, this Court described records regarding the defendant's diminished intellectual capacity, poor

mental health, and history of drug and alcohol abuse as "powerful mitigating evidence," the omission of which at sentencing "undermine[d] [the Court's] confidence in Brownlee's death sentence." 306 F.3d 1043, 1070 (11th Cir. 2002). In Mr. Hamm's case, trial counsel failed to present records of precisely the same nature as those in *Brownlee*. The only information the sentencer received regarding Mr. Hamm's background and health came through unsupported, unconvincing claims from his sister Ruthie. The persuasive weight of testimony offered by a single witness who is closely related to the defendant does not compare to that of an independent psychologist, or the information provided by years of academic records, or official medical records, or the testimony collected by a social worker from a broader swath of friends and family—all of which could have been, but was not, presented.

Moreover, in Mr. Hamm's case, there is direct evidence of prejudice. At the Rule 32 hearing, Hugh Harris stated the following:

> I will never forget that in discussions with the jury after the case was over, them talking about his history … they indicated that they felt like that if Ruthie and her sister could have gone through life without being involved in crime that the boys could have too.

Vol.21-PCR-41 (Transcript of Rule 32 Hearing at 41). Of course, this reflects the fact that the prosecutor's entire strategy during cross-examination of Ruthie Murphy (Vol.7-TR-1238) was to demonstrate to the jury precisely that: that Doyle Hamm's sister had survived the same ordeal as him and yet had not gotten

involved in crime. That was the prosecutor's exact strategy throughout the penalty phase, as evidenced not only by the cross-examination (Vol.7-TR-1238) but also by his closing argument (Vol.7-TR-1273).

However, if Mr. Harris had done the criminal background investigation on the Hamm family discussed earlier, trial counsel would have discovered that the *two sisters had also been accused of crimes*! On June 14, 1977, for example, the records reveal that Ruthie Murphy was charged in case # CC-77-132, in Colbert County, with *Assault with Intent to Murder.* Vol.11-PCR-200. The other sister, Linda, for instance, was charged on June 16, 1978, with public drunkenness in case # 4,021 in the City of Boonville, Mississippi. Vol.12-PCR-202. Given the father's lengthy criminal history and the lengthy criminal histories of all the brothers *and the two sisters*, Mr. Harris could have made a compelling argument about the influence of the father, Major Edward Hamm, on all his children, that would have been persuasive with the jury—if, of course, Mr. Harris had investigated the mitigation facts. *In this case, the prejudice was proven by the jurors themselves!*

In considering the wealth of independent, reliable mitigating evidence that has been amassed since Mr. Hamm's conviction, it is impossible to say that had it been presented to the sentencer, it would not have had a "reasonable probability" of affecting the outcome of the case. As this court said in *Cunningham v. Zant*, "[t]he primary purpose of the penalty phase is to insure that the sentence is

individualized by focusing [on] the particularized characteristics of the defendant. By failing to provide such evidence to the jury, though readily available, trial counsel's deficient performance prejudice[s a petitioner's] ability to receive an individualized sentence." 928 F.2d 1006, 1019 (11th Cir. 1991) (citations omitted).

### III.    THE STATE OF ALABAMA VIOLATED *BRADY V. MARYLAND*

When Douglas Roden and Regina Roden were initially interrogated, after being found in the car used in the robbery-murder, they both claimed that they had been "kidnapped" by Doyle Hamm. *Hamm*, 564 So.2d at 456. Douglas Roden told the police that he and Regina "had been held in a trailer at a trailer park in Cullman and that [Doyle Hamm and another man] had left the trailer for about two hours on the night of the motel robbery, driving that same car." *Hamm*, 564 So.2d at 456. That was the first of many lies on the part of Douglas and Regina Roden—but the best evidence of Douglas Roden's lying and deceptive character was withheld by the prosecutor and only discovered in state post-conviction proceedings. The truth of the matter—never revealed to the jury because of the *Brady* violation—is that Douglas Roden was a drug-addict and a compulsive liar with an extensive history of severe drug abuse, who lied to his counselors in his drug addiction treatment program and was actually kicked out of drug treatment for taking drugs while he was in custody at the state facility.

Doyle Hamm claimed his innocence on arrest, but, after lengthy and unconstitutional interrogation, admitted being involved. Vol.6-TR-1080. The only real question at trial was whether Doyle Hamm or Douglas Roden was the trigger-person. Only one impartial witness, Kathlyn Teresa Flanagan, was in the motel lobby at the time and saw the individuals enter immediately prior to the robbery-murder, and she observed two people enter the motel lobby—"Subject One" and "Subject Two." *Hamm*, 564 So.2d at 455. Ms. Flanagan was shown two photo line-ups and three live line-ups, and was able to identify two individuals: Ms. Flanagan identified a woman as being the first person who walked into the motel—"Subject One." Vol.2-TR-353. Ms. Flanagan also identified Douglas Roden as being either the first or the second person in the motel—therefore, "Subject Two." Vol.2-TR-355-56. Ms. Flanagan did not identify Doyle Hamm in the line-ups. Vol.2-TR-354. She also stated that 'Subject Two" may have been wearing a jeans jacket. Vol.2-TR-397-399). Her evidence was undisputed that it was "Subject Two" who was the trigger-person. *Hamm*, 564 So.2d at 455. And at trial, after lots of coaching, Kathlyn Flanagan testified, despite her earlier identifications, that both "Subject One" and "Subject Two" were probably male and that "Subject Two" was wearing a green army jacket—thereby implicating Doyle Hamm, whom she had not identified in the line-ups or photos.

The only issue at trial was whether Douglas Roden or Doyle Hamm was the trigger-person. Despite that—or perhaps because of that[4]—the prosecutor never turned over to the defense key impeachment and exculpatory evidence concerning Douglas Roden.

A. *The Brady Request*

In this case, the prosecutor did not make his file available to the defense, in violation of clearly established Alabama state law requiring open-file discovery in capital cases, *see Ex parte Monk*, 557 So.2d 832 (Ala. 1989). At trial, the state judge granted Mr. Hamm's discovery motion requesting any material within the prosecutor's possession tending to negate the guilt of Doyle Hamm. Vol.7-TR-1335-36. The prosecutor, however, failed to disclose material evidence concerning the state's chief witness, Douglas Roden.

B. *The Douglas Roden Files*

The sealed records, which were unsealed on April 20, 1995, eight years after the Alabama capital trial, *see* Vol.15-PCR-852, included four separate documents,

---

[4] There was, at trial, an egregious act of prosecutorial misconduct that undermines confidence in the good faith of the prosecutor and that casts light on this *Brady* violation. The exculpatory evidence from Kathlyn Flanagan, who did *not* identify Doyle Hamm in the line-ups, was *not* turned over to Mr. Hamm pre-trial, and was only turned over grudgingly after much protest *after* defense counsel's *second* cross-examination of Ms. Flanagan. This should undermine any presumption of the prosecutor's good faith.

the last three of which were never turned over to the defense. The first, a statement of Douglas Roden, was introduced by the state at trial. Vol.8-TR-1401. However, the next three items were never turned over to the defense. These include (1) records from "Central Records Dept. of Corrections, Montgomery, AL"; (2) records from "Correctional Med. Systems, Lt. (sic) Meigs, Alabama"; and (3) records from "Bryce Hospital, Tuscaloosa, Al 35401." Vol.15-PCR-852. All of these records had been sealed, *see e.g.* Vol.15-PCR-864, but were obtained by undersigned counsel for Mr. Hamm in Rule 32 proceedings and submitted to the Rule 32 court by Mr. Hamm.

(1) Records from "Central Records Dept. of Corrections, Montgomery, AL"

These records reveal that Douglas Roden was diagnosed as having borderline and possibly antisocial personality, and suffered from alcohol and substance abuse problems for 4 to 5 years. Vol.15-PCR-870 (see mark next to antisocial personality; mark next to borderline personality; mark next to drug addiction). This first document, as well as the second below, is hard to read, but the next slew of documents, especially in the third group, flesh out these points in detail.

(2) Records from "Correctional Med. Systems, Lt. (sic) Meigs, Alabama"

These records reveal that Douglas Roden suffered from drug addiction. Vol.15-PCR-876. Roden was diagnosed as having borderline and possibly

52

antisocial personality and was addicted to alcohol and drugs. Vol.15-PCR-887. Roden was recommended to be placed in "substance abuse counseling" as well as "reality therapy" and "self-concept enhancement." Vol.15-PCR-889. According to a report dated 11-6-85, Roden spent 16 weeks at a drug treatment unit. Vol.15-PCR-890.

(3) Records from "Bryce Hospital, Tuscaloosa, Al." VOL.15-PCR-852.

These records reveal that Roden was placed in the "Treatment Center for Alcohol and Drug Abuse" at Bryce Hospital. Vol.15-PCR-894. The records reveal that Roden had a substance abuse problem and even smoked marijuana *on the hospital grounds* when he was in treatment. VOL.15-PCR-902. Roden was eventually kicked out of the drug treatment program for taking drugs and lying to his counselors. VOL.15-PCR-902.

Here is what the letter, dated October 16, 1985, says:

Douglas Woodrow Roden was committed to Bryce Hospital . . . September 20, 1985 and has been continuously in treatment since that time.

Upon admission he denied problems with alcohol or drugs stating that he could 'take it or leave it.' He gave a history of substance abuse of six years duration. . . On October 14, 1985 we were notified that Mr. Roden's most recent urine screen was positive for THC. When confronted, Mr. Roden admitted smoking marijuana on the hospital grounds.

Because of his continued drug use, it is the opinion of the Treatment Team of the Substance Abuse Unit that Mr. Roden will not profit from further treatment at this time. We therefore, respectfully request that he be returned to the custody of your court for further disposition. . .

53

Vol.15-PCR-902.

Roden was diagnosed with alcohol abuse and mixed substance abuse. Vol.15-PCR-910. He had a history of drug and alcohol abuse "including IV drugs." Vol.15-PCR-911. He had a "History of heavy Marijuana Smoking." Vol.15-PCR-911. Roden recited "a history of drug use beginning with glue sniffing dating back to about the age of 12." Vol.15-PCR-911. He admitted abusing "alcohol and drugs since the age of twelve." Vol.15-PCR-911. Roden also lied repeatedly about his condition, telling some doctors at Bryce that "he does not think he has an alcohol or drug problem as he can always 'take it or leave it.'" Vol.15-PCR-917. Roden had been "picked up for Public Intoxication several times." Vol.15-PCR-917; 925. The psychological evaluation "indicates significant dysfunctions." Vol.15-PCR-921. Roden is reported to be "not attentive to circumstances in his immediate environment and this reduces his level of functioning." Vol.15-PCR-921. The rest of the documents, another 50 pages, corroborate these findings multiple times.

C. *The Leading Brady Legal Authority*

*Kyles v. Whitley*, 514 U.S. 419 (1995) makes clear that (1) the analysis of a *Brady* claim "turns on the *cumulative effect* of all such evidence suppressed by the government"—in other words, it gauges the "*net effect* of the evidence withheld by the State;" *Kyles*, 514 U.S. at 421 (emphasis added); (2) the materiality standard is "not a sufficiency of the evidence test," but merely addresses the court's

confidence in the verdict, *Kyles*, 514 U.S. at 435; and a court's "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case," *Kyles*, 514 U.S. at 422. The evidence withheld must be "considered collectively, not item by item." *Kyles*, 514 U.S. at 436.

In Doyle Hamm's case, Douglas Roden played the same role as that of the first suspect and informant in the *Kyles* case, Joseph Wallace, referred to throughout as "Beanie." *Kyles*, 514 U.S. 500 at n.3. Beanie was the state's chief witness in *Kyles*, was a friend of the defendant, and made very inconsistent statements about his role in the murder. Because of the inconsistencies, the Court found that the additional withheld evidence that would have impeached Beanie was crucial to the defense. Like Beanie, Douglas Roden was the first police contact. But, making him even less credible than Beanie, Douglas Roden was stopped by a Cullman police officer while driving the car that was used in the crime. And, again making him even less credible than Beanie, Douglas Roden positively lied to the police and claimed that he and Regina Roden "had been kidnapped by appellant, Jimmy Wardlow, and Paula Cook." *Hamm*, 564 So.2d at 456. In fact, everything he said to the police was completely fabricated. *Id.*; *see also* Vol.5-TR-907-911.

This Court should review the short, ineffective cross-examination of Douglas Roden to see how little defense counsel had to work with, compared to how much there was in the mental health records. Vol.5-TR-902-921. For instance,

on cross-examination, Roden said he was not drunk the night of the murder:

Q.    You said Doyle was drunk? Were you drunk?

A.    I wasn't. I had a buzz going. TR-903.

The undisclosed evidence establishes a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). This goes both to the guilt phase of Doyle Hamm's trial, as well as to the penalty phase; *but most significantly, it undermines any possible confidence in the death sentence.*

D. *The Lower Court Rulings Must Be Reversed*

The last state court judgment held that the information regarding Douglas Roden had not been raised properly in the Rule 32 petition and was procedurally barred. *Hamm v. State*, 913 So.2d at 479. The district court agreed and ruled that *Martinez* does not provide for cause and prejudice. In its memorandum opinion, the District Court wrote that "any alleged inadequacies of Harcourt or court-appointed counsel in their failure to preserve a *Brady* claim before the Rule 32 court cannot constitute cause to overcome the procedural default. *Martinez v. Ryan*, 132 S. Ct. at 1320." *Hamm v. Allen*, *Slip op.* at page 47.

As a preliminary matter, assuming that post-conviction counsel did not preserve this claim properly, *Martinez* applies explicitly to claims of ineffective assistance of post-conviction counsel, so this is precisely the type of situation

where *Martinez* would explicitly apply: ineffective assistance of post-conviction counsel. Second, although the question of *Martinez's* direct application to *Brady* claims—not counsel's ineffectiveness on *Brady*, but regarding the *Brady* claim itself, which could only here be discovered and raised in Rule 32—is an open question, it is clear that the reasoning underpinning the *Martinez* decision should apply equally to a *Brady* claim as it does to a trial IAC claim, both of which can only be raised in a Rule 32 proceeding. *See Martinez*, 132 S. Ct. at 1321 (Scalia, J., dissenting).

In any event, as a factual matter, the district court's claim that Mr. Hamm did not present these materials in his Rule 32 proceedings and hearing is not correct. Doyle Hamm specifically asked the court to "admit into evidence and consider in support of my Rule 32 Petition all of the evidence that I sent to the courts." Vol.21-PCH-5. The lower court received all the records into evidence. Vol.21-PCH-6. Mr. Hamm can hardly be blamed for failing to represent himself properly when he was denied his post-conviction attorney at the Rule 32 hearing over objection.

CONCLUSION

In conclusion, the evidentiary record in this federal habeas corpus case clearly establishes on its face—*i.e.*, the transcript of the Tennessee plea colloquy *alone*—the unconstitutionality of the underlying Tennessee prior. Despite this, not one single judge since Mr. Hamm was sentenced to death has ever conducted merits review of the aggravating circumstance—due to a succession of *Gideon* problems. To avoid substantive review by means of purely procedural hurdles would amount to a straightforward violation of the principles of equity which drove the Court's holding in *Martinez*. For the above reasons, Doyle Hamm respectfully urges this Court to reverse the district court's ruling and grant federal habeas corpus relief.

Respectfully submitted,

BERNARD E. HARCOURT
COLUMBIA LAW SCHOOL
Jerome Green Hall 515
435 West 116th Street
New York, New York 10027
Phone: (212) 854-1997

*Counsel for Mr. Hamm*

April 18, 2014

<u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,864 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Eleventh Circuit Rule 32-4. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word, in 14-point Times New Roman font.

BERNARD E. HARCOURT
COLUMBIA LAW SCHOOL
Jerome Green Hall 515
435 West 116th Street
New York, New York 10027
Phone: (212) 854-1997

*Counsel for Mr. Hamm*

April 18, 2014

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2014, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Beth Jackson Hughes
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL 36130


BERNARD E. HARCOURT
COLUMBIA LAW SCHOOL
Jerome Green Hall 515
435 West 116th Street
New York, New York 10027
Phone: (212) 854-1997

*Counsel for Mr. Hamm*

April 18, 2014