No. 13-14376-P

---

## In the UNITED STATES COURT OF APPEALS
## for the ELEVENTH CIRCUIT

◆

DOYLE LEE HAMM,

Appellant,

v.

RICHARD F. ALLEN, Commissioner,
Alabama Department of Corrections,

Appellee.

◆

On Appeal from the United States District Court
for the Northern District of Alabama

---

## BRIEF OF APPELLEE

---

Luther Strange
*Attorney General*

Andrew Brasher
*Solicitor General*

Beth Jackson Hughes
*Assistant Attorney General\**

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama  36130-0152
(334) 242-7300, 242-7392 *

June 17, 2014

C-1 of 3

*Hamm v. Allen*

No. 13-14376-P

**<u>CERTIFICATE OF INTERESTED PERSONS</u>**

Undersigned counsel certifies that the following persons may have an interest in the outcome of this case:

1.    Allen, Richard, former Commissioner of the Alabama Department of Corrections;

2.    Armstrong, Jeremy, former Assistant Attorney General during the post-conviction proceedings;

3.    Bowdre, Karon Owen, federal district court judge;

4.    Brasher, Andrew, Solicitor General of the State of Alabama;

5.    Cunningham, Patrick, victim;

6.    Dobbs-Ramey, Kimberly J., counsel for Hamm during the post-conviction appeal;

7.    Folsom, Fred C., trial judge;

8.    Forrester, Nathan, former Solicitor General for the State of Alabama during the post-conviction appeal;

9.    Hamm, Doyle Lee, defendant;

10.    Harcourt, Bernard, counsel for Hamm in post-conviction proceedings, in federal habeas proceedings, and in this Court;

11.    Hardeman, Don L., post-conviction judge;

12.    Harris, Hugh, trial and direct appeal counsel for Hamm;

13.    Hughes, Beth Jackson, counsel for the State in post-conviction proceedings, in federal habeas proceedings, and in this Court;

14.    King, Troy, former Alabama Attorney General during the federal habeas proceedings;

15.    Little, William D., Assistant Attorney General during the direct appeal;

16.    Morin, Robert, counsel for Hamm on appeal to the United States Supreme Court on direct appeal;

17.    Nail, Pamela, counsel for Hamm in post-conviction proceedings;

18.    Newsome, Kevin C., former Solicitor General for the State of Alabama during post-conviction proceedings;

19.    Nunnelley, Kenneth, former Assistant Attorney General during the post-conviction proceedings;

20.    Pryor, William H., former Alabama Attorney General during the post-conviction proceedings;

21.    Roden, Douglas, co-defendant;

C-3 of 3

22.    Roden, Regina, co-defendant;

23.    Siegleman, Don, former Alabama Attorney General during the direct appeal;

24.    Stewart, Sandra J., former Assistant Attorney General during the direct appeal;

25.    Strange, Luther, Alabama Attorney General;

26.    Thomas, Kim, Commissioner, Alabama Department of Corrections; and

27.    Williams, Martha E., trial and direct appeal counsel for Hamm.


*s/  Beth Jackson Hughes*
Beth Jackson Hughes
*Assistant Attorney General*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is appropriate in this case because this appeal involves a habeas corpus proceeding in which the district court denied relief as to the capital conviction and death sentence.

## CERTIFICATE OF TYPE SIZE AND STYLE

The size and style of type used in this brief is fourteen (14) point Times New Roman.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ C-1

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

CERTIFICATE OF TYPE SIZE AND STYLE ............................................ i

TABLE OF AUTHORITIES ...............................................................v

STATEMENT OF JURISDICTION ..............................................................1

STATEMENT OF THE ISSUES ...................................................................1

STATEMENT OF THE CASE ...................................................................2

    A.    Proceedings and Disposition Below ..........................................2

    B.    Statement of the Facts ...................................................................4

        1.    Facts of the crime.................................................................4

        2.    Facts from the post-conviction evidentiary hearing ..........................................................7

    C.    Standard of Review ................................................................ 11

SUMMARY OF THE ARGUMENT ............................................................. 13

ARGUMENT ................................................................................................ 18

I.    Hamm's Claim That The State Improperly Relied On Unconstitutionally Obtained Prior Convictions As An Aggravating Circumstance Is Procedurally Defaulted And, In Any Event, Does Not Entitle Him To Relief. .................................................................... 18

    A.    Hamm's Claim Is Procedurally Defaulted. .............................. 19

1.    Hamm cannot show cause to overcome the procedural defaults of this claim. ........................................ 20

   a.    Standard of review for ineffective assistance claims ............................ 20

   b.    Counsel's failure to investigate the Tennessee convictions ................................... 23

   c.    Counsel's failure to adequately object to introduction of evidence that Hamm was charged with armed robbery ............................... 27

2.    Hamm has not shown that a fundamental miscarriage of justice exists to overcome the procedural defaults. ................................................ 28

3.    No *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), exception exists to overcome the procedural defaults. ................................. 30

B.    Hamm's Claim Does Not Entitle Him To Relief. ...................................................... 32

II.    Hamm's Claim That Counsel Was Ineffective During The Penalty Phase Is Meritless. ........................................... 40

A.    The state court's decision that trial counsel were not constitutionally deficient was not unreasonable. ............................................ 40

B.    The state court's decision that Hamm was not prejudiced was not unreasonable. ...................................... 50

III.    Hamm's *Brady v. Maryland* Claim Is Procedurally Defaulted And Is Also Without Merit. ............................... 54

    A.    The *Brady* claim is procedurally defaulted ............................. 54

    B.    The *Brady* claim is also without merit .................................... 57

CONCLUSION ............................................................................. 59

CERTIFICATE OF COMPLIANCE ............................................ 60

CERTIFICATE OF SERVICE .................................................... 61

## TABLE OF AUTHORITIES

**Cases**

*Bottoson v. Moore*, 234 F.3d 526 (11th Cir. 2000) ..................................... 50

*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969) ...................... 18, 26

*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963) ...................... passim

*Capri Adult Cinema v. Tennessee*, 537 S.W.2d 896
(Tenn. 1976) ............................................................................................. 37

*Chandler v. United States*, 218 F.3d 1305 (11th Cir.
2000) ......................................................................................................... 22

*Clisby v. Alabama*, 26 F.3d 1054 (11th Cir. 1994) .................................... 54

*Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546
(1991) ....................................................................................................... 30

*Cullen v. Pinholster*, 131 S.Ct. 1388 (2011) .................................. 21, 22, 45

*Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732
(1994) ....................................................................................................... 33

*Daniels v. United States*, 532 U.S. 374, 121 S.Ct. 1578
(2001) ....................................................................................................... 33

*Dobbs v. Turpin*, 142 F.3d 1383 (11th Cir. 1988) ............................... 48, 49

*Engle v. Issac,* 456 U.S. 107, 102 S.Ct. 1558 (1982) ................................. 20

*Ferrell v. Hall*, 640 F.3d 1199 (11th Cir. 2011) ................................... 48, 49

*Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963) ................. passim

*Grayson v. Thompson,* 257 F.3d 1194 (11th Cir. 2001) ............................. 54

*Hamm v. Alabama*, 498 U.S. 1008 (1990)...................................................... 2

*Hamm v. State*, 564 So. 2d 453 (Ala. Crim. App. 1989),
   *aff'd*, 564 So. 2d 469 (Ala. 1990) ........................................................ 2, 5, 7

*Hamm v. State*, 913 So. 2d 460 (Ala. Crim. App. 2002)...................... passim

*Hannon v. Sec'y Dept. of Corr.*, 562 F.3d 1146 (11th Cir.
   2009) ....................................................................................................... 12

*Harrington v. Richter*, 131 S.Ct. 770 (2011)................................... 12, 13, 22

*Hollis v. Davis*, 941 F.2d 1471 (11th Cir. 1991) ......................................... 20

*Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981
   (1988) .................................................................................. 18, 32, 35, 36

*Johnson v. Singletary*, 643 F.3d 907 (11th Cir. 2011) ................................ 48

*Lackawanna County District Attorney v. Coss*, 532 U.S.
   374, 121 S.Ct. 1578 (2001)................................................................passim

*Lee v. Comm., Ala. Dept. of Corr.,* 762 F.3d 1172 (11th
   Cir. 2013) .......................................................................................... 12, 13

*Martinez v. Ryan*, 132 S.Ct. 1309 (2012) .............................................passim

*Mason v. Allen*, 605 F.3d 1114 (11th Cir. 2010)................................... 11, 12

*McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005) ................................ 11

*Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639 (1986) .................... 20, 28

*Padilla v. Kentucky*, 130 S.Ct. 1473 (2010) ............................................... 23

*Richardson v. Johnson*, 864 F.2d 1536 (11th Cir. 1989) ............................ 21

*Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456 (2005) .............. 24, 26, 42

*Smith v. Newsome*, 876 F.2d 1461 (11th Cir. 1989)..................................... 19

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052
  (1984) .................................................................................... passim

*Tompkins v. Moore*, 193 F.3d 1327 (11th Cir. 1999) .................................. 51

*Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497 (1977)........................... 19

*Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct.2527 (2003) ............................. 42

*Williams v. Allen*, 542 F.3d 1326 (11th Cir. 2008)............................... 48, 50

*Williams v. Taylor*, 529 U.S. 362, 120 S.Ct.1495 (2000)...................... 42, 50

**Statutes**

United States Code
28 U.S.C. §1291 .......................................................................................... 1
28 U.S.C. §2253 .......................................................................................... 1
28 U.S.C. §2254 ......................................................................... 1, 12, 33, 35
28 U.S.C. §2254(d) ............................................................................ 23, 36, 37
28 U.S.C. §2254(d)(1) ......................................................................... 12, 45
28 U.S.C. §2254(d)(2) ................................................................................ 12
28 U.S.C. §2254(e)(1)................................................................................. 11

Code of Alabama
§13A-5-40(a)(2)........................................................................................... 2

**Rules**

Federal Rules of Appellate Procedure
Rule 32(a)(7)(B)........................................................................................ 60

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal under 28 U.S.C. §§1291 and 2253 because the appeal is from a final order in a 28 U.S.C. §2254 proceeding.

## STATEMENT OF THE ISSUES

1.     Is Hamm's claim that the State improperly relied on unconstitutionally obtained prior convictions as an aggravating circumstance not before this Court where it is procedurally defaulted and, in any event, does not entitle him to relief?

2.     Did the state courts properly reject Hamm's claim that counsel failed to investigate and present mitigating evidence where the record establishes that counsel, in fact, investigated and presented a wealth of mitigating evidence during the penalty phase of the trial?

3.     Can this Court review Hamm's claim under *Brady v. Maryland* where this claim is procedurally defaulted and Hamm cannot show cause and prejudice to overcome the procedural default and where the claim is also without merit?

## STATEMENT OF THE CASE

### A.    Proceedings and Disposition Below

On September 26, 1987, Doyle Lee Hamm was convicted of one count of capital murder for the death of Patrick Cunningham.  Specifically, Hamm was found guilty of murder during a robbery in violation of Alabama Code, §13A-5-40(a)(2).  (Vol. 6, Tab#15, p. 1193)  The trial court accepted the jury's recommendation and sentenced Hamm to death.  (Vol. 7, Tab#28, p. 1327)

On direct appeal, the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Hamm's conviction and death sentence. *Hamm v. State*, 564 So. 2d 453 (Ala. Crim. App. 1989), *aff'd*, 564 So. 2d 469 (Ala. 1990).  The United States Supreme Court denied Hamm's petition for writ of certiorari.  *Hamm v. Alabama*, 498 U.S. 1008 (1990).

Hamm filed a petition for post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure in December of 1991.  (Vol. 21, Tab#40, p. 2080)  An evidentiary hearing was held on the post-conviction petition.  (Vol. 21, Tab#42, p. 1)  After the evidentiary hearing, the trial court denied the post-conviction petition.  (Vol. 33, Tab#58)  The Alabama Court of Criminal Appeals affirmed the denial of the post-conviction petition.  *Hamm v. State*, 913 So. 2d 460 (Ala. Crim. App. 2002).  (Vol. 33,

2

Tab#59)  The Alabama Supreme Court and the United States Supreme Court denied Hamm's petition for writ of certiorari.  (Vol. 33, Tab#60, 61)

Hamm filed a petition for writ of habeas corpus on May 16, 2006.  (Doc. 1)  The State of Alabama then filed an answer to the habeas petition.  (Doc. 15)  On March 27, 2013, Judge Karon O. Bowdre entered a memorandum opinion and final judgment denying the habeas petition.  (Docs. 26, 27)  Hamm then filed a motion to alter or amend judgment.  (Doc. 28)  This motion was granted in part to strike a sentence from the memorandum opinion and denied in part.  (Docs. 31, 32)  Hamm filed a notice of appeal on September 12, 2013.  (Doc. 33)

Hamm then filed a certificate of appealability in this Court.  This Court granted Hamm's certificate of appealability on the following issues:

1.    Whether the district court erred in denying Hamm's federal constitutional challenge to the introduction and use of his prior Tennessee conviction as an aggravating circumstance;

2.    Whether the district court erred in denying Hamm's federal constitutional ineffective assistance of counsel claim with respect to alleged *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), violations including failure to present mitigating evidence; and

3.    Whether the district court erred in finding that the Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), did not apply to claims that ineffective assistance of appellate counsel constituted cause for procedural default.

**B.    Statement of the Fact***s*

**1.    Facts of the crime**

On January 24, 1987, Patrick Cunningham was working the 3:00 p.m. to 7:00 a.m. shift as the desk clerk of Anderson's Motel in Cullman, Alabama.  (Vol. 2, p. 271)  Kathryn Flannagan, who was traveling from Florida to Missouri, stopped at the motel around 10:30 p.m. to rent a room for the night.  (Vol. 2, p. 299)  While Ms. Flannagan was filling out the registration form, a small-framed white man entered the lobby and asked to rent a room for three.  (Vol. 2, pp. 300-301)  Mr. Cunningham told the man that rooms were not rented without a reservation and the man left the lobby.  (Vol. 2, pp. 301-302)  Mr. Cunningham told Ms. Flannagan that they did not rent to locals.  (Vol. 2, pp. 302-303)  Minutes later, as Ms. Flannagan was about to leave the lobby, the same man came into the lobby, accompanied by a second man.  (Vol. 2, p. 303)  The second man was larger than the first man and was wearing a faded green army fatigue jacket.  (Vol. 2, p. 303)  Mr. Cunningham gave Ms. Flannagan her key, pointed to her room, and told her it "looks like there is going to be trouble."  (Vol. 2, p. 303)

After Ms. Flannagan got into her car, she looked back inside the lobby and saw the second man (the one in the green army fatigue jacket)

4

pointing a gun in the direction of the desk.  (Vol. 2, pp. 308, 330)  Ms. Flannagan was not able to see behind the desk because her view of the desk was obstructed.  *Hamm v. State*, 564 So. 2d 453, at 455.  The first man was standing near the door and Ms. Flannagan also noticed a "banged up" early 1970's car parked, with its engine running, just outside the door to the Anderson Motel.  (Vol. 2, pp. 302, 305)  Ms. Flannagan also testified that it looked like there was one more person in the car.  (Vol. 2, p. 305)

Ms. Flannagan acted like she did not see anything and drove to a nearby convenience store where she called the police.  (Vol. 2, pp. 309, 342-344)  She told the dispatcher that the Anderson Motel was being robbed.  The dispatcher told Ms. Flannagan to return to the motel to meet the police, which she did.  (Vol. 2, p, 310-344)  Ms. Flannagan gave the officers a statement and a description of the two men she saw in the motel.  (Vol. 2, pp. 310, 344)

Lieutenant Larry Waldrop of the Cullman County Sheriff's Department was the first officer to arrive at the crime scene and found the victim's body behind the reception desk.  (Vol. 3, pp. 403-407)  The victim had been killed by a single gunshot to the head from a .38 caliber pistol.  *Hamm*, 564 So. 2d at 455.  The victim's wallet, containing approximately

$60 was missing.  In addition, the cash drawer of the motel was missing over $350.  *Id*.

The day after the murder Douglas Roden was found driving a car that matched the description of the car Ms. Flannagan saw at the Anderson Motel.  Ms. Flannagan later positively identified this vehicle as the one she saw at the motel.  *Id*.  Roden took the officers from the Cullman Police Department to a trailer park in Cullman where they arrested Hamm.  *Id*.  While searching the trailer, officers seized a nickel-plated .38 caliber pistol, numerous rounds of .38 caliber ammunition, a faded green army fatigue jacket with .38 caliber bullets in the pocket, some knives, and other clothing.  *Id*.

After being taken to jail, Hamm gave a statement in which he denied any involvement in the murder of Patrick Cunningham.  The next day, Hamm gave a second statement and confessed to the murder.  Hamm's statement was played for the jury.

During the investigation of this case, the Cullman Police Department learned that Doug Roden and Regina Roden were involved in the murder. Doug Roden was the other person who entered the motel lobby and Regina Roden remained outside the motel in the car.  In exchange for being

6

allowed to plead guilty to lesser offenses, both of the Rodens testified against Hamm at his trial.  *Id.*[1]

### 2.    Facts from the post-conviction evidentiary hearing

On July 26, 1999, an evidentiary hearing was held on Hamm's post-conviction petition.  Hamm was represented at trial by Hugh Harris and Martha Williams.  Early in the preparation of their case, Mr. Harris and Ms. Williams recognized that the weight of the evidence was stacked against them due to Hamm's confession and developed their trial strategy accordingly.  The evidence against Hamm was indeed strong, as evidenced by his subsequent conviction and death sentence.

Mr. Harris has been practicing law since 1976, and had worked for eleven years as a district attorney in Cullman.  (Vol. 21, Tab #42, p. 30)  In those eleven years he had tried between seventy-five and a hundred cases, more than any other lawyer in Cullman County.  (Vol. 11, p. 31)  To aid him in his defense of Hamm, Harris received and made use of materials from the Capital Resource Center.  (Vol. 21, Tab#42, pp. 31-32)  Harris also testified that his attendance at every district attorneys' seminar between 1976 and 1987 helped him defend Hamm.  (Vol. 21, Tab#42, p. 32)  Harris

---

[1] A more detailed statement of the facts can be found in the direct appeal opinion of the Alabama Court of Criminal Appeals.  *Hamm v. State*, 564 So. 2d 453, 455-457 (Ala. Crim. App. 1989).

7

had a good working relationship with the judge who presided over Hamm's case, Judge Fred Folsom.  (Vol. 21, Tab#42, pp. 32-33)  Hamm's other counsel, Martha Williams, had practiced law for seventeen years at the time of the Rule 32 hearing.  (Vol. 21, Tab#42, p. 53)

Williams testified that she and Harris spent hundreds of hours on Hamm's case.  (Vol. 21, Tab#42, p. 60)  They spent eight days in trial, had two separate oral arguments before the Alabama Court of Criminal Appeals and the Alabama Supreme Court.  (Vol. 21, Tab#42, p. 60)  Harris had very liberal access to Hamm and met with Hamm more than twenty-five times prior to the trial.  (Vol. 21, Tab#42, p. 33)  Harris had a good working relationship with Hamm, a relationship he maintained after the trial.  (Vol. 21, Tab#42, pp. 33-34)  Harris had no difficulty communicating with Hamm.  (Vol. 21, Tab#42, p. 35)

Harris investigated Hamm's background in regards to his family, medical records, and past criminal records.  (Vol. 21, Tab#42, pp. 11, 38) Harris spoke with Hamm's sister and mother several times.  (Vol. 21, Tab#42, pp.16, 38, 39)  Harris knew the extensive history of the members of Hamm's family, which was brought out at the sentencing hearing.  (Vol. 21, Tab#42, p. 13)  Harris brought in as much of this as Hamm would agree to.  (Vol. 21, Tab#42, p. 13)  Hamm became upset when Harris put his

8

sister on the stand to go into their family history. Hamm told Harris that it was no one's business other that his family's what had occurred in his family history. (Vol. 21, Tab#42, p. 35) Harris wished to call Hamm's daughter to testify at the penalty phase, but did not out of respect for Hamm's wishes. (Vol. 21, Tab#42, p. 40)

Harris was also familiar with Hamm's own lengthy criminal history, but decided that that information would have been prejudicial to Hamm and, as a trial strategy, did not go into that information. (Vol. 21, Tab#42, p. 13) Harris felt that the records, which indicated that Hamm had served time on other crimes not brought out at trial, would actually have given enhancement to the death penalty phase. (Vol. 21, Tab#42, p. 15) Harris investigated Hamm's prior convictions in Tennessee. (Vol. 21, Tab#42, pp. 16, 39) Harris contacted the courts there and received copies of the convictions, which were consistent with what Hamm had told him about these convictions. (Vol. 21, Tab#42, pp. 16, 39)

Harris requested that Hamm be evaluated at Taylor-Hardin Secure Medical Facility because of his epilepsy, and was familiar with the findings as to his mental and physical health from this evaluation. (Vol. 21, Tab#42, pp. 12, 14, 16, 47-48) Hamm was found competent to assist at trial, as well

9

as competent at the time of the commission of the crime.  (Vol. 21, Tab#42, p. 48)

Hamm repeatedly told Harris that there was nothing wrong with him. (Vol. 21, Tab#42, p. 18)  From his meetings with him and extensive contact neither Harris nor Williams observed any evidence or indication that Hamm was not competent.  (Vol. 21, Tab#42, pp. 18, 49, 62)    Harris also conducted an investigation into Hamm's drug and alcohol use.  (Vol. 21, Tab#42, p. 41)  Hamm told him that "he could take it or leave it, but most of the time he decided to take it."  (Vol. 21, Tab#42, p. 42)

Harris testified that the focus of his trial strategy was to challenge the introduction of Hamm's statement.  (Vol. 21, Tab#42, p. 24)  Harris's plan was to do everything he could to keep the confession out.  (Vol. 21, Tab#42, p. 36)  If the confession came in, Harris testified, they would focus on damage control.  (Vol. 21, Tab#42, pp. 24-25)

Harris did not believe that there were numerous errors at Hamm's trial.  (Vol. 21, Tab#42, p. 24)  Harris testified that his objections kept numerous photographs and exhibits from being admitted at the trial.  (Vol. 21, Tab#42, p. 21)  The worst of the pictures were kept out.  (Vol. 21, Tab#42, p. 58)  Harris testified that he made evidentiary challenges, which necessitated recalling some of the witnesses at trial.  (Vol. 21, Tab#42, pp.

10

25-26)  Harris also testified that his objections concerning the introduction of bullets from a green army jacket necessitated the prosecution bringing in witnesses from out-of-state, which delayed the trial.  (Vol. 21, Tab#42, p. 45)

Hamm's attorneys made a conscious effort not to infuriate or upset the jury by needless objections.  (Vol. 21, Tab#42, pp. 27, 58, 61)  Harris did everything he could to accommodate and to stay in a good relationship with the jury.  (Vol. 21, Tab#42, p. 27)  Once Hamm's confession came in, however, all Harris could hope for was a sentence of life imprisonment, as opposed to death.  (Vol. 21, Tab#42, pp. 27-28)  The limitation on compensation did not affect Harris's representation of Hamm.  (Vol. 21, Tab#42, p. 36)

### C.    Standard of Review

This Court reviews "the district court's conclusions on legal questions and mixed questions of law and fact *de novo* and its factual findings for clear error."  *Mason v. Allen*, 605 F.3d 1114, 1118 (11th Cir. 2010).  "[A] state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence."  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005)(citing 28 U.S.C. §2254 (e)(1)).  "This presumption applies to fact findings made by both state trial courts and state

11

appellate courts." *Hannon v. Sec'y Dept. of Corr.*, 562 F.3d 1146, 1150 (11th Cir. 2009).

This Court's review of Hamm's federal habeas claims is, however, strictly limited by the terms of 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act. *Mason v. Allen*, *supra*. AEDPA greatly restricts federal habeas review of state courts' judgments. *See, e.g., Harrington v. Richter*, 131 S.Ct. 770, 785-787 (2011). Critically, §2254 prohibits federal habeas relief unless the state court's decision: (1) "was contrary to, or involved the unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[,]" §2254(d)(1), or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings[,]" §2254(d)(2). *See also Richter*, 131 S.Ct. at 784.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Lee v. Comm., Ala. Dept. of Corr.,* 762 F.3d 1172, 1192 (11th Cir. 2013). To be entitled to relief under §2254, "a petitioner must show that the state court's ruling was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fair-minded disagreement.'" *Id.*, *quoting, Harrington*, 131 S.Ct. at 786-787.

A state court decision will be found to be "contrary to" clearly established federal law only "if it applies a rule that contradicts the governing law set forth by the United States Supreme Court, or arrives at a result that differs from Supreme Court precedent when faced with materially indistinguishable facts." *Lee*, 726 F.3d at 1192. Finally, a state court decision will be found to involve an "unreasonable application" only "if the state court correctly identifies the governing legal principle from the relevant Supreme Court decisions but unreasonably applies it to the facts of the particular case." *Id.* (citations omitted).

## SUMMARY OF THE ARGUMENT

1.    Hamm's claim that the State improperly relied on his prior convictions in Tennessee to support one of the aggravating circumstances is procedurally defaulted because it was not raised at trial or on direct appeal. Hamm does not dispute that the claim is procedurally defaulted, however, he argues that cause and prejudice or a fundamental miscarriage of justice exists to overcome the procedural defaults. He also argues that a *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), exception exists to overcome the defaults. Contrary to Hamm's arguments, his ineffective assistance of counsel claims

13

do not constitute cause to overcome the procedural defaults because the claims are without merit.  Hamm's trial attorneys were not ineffective because they failed to challenge his nine-year-old Tennessee convictions at his capital murder trial because counsel reviewed documents concerning the Tennessee convictions and "they came back exactly like he told me that they had happened."  Hamm has presented no evidence to dispute this testimony.  Hamm's attorneys also did object to the introduction of evidence that Hamm was charged with armed robbery and the trial court sustained this objection.  Moreover, Hamm cannot establish prejudice concerning this ineffective assistance allegation because only the convictions for simple robbery were introduced at trial and considered by the trial court during the penalty phase of the trial.  Hamm has also failed to establish that a fundamental miscarriage of justice exists to overcome the procedural defaults because Hamm does not challenge the validity of a second aggravating circumstance in his case – that he was engaged in the commission of a robbery when he committed this offense – he, therefore, was eligible for the death penalty under Alabama law.  Hamm also incorrectly argues that his case fits within the narrow exception to procedural default recognized by the Supreme Court in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).  But this exception does not apply to Hamm's

14

substantive claim because the ineffective assistance of post-conviction counsel can only be cause to overcome a petitioner's procedural default of an ineffective assistance of trial counsel claim. *Id*., at 1315. Additionally, in this case, post-conviction counsel raised ineffective assistance of trial counsel claims regarding trial counsel's failure to challenge Hamm's Tennessee convictions in the post-conviction proceedings.

In addition, Hamm is not entitled to relief on his argument because Hamm cannot challenge in the instant habeas proceedings his Tennessee convictions that are conclusively valid because he already has unsuccessfully attacked the convictions in the State of Tennessee and in the Sixth Circuit Court of Appeals. *Lackawanna County District Attorney v. Coss*, 532 U.S. 374, 121 S.Ct. 1578 (2001). Nor does Hamm's case fall within the exception to the limiting considerations set forth in *Coss* because Hamm's claim does not involve a *Gideon* challenge but instead, as Hamm acknowledges, involve a "*Gideon*-type" error. Finally, contrary to Hamm's argument, his actual innocence argument does not entitle him to relief because the Supreme Court has never expanded its holding in *Coss* to include this exception.

2.    Hamm is also not entitled to relief on his claim that counsel failed to investigate and present mitigating evidence during the penalty

15

phase of his trial. As the district court found: "Counsel conducted an investigation into Hamm's background and history that allowed the jury to be presented all of the mitigating aspects of that history, without subjecting Hamm to the double-edge sword of his full criminal record and other negative material." (Doc. 26, p. 106) In addition, counsel presented the testimony concerning the lengthy criminal record of his family members, his terrible background, his history of seizures and his drug and alcohol abuse though the testimony of his sister, Ruthie. *Hamm*, 913 So. 2d at 487. Nor has Hamm proved that his attorneys were ineffective because they failed to call experts to testify during the penalty phase because Hamm did not present the testimony of any expert during the post-conviction proceedings. While an affidavit from a mitigation expert was introduced at the post-conviction evidentiary hearing, the evidence in the affidavit was cumulative of evidence offered during the penalty phase and contained information that trial counsel did not want the jury to see. The evidence that Hamm suffers from brain damage and that his IQ falls in the borderline range of intelligence is not properly before this Court because it was not considered by the state courts. Finally, Hamm was not prejudiced by counsel's performance during the penalty phase of his trial because Hamm has failed to prove that the mitigation offered during the post-conviction

16

proceedings would have changed the outcome of the penalty phase of the trial.  This is especially true where the evidence of Hamm's guilt is overwhelming and where Hamm has not attempted to negate the aggravating circumstance that the murder occurred during a robbery.  This was a horrible crime and the jury's verdict recommending a death sentence in this case would not have been changed by the evidence presented during the post-conviction proceedings.

3.    Hamm's final argument to this Court is that the State of Alabama withheld exculpatory evidence of Doug Roden's lying and deceptive character in violation of *Brady v Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1995).  This claim is procedurally defaulted because it was not raised until Hamm appealed the denial of his post-conviction petition to the Alabama Court of Criminal Appeals.  At that time, the Alabama Court of Criminal Appeals refused to consider the merits of the claim because it had not been presented to the post-conviction court.  Hamm disputes this finding because he asked the post-conviction court to consider several exhibits.  However, this claim was not included in the post-conviction petition, the post-conviction court was not advised of the relevance of the documents, and the documents were not admitted into evidence during the post-conviction evidentiary hearing.  Hamm's argument that the Supreme

17

Court's exception in *Martinez v. Ryan* applies to this claim also fails because the exception only applies to allegations concerning the inadequacies of post-conviction counsel to overcome the procedural default of an ineffective assistance of trial counsel, not a substantive claim. Nor has the *Martinez* exception been expanded to include *Brady* claims. Hamm's *Brady* claim is also without merit because the information concerning Doug Roden is not material to Hamm's guilt or innocence and would not have aided Hamm in impeaching Roden's credibility, especially where trial counsel conducted a very powerful impeachment of Roden without this information. (Doc. 26, pp. 50-51)

## ARGUMENT

I.    **Hamm's Claim That The State Improperly Relied On Unconstitutionally Obtained Prior Convictions As An Aggravating Circumstance Is Procedurally Defaulted And, In Any Event, Does Not Entitle Him To Relief.**

Hamm contends that he was improperly sentenced to death because the State relied on unconstitutionally obtained Tennessee convictions to support one of the two aggravating circumstances in his case in violation of *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981 (1988). Hamm asserts that his Tennessee convictions are unconstitutional because his guilty pleas in those cases violate *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969). Hamm unsuccessfully attacked the validity of his 1978

18

Tennessee convictions by filing a post-conviction petition in the State of Tennessee and a federal habeas petition.  As set forth below, Hamm is not entitled to relief on this claim because his claim is procedurally defaulted and also does not entitle him to relief.

### A.    Hamm's Claim Is Procedurally Defaulted.

The district court properly found that Hamm's claim is procedurally defaulted.  (Doc. 26, pp. 64-66)  Hamm did not raise this claim at trial or on direct appeal.  Hamm attempted to present this claim for the first time in his post-conviction petition.  The post-conviction court found the claim defaulted because it could have been raised at trial or on direct appeal but was not.  *Hamm v. State*, 913 So. 2d 460, at 479 (Ala. Crim. App. 2002). As the district court found, Hamm does not deny that his claim is procedurally defaulted.  (Doc. 26, p. 65)

There are only two exceptions to the procedural default rule.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default.  *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497 (1977); *Smith v. Newsome*, 876 F.2d 1461, 1465 (11th Cir. 1989).  The second exception is that, in extraordinary cases, a federal court may grant a habeas petition without a showing or cause or prejudice to correct a fundamental

19

miscarriage of justice. *See Engle v. Issac,* 456 U.S. 107, 102 S.Ct. 1558 (1982); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639 (1986). As set forth below, Hamm meets neither of these exceptions and this Court should, therefore, refuse to consider the merits of the claim.

### 1.    Hamm cannot show cause to overcome the procedural defaults of this claim.

Hamm raises two ineffective assistance of counsel claims as cause to overcome the procedural defaults of this claim. First, Hamm asserts that his trial attorneys were ineffective because they failed to properly investigate his prior Tennessee convictions. Second, Hamm argues that his attorneys failed to adequately make sure that the evidence of his Tennessee convictions made no reference to the fact that he was charged with armed robbery. Neither of these claims constitutes cause because counsel was not ineffective.

### a.    Standard of review for ineffective assistance claims

Ineffective assistance of counsel is an external objective fact which can constitute cause to overcome a procedural default. However, the ineffective assistance must be *constitutionally* ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). *Hollis v. Davis*, 941 F.2d 1471, 1476 (11th Cir. 1991). "The mere fact that counsel failed to

20

recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Richardson v. Johnson*, 864 F.2d 1536, 1539 (11th Cir. 1989).

In order for Hamm to obtain relief on a claim of ineffective assistance of counsel, he must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688-694, 104 S.Ct. 2052, 2064-2065 (1984). In assessing this claim, the court "must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S.Ct. at 2069. "'[T]here are countless ways to provide effective assistance in any given case.'" *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2052). And "'[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *Id.* Therefore, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

21

In evaluating counsel's performance under *Strickland,* the proper inquiry is limited to whether counsel's course of action might have been a reasonable one in light of the entire record and the information available to counsel at the time. *See, e.g., Chandler v. United States*, 218 F.3d 1305, 1315-1316, 1320 (11th Cir. 2000) (*en banc*)  As the Supreme Court recently reiterated, "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Pinholster*, 131 S.Ct. at 1407 (quoting *Strickland,* 466 U.S. at 689-690, 104 S.Ct. at 2066). Consequently, a reviewing court "[is] required not simply to give [the] attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [trial] counsel may have had for proceeding as they did." *Pinholster*, 131 S.Ct. at 1407 (internal quotation marks and citations omitted).

Under the prejudice prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2068.  Instead, the proper inquiry is: whether there is **a substantial likelihood** that but for counsel's errors, the result of the proceeding would have been different. *See Harrington v. Richter*, 131 S.Ct. 770, 792 (2011) ("The likelihood of a

different result must be *substantial*, not just conceivable.") (emphasis added).

Relevant to this case, when reviewing *Strickland* claims under the deferential lens of §2254(d), establishing that a state court's application of *Strickland* was unreasonable "is all the more difficult." *Id*. at 788. "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' … and when the two apply in tandem, review is 'doubly' so." <u>Id.</u> (internal citations omitted). For under §2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied *Strickland's* deferential standard." *Id*. (emphasis added.) As the Supreme Court has cautioned, "[s]urmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010). As explained below, Hamm cannot clear that hurdle.

### b.    Counsel's failure to investigate the Tennessee convictions

As the district court found, Hamm failed to prove that the determination by the Alabama Court of Criminal Appeals that trial counsel had no duty to challenge his nine-year-old Tennessee convictions so that he could then prevent consideration of the prior convictions at the 1987 capital sentencing hearing is "contrary to, or involved an unreasonable application

23

of, clearly established" Supreme Court precedent. (Doc. 26, pp. 85-93)

Hamm relies in this Court – as he did in the district court – on the Supreme

Court's opinion in *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456 (2005),

to argue that the decision of the Alabama Court of Criminal Appeals is

contrary to Supreme Court precedent.

Hamm's argument fails because the determination by the Alabama

Court of Criminal Appeals is not contrary to *Rompilla*. As the district

court noted, the Supreme Court found Rompilla's counsel ineffective

because counsel failed to investigate a prior criminal conviction but did so

based on the particular circumstances of the case. (Doc. 26, pp. 86-87)

Those circumstances were that the prosecutor twice told trial counsel that

he intended to use the prior convictions *in a particular way* – by using a

previous victim's trial testimony to accentuate Rompilla's propensity for

violence – and counsel did not take any steps to negate or counteract the

effect of that testimony by examining the readily available transcript. Thus,

as the district court found,

> Hamm's circumstances are markedly different from the
> particular circumstances upon which the United States
> Supreme Court found counsel to be objectively deficient in
> *Rompilla*. In Hamm's case, Hamm does not dispute that his
> counsel had no reason to believe the purported facts underlying
> the Tennessee convictions would be highlighted in any way at
> sentencing, and they were not. He also does not dispute that
> counsel's conversations with Hamm about the nature of the

24

Tennessee offenses matched the crimes for which his client
had pled guilty.

(Doc. 26, pp. 87-88)

In addition, there is absolutely no evidence that trial counsel was

informed that Hamm did not commit this crime, that his guilty plea was

involuntarily entered, or that the plea colloquy transcript could reveal

evidence that would negate the State's aggravating circumstance.  The only

testimony pertaining to the investigation is from trial counsel who testified

at the post-conviction hearing that he discussed the nature and

circumstances of the Tennessee charges and pleas of guilt with Hamm,

including that he pled to lesser charges, and that Hamm's version of events

was consistent with the information counsel had obtained from Tennessee.

(Doc. 26, p. 88)  As the district court found,

> Based on what Hamm told him, Harris had no reason to
> question whether Hamm committed the Tennessee offenses to
> which he plead guilty or whether Hamm's guilty pleas were
> voluntary, knowing, and intelligent.  Thus, Harris's
> investigation was limited to obtaining copies of the Tennessee
> convictions, which contained facially valid orders finding of
> Hamm's pleas of guilt to the lesser-included offenses and the
> punishment imposed.

(Doc. 26, p. 89)

Hamm contends that the district court's finding that Harris had no

reason to question whether Hamm committed the Tennessee offenses to

which he plead guilty or whether Hamm's guilty pleas were voluntary, knowing, and intelligent is purely speculative and is therefore clearly erroneous. Hamm's argument is without merit because counsel testified that he reviewed documents concerning Hamm's Tennessee convictions and that "they came back exactly like he told me that they had happened." (Vol. 21, Tab#42, p. 39)  The district court's inference from this testimony that trial counsel had no reason to question whether Hamm committed the offenses and whether his guilty pleas were voluntary is reasonable from the record before the court. This is especially true where Hamm presented no evidence he informed counsel that he did not commit the crime or that his guilty plea was involuntary. As the district court found, there was no reason for counsel to go beyond what Hamm had told him about the Tennessee offenses.

The circumstances of Hamm's case "bear no resemblance to *Rompilla*." (Doc. 26, p. 89)  The district court, therefore, properly concluded that, "*Rompilla* does not mandate that reasonable counsel must obtain transcripts of guilty plea hearings for prior convictions offered as aggravators to discover *Boykin* errors when no other affirmative indications would make counsel aware that the plea colloquy transcript could reveal evidence that would help negate the State's aggravating case." (Doc. 26, p.

26

89)  Because this claim of ineffective assistance of counsel has no merit, it does not constitute cause to overcome the procedural defaults of Hamm's claim.

### c. Counsel's failure to adequately object to introduction of evidence that Hamm was charged with armed robbery

Hamm also asserts as cause to overcome the procedural default of this claim that his attorneys failed to object to the introduction of evidence that Hamm was charged with armed robbery in Tennessee.

As the post-conviction court and the Alabama Court of Criminal Appeals found, trial counsel's performance was not deficient because counsel did object to the introduction of the copies of his Tennessee convictions into evidence because they contained information that he had been charged with two armed robberies.  (Vol. 7, Tab#19, pp. 1212-1214) The trial court sustained the objection and the indictments were removed from the material.  When the prosecution moved to admit the convictions, trial counsel again objected to the admission of this evidence on the "same grounds" but the trial court overruled the objection.  Because counsel did object to the introduction of the evidence concerning Hamm's prior convictions, counsel's performance was not deficient.  (Doc. 26, pp. 121-125)

27

Further, as the post-conviction court and the Alabama Court of

Criminal Appeals found, Hamm has not established prejudice because only

the convictions for "simple" robbery were introduced at trial and considered

by the trial court at sentencing.  As the post-conviction court found,

> The court instructed the jury that it could consider Hamm's
> prior robbery <u>convictions</u> in determining whether the
> aggravating circumstance that Hamm had previously been
> <u>convicted</u> of a felony involving the use or threat of violence to
> the person.  Exhibits 1-A and 1-B clearly show that Hamm was
> <u>convicted</u> of simple robbery and not armed robbery. …
> Further, it is clear from the trial court's sentencing order that it
> considered only Hamm's prior convictions and not the charges
> filed against him in Tennessee.  (emphasis in original)

(Vol. 33, Tab#58, pp. 31-32)

Hamm has failed to establish that the state court's determination that

trial counsel's representation was not deficient or prejudicial are contrary to

or an unreasonable application of *Strickland*.  Because Hamm has not

shown that counsel were constitutionally ineffective, he has not shown

cause to overcome the procedural defaults of this claim.

> **2.     Hamm has not shown that a fundamental
>         miscarriage of justice exists to overcome the
>         procedural defaults.**

Hamm has also failed to prove that a fundamental miscarriage of

justice exists to overcome the procedural defaults of this claim.  The

Supreme Court recognized in *Murray v. Carrier*, 477 U.S. 478, 495-496,

28

106 S.Ct. 2639, 2649-2650 (1986), that in certain extraordinary circumstances a federal court has the power to consider an issue even though the issue is procedurally defaulted. The Supreme Court held that a federal court may review a defaulted claim "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*., at 496, 106 S.Ct. at 2649. In *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, the Supreme Court defined "actually innocent" in the context of a capital sentencing procedure. The Supreme Court stated the following:

> We … hold that to show actual innocence," one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.

*Id*., 505 U.S. at 336, 112 S.Ct. at 2517. The Supreme Court then concluded that the petitioner's claims that he had been denied access to exculpatory materials and his right to effective assistance of counsel, even if proven, did not establish that he was ineligible for the death sentence.

Hamm asserts that he is actually innocent of one of the aggravating circumstances found by the trial court – that he was previously convicted of a felony involving the use or threat of violence to a person. However, the trial court found another aggravating circumstance in this case – that Hamm was engaged in the commission of a robbery. Hamm does not challenge the validity of this second aggravating circumstance. He, therefore, was

29

eligible for the death penalty under Alabama law. Thus, the fundamental miscarriage of justice exception does not apply to overcome the procedural defaults of this claim.

### 3. No *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), exception exists to overcome the procedural defaults.

Hamm contends that the "*Gideon*-type" problem in his case puts this case on all fours with the narrow exception for relief recognized by the Supreme Court in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). Hamm argues that the "*Gideon*-type" right to effective assistance of counsel problem permeates his claim regarding his prior Tennessee convictions and entitles him to a merits review of his claim.

Contrary to Hamm's argument, the narrow exception in *Martinez* does not apply to overcome the procedural defaults of his claim. In *Martinez*, the Supreme Court modified the long-standing principle found in *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546 (1991), that because "there is no right to counsel in state collateral proceedings," a petitioner cannot allege the constitutional ineffectiveness of his post-conviction counsel as cause to overcome a claim that was procedurally defaulted during collateral proceedings. *Coleman*, 501 U.S. at 757, 111 S.Ct. at 2568. The Supreme Court in *Martinez* held, as follows:

> This opinion qualifies *Coleman* by recognizing a narrow
> exception.  Inadequate assistance of counsel at initial-review
> collateral proceedings may establish cause for a prisoner's
> procedural default of a claim of ineffective assistance at trial.

*Martinez*, 132 S.Ct. at 1315.  The Supreme Court also explained that the

phrase "initial-review post-conviction proceedings" referred exclusively to

post-conviction proceedings at the trial court level.  *Id.*, at 1317.

Hamm is attempting to apply the narrow exception in *Martinez* to his

substantive claim that he was improperly sentenced to death because the

State relied on unconstitutionally obtained Tennessee convictions to support

one of the two aggravating circumstances in his case.  But the narrow

exception in *Martinez* does not apply to this claim because ineffective

assistance of post-conviction counsel can only be cause to overcome a

petitioner's procedural default of an ineffective assistance of trial counsel

claim.  *Martinez*, at 1315.  Moreover, in this case, post-conviction counsel

raised ineffective assistance of counsel claims in the post-conviction

proceedings alleging that counsel were ineffective for not challenging

Hamm's Tennessee convictions.  As set forth above, this ineffective

assistance of counsel claim was found to be without merit.  In addition,

current counsel also attempted unsuccessfully to challenge Hamm's

Tennessee convictions in Tennessee while his post-conviction petition was

pending in the Alabama courts.  The narrow exception in *Martinez* does not

31

apply in this case because Hamm is not attempting to overcome the procedural default of an ineffective assistance of counsel claim by showing cause but instead is challenging the procedural default of a substantive claim.

### B.    Hamm's Claim Does Not Entitle Him To Relief.

Hamm asserts that the Supreme Court's holding in *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981 (1988), entitles him to relief.  For the reasons set forth below, Hamm should not prevail on this argument.

In *Johnson*, the defendant was convicted of murder in Mississippi in 1982 and was sentenced to death.  His death sentence was predicated, in part, on the fact that he had been convicted of a felony in New York in 1963.  After the Mississippi death sentence had been affirmed by the Supreme Court of Mississippi, Johnson's 1963 conviction was reversed. *Id*., at 580-582, 108 S.Ct. at 1983-1985.  Johnson then unsuccessfully challenged his death sentence on the ground that the New York conviction was invalid and could not be used as an aggravating circumstance.  *Id*, at 583-584, 108 S.Ct. at 1985-1986.  The Supreme Court granted certiorari "to consider whether the Federal Constitution requires a reexamination of petitioner's death sentence" and concluded that it does.  *Id.*, at 584-590, 108 S.Ct. at 1986-1989.

The Supreme Court later decided three cases which also bear on Hamm's claim: *Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732 (1994); *Daniels v. United States*, 532 U.S. 374, 121 S.Ct. 1578 (2001); and *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 121 S.Ct. 1567 (2001). In *Custis*, the Supreme Court granted certiorari "to determine whether a defendant in a federal sentencing proceeding may collaterally attack the validity of previous state convictions that are used to enhance his sentence" and held that the defendant could not challenge his state court convictions at the federal sentencing hearing. The Court did so after finding no statutory authorization for such an attack and noting that the defendant had not contended that the previous convictions were invalid under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963).

The Supreme Court then issued its decisions in *Daniels* and *Coss* on the same day. In *Daniels*, the Court considered "whether, after the sentencing proceeding has concluded, the [defendant] may challenge his federal sentence through a motion under 28 U.S.C. §2255 (1994 Supp. V) on the ground that his prior convictions [which had been used to enhance his sentence] were unconstitutionally obtained" and held that he could not. *Coss* involved a habeas petition brought under 28 U.S.C. §2254. In *Coss,* the Supreme Court adopted its rationale in *Daniels,* holding, as follows:

> [O]nce a state conviction is no longer open to direct or
> collateral attack in its own right because the defendant failed to
> pursue those remedies while they were available (or because
> the defendant did so unsuccessfully), the conviction may be
> regarded as conclusively valid. See *Daniels, post,* at 382, 121
> S.Ct. 1578. If that conviction is later used to enhance a
> criminal sentence, the defendant generally may not challenge
> the enhanced sentence through a petition under § 2254 on the
> ground that the prior conviction was unconstitutionally
> obtained.

*Coss*, 532 U.S. at 403-404, 121 S.Ct. at 1574. The Supreme Court

recognized an exception to this general rule in cases where there was a

failure to appoint counsel in violation of *Gideon v. Wainwright*, 372 U.S.

335, 83 S.Ct. 792 (1963).

Hamm's case is not distinguishable in any relevant way from *Coss*.

Hamm is seeking to challenge expired Tennessee convictions that were

used to support one of the aggravating circumstances in his case. Hamm

unsuccessfully attempted to challenge his Tennessee convictions. Hamm

cannot now challenge the Tennessee convictions in this habeas petition on

the ground that the convictions were unconstitutionally obtained. *Coss*,

*supra*. As the district court found:

> At this point, Hamm's Tennessee convictions are conclusively
> valid because he already has unsuccessfully attacked the
> convictions in the State of Tennessee and in the federal courts
> of the Sixth Circuit. Because his current situation falls directly
> within one of the considerations that limits federal jurisdiction,
> and does not fall with any exception to that limitation, it
> follows that this court is without authority to address the claim.

34

(Doc. 26, p. 64)

Hamm contends that his case is controlled by the rule announced by the Supreme Court in *Johnson v. Mississippi* and not by the precedent established in the *Custis, Daniels,* and *Coss* decisions because the Supreme Court has not extended those holdings in the capital context.  Hamm also argues that the *Johnson* rule applies because *Coss* was decided 11 years after his trial and appeal.  The district court properly rejected these arguments finding that the Supreme Court "did not exclude capital offenses from the 28 U.S.C. §2254 state court convictions it addressed in its holding."  (Doc. 26, p. 61)  In addition, the district court properly found that "the due process concerns in *Coss* did not exist in *Johnson v. Mississippi*" because in *Johnson* the petitioner's prior New York conviction had already been reversed when he sought relief from his death sentence in Mississippi, therefore, the only issue "was 'whether the state court was correct in concluding that the reversal of the New York conviction did not affect the validity of a death sentence based on that conviction.'"  (Doc. 26, p. 62)

Hamm's argument that *Johnson* requires that he be given relief also fails because the facts in this case are distinguishable from the facts in *Johnson*.  As noted above, in *Johnson*, the petitioner's prior New York conviction had already been reversed when he sought relief from his

35

Mississippi death sentence.  The question in *Johnson*, therefore, was "whether the state court was correct in concluding that the reversal of the New York conviction did not affect the validity of a death sentence based on that conviction."  486 U.S. at 580, 108 S.Ct. at 1984.  In the instant case, Hamm's Tennessee convictions have not been reversed.  In fact, Hamm has not been successful in challenging his Tennessee convictions. Because the holding in *Johnson* does not apply to Hamm's death sentence, he cannot establish that the state court's decision is contrary to or involved an unreasonable application of clearly established Supreme Court precedent as required by 28 U.S.C. §2254 (d).

Hamm next contends that his case falls within the exception to the limiting considerations recognized by the Supreme Court in *Coss* because his case involves a "*Gideon*-type" right to counsel problem.  Hamm asserts that his Tennessee convictions involve "the outright denial of the right to the effective assistance of counsel and the right to counsel on appeal." (Blue Brief, p. 14)  The fact that Hamm refers to his claim as a "*Gideon*-type" problem is the first indication that Hamm is not entitled to relief on this claim.  Hamm's claim, in fact, does not involve a *Gideon*[2] challenge –

---

[2] In *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963), the Supreme Court held that an indigent defendant has a right to have counsel appointed to represent him at his trial.

the only exception recognized by the Supreme Court to its holding in *Coss*.

Instead, Hamm is attempting to expand the exception to include the denial

of his right to the effective assistance of counsel and the right to counsel on

appeal.[3]  (Blue Brief, p. 14)  As the district court noted, "the United States

Supreme Court has never expanded its holding in *Coss* to include any

exception other than a *Gideon* challenge."  Hamm, therefore, has failed to

sustain his burden of proving that the state court decision is contrary to or

involves an unreasonable application of established Supreme Court

precedent as required by 28 U.S.C. §2254 (d).

    Moreover, as the district court found, there is no *Gideon* violation in

the case.  The district court stated the following concerning this finding:

> Moreover, the constitutionality of that Tennessee
> law was sound because a "State is not required by the Federal
> Constitution to provide appellate courts or a right to appellate
> review at all." *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S. Ct. 585
> (1956).  Because Hamm did not have a right to appeal from his
> 1978 guilty plea under State or Federal law, it follows that he
> had no Sixth Amendment right to appellate counsel if
> Tennessee statutory law did not afford him one.  Hamm's

---

[3] Hamm argues in footnote 1 of his brief that the district court erred when it
held, relying on *Capri Adult Cinema v. Tennessee*, 537 S.W.2d 896 (Tenn.
1976), that this case barred appeal of all guilty pleas in Tennessee at the
relevant time.  However, a review of the district court opinion reveals that
this is not what the district court held.  Instead, the district court noted that
"pursuant to Tennessee law in effect at the time, a defendant had no general
right to appeal from a plea of guilty" which was a correct statement of
Tennessee law.  (Doc. 26, p. 62)

*Gideon* challenge is without merit, and he cannot establish that
his case is excepted from the jurisdictional limitations of *Coss*.

(Doc. 26, pp. 62-63)

Hamm also argues that his case falls within the second exception

recognized by Justice O'Connor in the plurality opinion in *Coss*.  As the

district court found, this exception does not apply because it was not part of

the holding of the Supreme Court and the Supreme Court has never

expanded its holding in *Coss* to include any exception other than a *Gideon*

challenge.  (Doc. 26, p. 63)  Hamm, therefore, cannot prove that the

decision of the state court is contrary to, or involves an unreasonable

application of, established Supreme Court precedent.  Moreover, as the

district court found, Hamm's presentation of his actual innocence evidence

to the Tennessee courts places him "outside of the type of petitioner

arguably envisioned by Justice O'Connor."  (Doc. 26, pp. 63-64)  This is

because

> Even if, assuming for the sake of argument, an assertion
> of actual innocence could be a second exception to *Coss's*
> limiting considerations, Hamm could not avail himself of such
> an argument because he presented his "newly discovered
> evidence" of actual innocence to the Tennessee state court in
> his 1992 amended post-conviction petition. Nonetheless,
> the state court did not excuse Hamm from the three year statute
> of limitation afforded him to file a post-conviction petition
> under the state law of Tennessee. The circuit court's decision
> was affirmed by the Tennessee appellate court. (Rule 32 C.R.
> Vol. 12, p. 230).

38

(Doc. 26, p. 63)  Hamm, therefore, is not entitled to relief on his argument that his case falls within the second exception recognized by Justice O'Connor in the plurality opinion in *Coss*.

Finally, Hamm contends that the ruling of the Alabama Court of Criminal Appeals is an unreasonable application of federal law because it contains inconsistent holdings that his substantive claim is procedurally defaulted and that counsel was effective even though counsel failed to discover that the convictions were invalid and challenge them.  (Blue Brief, p. 15)  Hamm is not entitled to relief on this claim because he cites no Supreme Court precedent – as he is required to under the AEDPA – to show that the alleged inconsistent holdings of the Alabama Court of Criminal Appeals is an unreasonable application of federal law.  Moreover, the ruling of the Alabama Court of Criminal Appeals is not inconsistent.  The Alabama Court of Criminal Appeals found that the substantive claim was procedurally defaulted because it was not raised at trial and on appeal and found that the ineffective assistance of counsel claim was without merit because "Hamm's assertion that Alabama trial counsel had a duty to challenge in a Tennessee court the merits of the nine-year-old convictions

so that he could then prevent consideration of the prior convictions is not

supported by any legal authority." *Hamm v. State*, 913 So. 2d 460, at 479.[4]

## II. Hamm's Claim That Counsel Was Ineffective During The Penalty Phase Is Meritless.

Hamm contends that his trial attorneys were ineffective at the penalty

phase for failing to investigate and present certain mitigating evidence. But

the state courts, after an evidentiary hearing and thorough review of the

record, disagreed, concluding that counsel's performance was not deficient

and that no prejudice had occurred. *Hamm*, 913 So.2d at 486-488. And the

district court correctly concluded that the state courts' decision was not an

unreasonable application of clearly established federal law. (Doc. 26, p.

109)

### A. The state court's decision that trial counsel were not constitutionally deficient was not unreasonable.

Hamm contends that his attorney's penalty-phase performance was

constitutionally deficient because they failed to investigate, discover, and

present a wealth of documents and testimonial evidence concerning the

lengthy criminal records of his family members, his school records, and his

---

[4] Hamm also argues that consideration of the Tennessee conviction was not harmless. The State has not addressed this issue because the claim is procedurally defaulted and Hamm has not shown cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default. In addition, the claim does not entitle Hamm to relief.

medical and mental health records. Hamm argues that these records would

have corroborated a psychologist's findings (Dr. Dale Watson) that Hamm

suffers from brain damage and impaired judgment, has a history of seizures,

and is in the "borderline range of measured intellectual ability overall."

(Blue Brief, pp. 34-37)

The district court rejected Hamm's argument that his attorney's failed

to conduct an adequate penalty phase investigation, finding as follows:

> Counsel conducted an investigation into Hamm's background
> and history that allowed the jury to be presented all of the
> mitigating aspects of that history, without subjecting Hamm to
> the double-edge sword of his full criminal record and other
> negative material. Such an investigation and any limitations on
> it were reasonable under counsel's valid penalty phase
> strategy. Unlike *Rompilla*, *Wiggins*, and *Williams*, the jury *was
> well aware of Hamm's piteous background, poor education,
> and mental and medical difficulties*. The exhibits admitted at
> the evidentiary hearing contained evidence not only
> cumulative to the case Harris presented at the penalty phase,
> but also contained information that was very prejudicial to
> Hamm that counsel had wisely determined not to present to the
> jury. Therefore, Hamm cannot show the state court's
> determination that he was not prejudiced was an unreasonable
> evaluation of the totality and weight of the available mitigation
> evidence at trial and during post-conviction proceedings
> against the aggravating factors presented at trial. (emphasis
> in original)

(Doc. 26, p. 106)

Hamm argues that the state court's conclusion that counsel conducted

a reasonable investigation into mitigating evidence is clearly erroneous.

41

Hamm relies on *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 245 (2005),

*Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct.2527 (2003), and *Williams v.*

*Taylor*, 529 U.S. 362, 120 S.Ct.1495 (2000), to support his argument.

However, the facts in this case are distinguishable from the facts in those

cases.  This is not a case where counsel failed to properly investigate the

defendant's previous criminal conviction even though they were warned

twice by the prosecutor that this conviction would be used and where this

investigation would have uncovered a wealth of mitigating evidence that no

other source uncovered.  *Rompilla*, 545 U.S. at 374-376, 125 S.Ct. at 2457-

2459.  Nor is this a case where counsel knew before trial that there were

strong "red flags" concerning Wiggin's background.  *Wiggins*, 539 U.S. at

535, 123 S.Ct. at 2542.  Finally, this is not a case where counsel did not

perform a penalty phase investigation until one week before trial and

discovered none of the information pertaining to Williams's "nightmarish

childhood" and borderline mental retardation.  *Williams*, 529 U.S. at 363-

364,123 S.Ct. at 1497-1498.

As the Alabama Court of Criminal Appeals found, the evidence

Hamm now contends was not investigated and presented  - the lengthy

criminal records of Hamm's family members, his terrible background, his

history of seizures, and his drug and alcohol abuse - was investigated and

presented through the testimony of Hamm's sister, Ruthie.  *Hamm*, 913 So.

2d. at 487.  The Alabama Court of Criminal Appeals stated the following

concerning counsel's alleged failure to investigate:

> The trial record further demonstrates that Hamm's sister
> testified that their father gave the children alcohol and told
> them that if they did not drink, they were not "a Hamm." (T.
> 1225.) Hamm's sister also testified as to Hamm's abuse of
> alcohol and other drugs. (T. 1227-28, 1231-32.) The sister
> testified about the family's living conditions when Hamm was
> young, and she detailed the abuse the father inflicted on the
> children. (T. 1220-26.)

*Id*.  As the district court found, the mitigating evidence was investigated

and known to trial counsel before trial but trial counsel "had to convince his

client to allow this history to be presented to the jury through the testimony

of Hamm's sister Ruthie at the penalty phase of trial."  (Doc. 26, pp. 105-

106)  Moreover, "when the mitigating evidence at trial and the *admitted*

mitigating evidence present at the post-conviction proceeding are placed

side-by-side, the state court was not unreasonable to determine that

counsel's strategy was reasonable and the post-conviction evidence simply

was cumulative to that presented at the penalty phase."  (Doc. 26, p. 106)

Hamm also contends that his attorneys were ineffective because they

failed to present evidence from experts like that offered by mitigation

expert Gaye Nease and psychologist Dale Watson.  Hamm asserts that

counsel should have presented the mental health evidence offered by Dr.

43

Watson that Hamm suffers from "neuropsychological impairment and presumptively brain damage" and is in the "borderline range of measured intellectual ability overall."  (Blue Brief, pp. 35-36)  Hamm is not entitled to relief on this argument because he did not present the testimony of either of these witnesses at the post-conviction evidentiary hearing.  As the district court noted, "[P]ost-conviction counsel had the opportunity to present this evidence at the Rule 32 hearing and did not do so."  (Doc. 26, pp. 106-107)  In addition, while the affidavit of Gaye Nease was admitted into evidence, this evidence was cumulative to the evidence offered during the penalty phase of the trial and contained information concerning Hamm's criminal background that trial counsel did not want the jury to see because it would have been detrimental to Hamm.  (Doc. 26, pp. 97-98)

The facts concerning Hamm's brain damage and intellectual functioning are not properly before this Court.  Hamm attempted to present the affidavit of Dr. Dale Watson during the post-conviction evidentiary hearing.  The State objected to the introduction of this affidavit.  At that time, the post-conviction court reserved ruling on the State's objection.  (Vol. 21, Tab#42, pp. 18-19)  At the conclusion of the post-conviction evidentiary hearing, the trial court sustained the State's objection to the affidavit and did not admit it into evidence.  (Vol. 21, Tab#42, p. 63)  The

44

Alabama Court of Criminal Appeals affirmed this ruling by the post-

conviction court, holding as follows:

> If the court had admitted the affidavit, the State would not have
> been able to examine Dr. Watson about his education and
> expertise, his testing methods, the validity of his conclusions,
> or any other areas appropriate for cross-examination. (footnote
> omitted)

*Hamm*, 913 So. 2d at 478-479.  Because Hamm did not call Dr. Watson to

testify at the post-conviction hearing and because the trial court did not

admit his affidavit into evidence, this evidence cannot be considered by this

Court.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011)("review under

§2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits.").

Hamm argues that the district court erred when it held that this

evidence was not admitted into evidence because "[a]ny technical defect in

the request for admission should be resolved in Mr. Hamm's favor in light

of the fact that he was effectively proceeding *pro se* at the Rule 32 hearing."

Hamm is not entitled to any relief on this argument because he was not

effectively proceeding *pro se* but was ably represented by attorney Pam

Nail during the post-conviction proceedings.  Hamm is also incorrect in his

assertion in footnote 3 that any question as to the admission of this evidence

raises a *Martinez v. Ryan* issue.  The Supreme Court's narrow exception in

45

*Martinez* – that inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial – does not apply here because Hamm's ineffective assistance of counsel claim is not procedurally defaulted. *Martinez*, 132 S.Ct. at 1315.

Hamm argues that this Court should grant relief on his ineffective assistance of counsel claim because trial counsel's testimony that he would not have used exhibits pertaining to the Hamm family's criminal history is a "straight lie" because he did present evidence concerning his family's criminal history. (Blue Brief, p. 39) Hamm's assertion that trial counsel lied during the post-conviction evidentiary hearing is incorrect. Trial counsel actually testified that he would not have presented the evidence in post-conviction exhibits 4 and 5 because these exhibits contained references to Hamm's criminal history – as opposed to his family's criminal history which was testified to by Hamm's sister. (Vol. 21, Tab#42, pp. 14-15) Trial counsel testified as follows at the post-conviction evidentiary hearing:

> We were aware of these records but the indication, there were just a few charges that the State brought out at trial in regard to his criminal history. These [sic] records would have indicated serving time on some other crimes that were not actually brought forth at trial and would have actually given enhancement to the death penalty phase to get into his history other than what was actually presented at that time.

46

(Vol. 21, Tab#42, p. 15) As the district court found concerning this argument:  "Harris did not lie:  he made it clear that he would *not* have used any exhibits that would have revealed Hamm's extensive criminal history." (Doc. 26, p. 108)

Hamm also argues that relief should be granted on this ineffective assistance of counsel claim because the "superficial" and "preposterous" testimony by Ruthie Murphy was not credible or believable "*because Mr. Harris presented no documentary evidence to prove it*."  (Blue Brief, p. 40) The district court rejected this argument finding that "there is no reason to think that the jury did not credit Ruthie's testimony, and the trial judge clearly found Ruthie's testimony to be credible as evidenced by the sentencing order."  (Doc. 26, p. 107)  In fact, the trial court found the following extensive non-statutory mitigating evidence to exist based on Ruthie's testimony:

> "The Defendant was born February 14, 1957, and Defendant was raised by his Mother and Father and lived in Colbert County, Alabama, until 1975. Defendant was the eighth of ten children born to those parents. It appears that he had a good Mother, but no[t] much can be said of his Father. It appears that his Father was a heavy drinker and had spent time in prison. It seems that he tried to instill in his children the idea that if they did not steal they weren't a 'Hamm'. The Defendant's Father died in 1971 when Defendant was thirteen years old. Afterwards, he was raised by his Mother. Ruthie Murphree, his Sister, helped the Mother raise the Defendant. Ruthie is slightly older than the Defendant and has no record of criminal activity.

47

She is married and is a housewife. The Defendant's Brothers, James, Roy, Horace, Jimmy, O'Neal, David, and Danny, all either served time in prison or are now serving time in prison. James died in 1969 and Roy hanged himself in 1978. Defendant has another Sister, Linda Hamm Murphree, age 29, who is married to Johnny Murphree and who appears to be a nice person who has never been in trouble. ... The fact that the Defendant and all his Brothers have prison records is certainly an indication that their Father was a terrible influence on his children. His conduct while participating in the raising of these young boys created an obstacle to the development of their character, which was, indeed, difficult to overcome. The Defendant had no control over the conduct of his Father, and, of course, this type of conduct by his Father was irresponsible and deplorable. It absolutely had a negative influence on the Defendant. It is to be noted, however, that the two girl children were able to rise above this influence and appear to be good citizens. The Defendant had a poor education and suffered from epilepsy."

(C. 106-070(quoting T. 1374.)

*Hamm*, 913 So. 2d at 486-487. Contrary to Hamm's argument, it was not necessary for trial counsel to present documentary evidence to make Ruthie's testimony credible and believable.

Finally, Hamm argues that by this Court's standards, set forth in *Ferrell v. Hall*, 640 F.3d 1199 (11th Cir. 2011), *Williams v. Allen*, 542 F.3d 1326 (11th Cir. 2008), *Dobbs v. Turpin*, 142 F.3d 1383 (11th Cir. 1988), and *Johnson v. Singletary*, 643 F.3d 907 (11th Cir. 2011), this Court must find counsel's performance deficient. Contrary to Hamm's argument, these cases do not require that this Court grant any relief to Hamm.

48

This is not a case where counsel presented no mitigating evidence during the penalty phase of the trial despite a wealth of mitigating evidence. Nor did counsel testify that it was his impression that the defendant did not want to put on any mitigating evidence. *See, Dobbs v. Turpin*, 142 F. 3d at 1387-1388. In this case, in fact, counsel did present a wealth of mitigating evidence that the trial court found as non-statutory mitigating evidence and presented this evidence over Hamm's objection. The facts in this case are also distinguishable from the facts in *Johnson* where counsel waited until after the guilt phase of the trial to investigate the information his client had given him – including the fact that his client had a bad childhood because his father was an alcoholic who abused and abandoned his family. 643 F.3d at 932-933.

This is also not a case where counsel decided to present a "residual doubt" strategy at the penalty phase because counsel had not investigated mitigating evidence. *Ferrell*, 643 F.3d at 1230-1231. In *Ferrell*, counsel's mitigation investigation consisted of asking potential mitigation witnesses whether Ferrell was trustworthy and had a good reputation. Because of this limited investigation, counsel failed to uncover that Ferrell suffered from bipolar disorder, brain damage and epilepsy and had an abused and impoverished childhood. *Id.*, at 1228-1231. Finally, this is not a case

where counsel had information that should have led them to conduct a further mitigation investigation which would have revealed that the defendant exhibited signs of a personality disorder, depression, was a possible suicide risk whose father frequently abused his mother and the children in the family. *Williams*, 542 F.3d at 1339-1340. Instead, as set forth above, Hamm's counsel investigated and presented significant evidence about Hamm's troubled background which the trial court found as non-statutory mitigation.

### B. The state court's decision that Hamm was not prejudiced was not unreasonable.

A defendant must also establish the prejudice requirement, which requires that he prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S Ct. at 2068. "The appropriate analysis of the prejudice prong of *Strickland* requires an evaluation of 'the totality of the available mitigation evidence – both that adduced at trial, and the evidence adduced in the habeas proceeding – in reweighing it against the evidence in aggravation." *Bottoson v. Moore*, 234 F.3d 526, 534 (11th Cir. 2000), *quoting Williams v. Taylor*, 529 U.S. 362, 397-398, 120 S.Ct. 1495, 1515 (2000). To establish prejudice sufficient to sustain a claim of ineffective assistance of counsel at sentencing, "[i]t is not enough for the

50

defendant to show that the error had some conceivable effect on the outcome of the proceeding." *Tompkins v. Moore*, 193 F.3d 1327, 1336 (11th Cir. 1999). Instead, *Strickland* makes it clear that "the question is whether there is a reasonable probability that, absent the errors, the sentencer – including an appellate court, to the extent it reweighs the evidence – would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069.

The Alabama Court of Criminal Appeals found that Hamm was not prejudiced by counsel's conduct during the penalty phase of the trial. *Hamm*, 913 So. 2d at 488. That decision is entitled to deference, and as the district court concluded, it is not contrary to or an unreasonable application of Supreme Court precedent. (Doc. 26, p. 109)

Hamm seeks to escape §2254's deferential bar in several ways, none of which are successful. First, Hamm argues that the only information the sentencer received regarding his background and health came from the unsupported, unconvincing claims from his sister Ruthie. As set forth above, it was not necessary for trial counsel to support Ruthie's testimony with documentary evidence and there is no reason to believe that the jury did not credit Ruthie's testimony. This is especially true where the trial

51

court clearly credited Ruthie's testimony in its sentencing order. *Hamm*, 913 So. 2d at 486-487.

Hamm also asserts that he was prejudiced because trial counsel presented the criminal history of his brothers but failed to present evidence that his sisters also had been accused of crimes. Hamm argues that trial counsel presented direct evidence of prejudice from this failure based on counsel's testimony at the post-conviction evidentiary hearing that jurors indicated to him after the trial that they felt like that if the girls could have gone through life without being involved in crime that the boys could have too. Thus, Hamm contends that had counsel presented this evidence, the jury would have reached a different result. (Blue Brief, pp.47- 48)

The district court rejected this argument finding "that neither Linda nor Ruthie have been involved in a life of crime, whereas literally hundreds of pages document the criminal records of Hamm's father and seven brothers." (*See* Rule 32 C.R. Vol. 22, pp. 3-200; Vol. 23, pp. 201-317). Thus, as the jury reasonably would have determined, as found by the trial court at sentencing, the girls were able to rise above the negative familial influence." (Doc. 26, p. 108) Moreover, no one asked trial counsel about the sister's run-ins with the law: "The record is silent as to whether counsel may have determined that Ruthie, having no criminal convictions, still

would be the best and most believed narrator of Hamm's life before the jury. … More importantly, even if Ruthie or Linda's 1978 charges had been revealed, again the fact remains that neither of the girls had *significant* criminal records similar to Hamm and his brothers." (Doc. 26, pp. 108-109) As the district court then concluded, there is not a reasonable probability that the outcome of the sentencing phase would have been different had this evidence been presented.

In conclusion, there is not a reasonable probability that but for counsel's failure to investigate and present the mitigation offered in the post-conviction proceedings the outcome of the sentencing hearing would have been different. The evidence offered in the post-conviction proceedings did not negate the murder during a robbery aggravating circumstance. In addition, the mitigating evidence would not have swayed the jurors when the evidence of Hamm's guilt was overwhelming.

Hamm confessed to this crime and admitted that he was the person who shot and killed Patrick Cunningham during a robbery. Hamm was arrested at a trailer in Cullman. While searching the trailer, officers seized a nickel-plated .38 caliber pistol (same caliber as the murder weapon) and a faded green army fatigue jacket that the shooter was wearing during the crime that had .38 caliber bullets in the pocket. This Court stated the

53

following in *Grayson v. Thompson,* 257 F.3d 1194, 1229 (11th Cir. 2001),

*quoting Clisby v. Alabama*, 26 F.3d 1054, 1057 (11th Cir. 1994):

> "[W]e are aware that, in reality, some cases almost
> certainly cannot be won by defendants. *Strickland* and several
> of our cases reflect the reality of death penalty litigation:
> sometimes the best lawyering, not just reasonable lawyering,
> cannot convince the sentencer to overlook the facts of a brutal
> murder--or, even a less brutal murder for which there is strong
> evidence of guilt in fact."

The failure of Hamm's counsel to present more mitigating evidence did not

prejudice him.  This was a horrible crime and the jury would not have been

swayed by the evidence presented in the state post-conviction proceedings.

### III.    Hamm's *Brady v. Maryland* Claim Is Procedurally Defaulted And Is Also Without Merit.

Hamm's argument, that the State of Alabama withheld evidence of

Doug Roden's lying and deceptive character in violation of *Brady v.

Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1995), is procedurally defaulted and

is also without merit.

### A.    The *Brady* claim is procedurally defaulted

Hamm's *Brady* claim is procedurally defaulted because Hamm did

not attempt to raise the claim in state court until he appealed the denial of

his post-conviction petition to the Alabama Court of Criminal Appeals.  At

that time, the Alabama Court of Criminal Appeals refused to consider the

merits of the claim because it had not been presented to the post-conviction

54

court.  *Hamm v. State*, 913 So. 2d 460, 480.  Hamm argues that he

sufficiently presented this claim to the post-conviction court when he

specifically asked the post-conviction court to "admit into evidence and

consider in support of my Rule 32 petition all of the evidence that I sent to

the courts" which contained the records concerning Doug Roden that were

allegedly suppressed and which the post-conviction court received into

evidence.  (Blue Brief, p. 57)  The district court rejected Hamm's argument

holding that the *Brady* claim "was not fairly presented in the Rule 32

proceedings because it was not included in the Rule 32 petition, the state

circuit court was never advised of the relevance of the documents, and those

documents were not offered or admitted into evidence at the Rule 32

hearing.  These failures resulted in the appellate court's determination that

Hamm had not preserved the claim for review on collateral appeal, which is

an adequate and independent state procedural default finding."  (Doc. 26, p.

47)

Hamm also argues that the Supreme Court's exception in *Martinez v.*

*Ryan*, 132 S.Ct. 1309 (2012), applies to this claim because it applies

explicitly to claims of ineffective assistance of post-conviction counsel.

Hamm also argues, based on Justice Scalia's dissent in *Martinez*,  that  the

reasoning "underpinning the *Martinez* decision should apply equally to a

[substantive] *Brady* claim as it does to a trial IAC claim, both of which can only be raised in a Rule 32 proceeding." (Blue Brief, p. 57)

Hamm's arguments are without merit. First, any cause and prejudice allegations concerning the inadequacies of post-conviction counsel can only be asserted to overcome the procedural default of an ineffective assistance of trial counsel claim. *Martinez*, 130 S.Ct. at 1320. In addition, while Justice Scalia sarcastically noted in his *Martinez* dissent, that "no one really believes that the newly announced 'equitable' rule will remain limited to ineffective-assistance-of-trial-counsel cases" and specifically noted that state post-conviction proceedings would also be the first opportunity for *Brady* claims to be raised, this Court is bound to follow the holding of the Supreme Court in *Martinez* that the inadequacies of post-conviction counsel can only be asserted to overcome the procedural default of an ineffective assistance of trial counsel claim.

Hamm's *Brady* claim concerning Doug Roden is procedurally defaulted and Hamm has not shown cause and prejudice to overcome the default. In addition, the equitable exception set forth in *Martinez* does not apply to Hamm's case. This Court should, therefore, decline to review the merits of this claim.

**B.**     **The *Brady* claim is also without merit**

Hamm's *Brady* claim is also without merit because the information

concerning Doug Roden is not material to Hamm's guilt or innocence and

would not be favorable to Hamm to impeach Roden's credibility.  *See,*

*Brady v. Maryland*, 373 U.S. 83, at 87, 83 S. Ct. 1194, at 1196-1197 ("the

suppression by the prosecution of evidence favorable to an accused upon

request violates due process where the evidence is material either to guilt or

to punishment, irrespective of the good faith or bad faith of the

prosecution.").

The district court denied this claim because it is without merit.  (Doc.

26, pp. 47-51)  In reaching this conclusion, the district court stated the

following:

> This information would not have resulted in a devastating
> cross-examination of Roden at trial. At best, it shows that
> Roden was an individual who possibly had anti-social
> personality disorder with drug and alcohol issues. Although
> Hamm denies its existence, the trial record shows very
> powerful impeachment evidence that was used at trial to
> undermine Roden's credibility. Roden was questioned on both
> direct examination and on cross examination about his plea
> agreement in exchange for testifying against Hamm. (R. Vol. 5,
> pp. 874-75, 902, 921). The agreement allowed Roden to escape
> the capital murder charge against him, plead guilty to murder,
> and receive a life sentence. Roden also was questioned
> regarding the earlier inconsistent stories he told regarding his
> involvement in the murder-robbery, which included the
> purported kidnapping story. *Id*. at 897, 907-11, 917-18, 920.
> Finally, he was questioned about his two prior burglary

convictions. *Id.* at 900. Aside from Roden himself, it cannot be overlooked that Hamm confessed that he was the triggerman (R. Vol. 6, pp. 1077-88) and that Regina Roden corroborated (R. Vol. 5, pp. 821-69) both Hamm's confession and the testimony of Doug Roden. In the end, Hamm could not have derived any real benefit from a cross-examination of Doug Roden about his mental health and drug history, and certainly not enough to undermine confidence in the guilt or penalty phase of trial. In fact, the jury likely distilled from the trial evidence that Roden had some alcohol and anti-social personality issues. As such, the records are not material, and the Roden *Brady* claim lacks merit.

(Doc. 26, pp. 50-51) The district court properly found that Hamm's *Brady*

is without merit. This Court should affirm the district court's holding.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be affirmed.

Respectfully submitted,

Luther Strange
*Attorney General*

Andrew Brasher
*Solicitor General*

*s/  Beth Jackson Hughes*
Beth Jackson Hughes
*Assistant Attorney General*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief contains 12,836 words.


*s/ **Beth Jackson Hughes***_____
Beth Jackson Hughes
*Assistant Attorney General*

60

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of June, 2014, I electronically filed this brief in this Court and served a copy of the foregoing on the attorneys for the Appellant, by placing same in the United States mail, first class, postage prepaid and addressed as follows:

> Bernard E. Harcourt
> Columbia Law School
> Jerome Green Hall 515
> 435 West 116th Street
> New York, NY  10027

*s/  Beth Jackson Hughes*
Beth Jackson Hughes
*Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL  36130
(334) 242-7300
(334) 353-3637 Fax
bhughes@ago.state.al.us