No. 13-14376-P

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

DOYLE LEE HAMM,

Petitioner-Appellant,

v.

RICHARD ALLEN,

Commissioner of the Alabama
Department of Corrections,

Respondent-Appellee.

_____

**APPELLANT'S REPLY BRIEF**
_____

BERNARD E. HARCOURT
COLUMBIA LAW SCHOOL
Jerome Green Hall 515
435 West 116th Street
New York, New York 10027
Phone: (312) 404-5061
Email: beh2139@columbia.edu

*Counsel for Doyle Lee Hamm*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................ii

TABLE OF AUTHORITIES .............................................................iv

ARGUMENT AND CITATIONS TO AUTHORITY ...............................................1

I.    THIS COURT SHOULD ADDRESS THE MERITS OF MR. HAMM'S CHALLENGE
      TO THE PRIOR TENNESSEE CONVICTIONS ........................................3

      1.    THE QUESTION OF PROCEDURAL DEFAULT ..........................................7

            (a) There Is No Procedural Default ....................................7

            (b) Ineffective Assistance of Trial Counsel ..........................11

            (c) "Heads the State Wins, Tails the Petitioner Loses" .......................13

      2.    THE JOHNSON QUESTION .......................................................14

      3.    THE FIRST COSS EXCEPTION REGARDING GIDEON APPLIES IN THIS
            CASE .......................................................................15

      4.    THE SECOND COSS EXCEPTION REGARDING INNOCENCE APPLIES IN
            THIS CASE...................................................................18

II.   THE MITIGATION EVIDENCE IN THE RECORD—WHICH IS PROPERLY BEFORE
      THIS COURT—PROVES BOTH DEFICIENT PERFORMANCE AND PREJUDICE.....20

      1.    THE DALE WATSON AFFIDAVIT IS PROPERLY BEFORE THIS COURT  ....21

      2.    THE MITIGATION EVIDENCE DISCOVERED BY POST-CONVICTION
            COUNSEL WAS POWERFUL AND WOULD HAVE MADE A DIFFERENCE
            AT SENTENCING ..............................................................25

III.    *MARTINEZ* MUST APPLY TO *BRADY* CLAIMS ....................................................27

CONCLUSION ..............................................................................................................29

CERTIFICATE OF COMPLIANCE .......................................................................................31

CERTIFICATE OF SERVICE................................................................................................32

APPENDIX A ................................................................................................................33

# TABLE OF AUTHORITIES

*Cases*

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) .....................................................15

*Boykin v. Alabama*, 395 U.S. 238 (1969) ......................................................... 1, 3, 9

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................... passim

*California v. Ramos*, 463 U.S. 992 (1983) ..............................................................14

*Clark v. Dugger,* 834 F.2d 1561 (11th Cir. 1987) ....................................................9

*Cone v. Bell*, 556 U.S. 449 (2009) ...........................................................................24

*Cullen v. Pinholster*, 131 S. Ct. 1388 (2011)............................................... 2, 22, 23

*Custis v. United States,* 511 U.S. 485 (1994) ..........................................................14

*Daniels v. United States*, 532 U.S. 374 (2001) .......................................................15

*Ex parte Burgess*, 21 So. 3d 746, 754 (Ala. 2008). .................................................8

*Ex Parte Pierce*, 851 So. 2d 606 (Ala. 2000) .........................................................12

*Ex parte Pierce*, 851 So.2d 618 (Ala. 2002).........................................................10

*Gray v. Netherland*, 518 U.S. 152 (1996)..................................................................9

*Hamm v. State*, 913 So. 2d 460 (Ala. Crim. App. 2002) .............................. 2, 11, 24

*Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013)..................................................28

*Johnson v. Mississippi*, 486 U.S. 578 (1988)............................................... 4, 5, 7, 14

*Lackawanna County District Attorney v. Coss,* 532 U.S. 394 (2001)............. passim

*Martinez v. Ryan*, 132 S. Ct 1309 (2012) ....................................................... passim

*McNair v. State*, 706 So. 2d 828, 838 (Ala. Crim. App. 1997) ..............................22

*McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013) ......................................................19

*Owen v. Sec'y for Dep't of Corrs.*, 568 F.3d 894 (11th Cir. 2009) ........................10

*Rompilla v. Beard,* 545 U.S. 374 (2005) ...................................................... 2, 12, 13

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................ 2, 7, 13

*Trevino v. Thaler*, 133 S. Ct. 1911 (2013)..............................................................28

*United States v. Cronic*, 466 U.S. 648 (1984) ........................................................17

*United States v. Decoster*, 624 F.2d 196 (D.C. Cir. 1976) .....................................17

*Wainwright v. Sykes*, 433 U.S. 72 (1977) ...............................................................10


*Statutes*

28 U.S.C. § 2254. ....................................................................................................16

*Other Authorities*

Eric Freedman, Enforcing the ABA Guidelines in Capital State Post-Conviction
      Proceedings after *Martinez* and *Pinholster*, 41 Hofstra L. Rev. (2013)..............29

ARGUMENT AND CITATIONS TO AUTHORITY

Two short record excerpts demonstrate that Doyle Hamm is entitled to relief on his habeas petition and to a new sentencing hearing in state court. First, the 2,000-word plea hearing from Tennessee proves, on its face, that Mr. Hamm's wrongful prior conviction in Tennessee violated *Boykin v. Alabama*, 395 U.S. 238 (1969) and should not have been considered by the Alabama sentencing jury or judge (*see* Vol.13-PCR-522-537 in *Appendix Volume II* under tab "13-PCR-522"). Second, the 19-minute mitigation case presented to the capital jury at his death penalty sentencing hearing establishes, almost *per se*, that Mr. Hamm was denied the effective assistance of counsel at his capital sentencing trial (*see* Vol.7-TR-1212-1241 in *Appendix Volume II* under tab "7-TR-1212"). On the merits, this death penalty habeas case is straightforward and compelling. Mr. Hamm should receive a new death penalty sentencing hearing in state court.

The *Brief of Appellee* sets up a procedural obstacle course intended to prevent this Court from addressing the merits of Mr. Hamm's claims. The procedural hurdles may appear daunting, but in fact do not prevent this Court from reaching the merits. With regard to the first claim concerning the Tennessee priors, a simple decision-tree flow chart (attached as Appendix A to this *Reply Brief* and included in the *Supplemental Appendix*) easily demonstrates that Mr. Hamm is entitled to review on the merits and to relief on his habeas petition. With regard to

the second claim concerning the ineffective assistance of counsel at the penalty phase, an analysis of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), establishes that the one contested piece of evidence (Dr. Dale Watson's affidavit, included in the *Supplemental Appendix*) is properly before this Court; and a straightforward analysis of *Strickland v. Washington*, 466 U.S. 668 (1984), and *Rompilla v. Beard,* 545 U.S. 374 (2005), shows that Mr. Hamm was denied the effective assistance of counsel. With regard to the *Brady v. Maryland*, 373 U.S. 83 (1963) ("hereafter *Brady*") claim, *Martinez v. Ryan*, 132 S. Ct 1309 (2012) ("*Martinez*"), should allow this Court to overcome any possible procedural objections and review the *Brady* claim on the merits. On all three claims, the procedural hurdles are no objects to merits review.

Furthermore, the last state court judgments on each of these three grounds are contained in a judicial opinion, *Hamm v. State*, 913 So. 2d 460 (Ala. Crim. App. 2002), that adopted *all* of the factual and legal arguments made by the Alabama Attorney General in its 89-page "<u>PROPOSED MEMORANDUM OPINION</u>." The Attorney General's "<u>PROPOSED MEMORANDUM OPINION</u>" was signed by the state Rule 32 court *verbatim*, without even striking the word "PROPOSED" from the title of the court's "opinion" or making a single edit to the 89 pages. Not surprisingly, the last state court judgments are contrary to, and

involve unreasonable applications of clearly established federal law, as determined by the Supreme Court of the United States.

I.    THIS COURT SHOULD ADDRESS THE MERITS OF MR. HAMM'S CHALLENGE TO HIS PRIOR TENNESSEE CONVICTIONS

The State of Alabama does not contest, in its brief, that Mr. Hamm is actually innocent of the prior Tennessee convictions—convictions that were the key aggravating circumstance leading to his death sentence. Nor does the State contest that these Tennessee convictions were obtained in violation of *Boykin v. Alabama*, 395 U.S. 238 (1969). Instead, the State relies entirely on a series of procedural hurdles to block this Court from addressing the merits. But these hurdles are far less daunting than they first appear.

A simple decision-tree flow chart, appended as Appendix A to this *Reply Brief* and included in the *Supplemental Appendix*, demonstrates that Mr. Hamm is entitled to relief on his first claim. Mr. Hamm will first summarize the steps here, and then explain the flow chart in greater detail in the body of this brief:

1. Procedural Default: Trial counsel did not challenge the Tennessee convictions at trial or on direct appeal. But the question regarding procedural default is whether trial counsel *could have* challenged the convictions at trial or on direct appeal. There are two possible answers, both of which favor Mr. Hamm:

a.  The first possible answer is that there is no procedural bar because this claim is *not* the type of claim that should be raised at trial or on appeal, but rather is the type of claim that is properly raised after proper investigation in Rule 32 post-conviction proceedings (just like a *Brady* challenge, an ineffective assistance of counsel claim, or juror misconduct, for instance). The State did not aver, in the indictment, nor disclose to trial counsel before trial that it would attempt to prove the existence of the aggravating circumstance. Since counsel had no time to investigate the claim before trial, the challenge to the prior convictions is precisely the type of claim that should be raised in state Rule 32 post-conviction proceedings, and, therefore, there would be no procedural bar. This Court would then need to address the next question, namely Mr. Hamm's argument that *Johnson v. Mississippi*, 486 U.S. 578 (1988), entitles him to relief.

b.  The second option is that this Court initially finds a procedural obstacle, in which case this Court would need to address whether there is cause and prejudice to excuse a potential default—specifically, here, whether trial counsel was ineffective for failing to challenge the Tennessee convictions. However, *on either*

4

*resolution of this ineffectiveness inquiry*, Mr. Hamm prevails: either (i) trial counsel provided ineffective assistance of counsel, which provides cause and prejudice to excuse the procedural bar, as well as an independent ground for relief and therefore reversal; or (ii) trial counsel was *not* ineffective and *need not* have raised the challenge at the trial level or on direct appeal, in which case the claim must be a conventional Rule 32 issue that can properly be heard in state post-conviction, and this Court would have to go on to address the *Johnson* question.

2. The *Johnson* question:  Here too, both of the two possible decisions by this Court would benefit Mr. Hamm. Either (i) *Johnson v. Mississippi*, 486 U.S. 578 (1988), controls and this Court must address the merits of Mr. Hamm's challenge to his prior Tennessee convictions, in which case Mr. Hamm is entitled to relief on a simple reading of his 1978 plea transcript; or (ii) *Johnson* is superseded by *Lackawanna County District Attorney v. Coss*, 532 U.S. 374 (2001) (hereafter "*Coss*"), and this Court must go to on to address the applicability of the two *Coss* exceptions.

3. The Applicability of the First *Coss-Gideon* exception:  At this stage of the decision tree, Mr. Hamm once again benefits under either outcome. Either (i) the first *Coss-Gideon* exception applies and Mr. Hamm is

entitled to review on the merits of his claim, in which case Mr. Hamm must prevail on a simple reading of his Tennessee plea transcript; or (ii) this Court finds that the *Coss-Gideon* exception does not apply and must go on to the second *Coss* exception.

4.  <u>The Applicability of the Second *Coss-Innocence* exception</u>:  At this final stage of the decision tree, Mr. Hamm is entitled to relief either way. Either (i) the second *Coss-Innocence* exception applies and Mr. Hamm is entitled to review on the merits of his claim, in which case, again, Mr. Hamm would prevail; or (ii) this Court is unsure whether the second *Coss-Innocence* exception applies and this Court should then remand the question to the district court, as it did not pass on the applicability of the exception but merely—and erroneously—on its existence.

Regardless which path this Court takes with respect to the multiple hurdles that the State has set in its path, Mr. Hamm is entitled to relief, either (i) on his substantive ineffectiveness claim because his trial counsel failed to investigate and discover the invalidity of the prior Tennessee convictions; (ii) on the merits of his challenge to the prior Tennessee convictions; or (iii) through a remand to the district court for a first determination of the applicability of the *Coss-Innocence* exception.

1.  <u>The Question of Procedural Default</u>

The State argues, in its brief, that "[a]s the district court found, Hamm does not deny that his claim is procedurally defaulted." *Brief of Appellee* at 19. The State is in error. To be sure, Mr. Hamm *does not deny* that his trial counsel did not raise the claim at trial or on direct appeal. But Mr. Hamm *does deny* that this claim is procedurally defaulted, and in fact made this point in his initial brief. As Mr. Hamm argued in his main brief, the State's argument of procedural default is entirely inconsistent with its contention that trial counsel was effective: if indeed trial counsel was effective, as the State maintains, then this is precisely the type of claim that can properly be raised in state Rule 32 post-conviction review and therefore that cannot be procedurally defaulted. *See Appellant's Brief* at 15. The State is mistaken when it claims that Mr. Hamm concedes procedural default—he certainly does not.

(a)    <u>There Is No Procedural Default</u>

Mr. Hamm's claim is not procedurally barred because it was properly raised in post-conviction proceedings. Just like a *Brady* claim, a *Strickland* claim, or a juror misconduct claim, a *Johnson* claim falls in the category of those legal claims that benefit from collateral investigation and that the Alabama state courts allow in post-conviction litigation. The Alabama Supreme Court has recognized that Rule 32 provides an avenue for claims that could not have *reasonably* been discovered

7

in time to be raised at trial or on appeal. *Ex parte Burgess*, 21 So. 3d 746, 754 (Ala. 2008).

Mr. Hamm argued to the district court and in Rule 32 proceedings that the state prosecutor effectively ambushed trial counsel by failing to disclose pre-trial, failing to indicate in the indictment, and failing to produce in discovery the aggravating circumstance that the state intended to prove at the penalty phase. *See* Petition for Writ of Habeas Corpus (Doc. 1 in *Appendix Volume I*) at 20-21; Petitioner's Reply Brief (Doc. 20 below) at 71-74. The state prosecutor only told trial counsel at the very start of the penalty phase that the State intended to rely on the prior Tennessee convictions; and trial counsel objected to this sharp practice. Trial counsel's objection is on the very first page of the penalty phase transcript, after the state prosecutor moved to introduce its only additional sentencing evidence, namely the Tennessee prior convictions:

> We would object first on the ground that they would have been subject to discovery and we didn't see them until this morning.

Vol.7-TR-1212-1213 in *Appendix Volume II* under tab "7-TR-1212."

Mr. Hamm raised this objection as an independent ground for relief in the court below, *see* Doc. 1 at 20-21, but the district court ruled that Mr. Hamm was not entitled to know ahead of time that the State was going to rely on the Tennessee priors, emphasizing that a capital defendant has "'no right to advance notice of the aggravating circumstances on which the State will rely.'" *Slip op.* at

68 (quoting *Clark v. Dugger,* 834 F.2d 1561, 1566 (11th Cir. 1987)). More fully, the District Court wrote that:

> Federal constitutional law does not require notice by indictment or discovery to an Alabama defendant of the aggravating factors the State intends [to] rely upon to satisfy Fourth and Fourteenth Amendment due process and fair trial concerns… Nor does due process require that the defendant be apprised of the particular evidence the prosecution intends to use to prove an aggravating circumstance. *Gray v. Netherland*, 518 U.S. 152, 167-68, 116 S. Ct. 2074 (1996).

Since the state prosecutor did not in fact warn trial counsel that the State would rely on the prior Tennessee convictions—and did not need to, according to the district court and the State—this is precisely the type of extra-record claim that benefits from collateral investigation and is properly raised in state Rule 32 post-conviction proceedings.

As a legal matter, the fact that the claim could not have reasonably been discovered in time to be raised at trial or on appeal is proven by the fact that the State has argued that it was *not* ineffective for trial counsel to fail to raise the claim at trial or on direct appeal. Given that the challenge to the Tennessee convictions is meritorious on its face—a simple reading of the plea transcript from 1978 establishes that it violated *Boykin*, *see Appellant's Brief* at 11 *et seq.*—to say that trial counsel was not ineffective is to concede that the claim could be raised in post-conviction review. The Alabama state courts have recognized this explicitly: a meritorious constitutional claim cannot both be defaulted for failure to raise it at

9

trial or on appeal and yet not give rise to a valid ineffective assistance of counsel claim. *Ex parte Pierce*, 851 So.2d 618 (Ala. 2002) provides the clearest statement of this principle. As the court there recognized, because counsel reasonably should have known about a meritorious jury misconduct claim, but did not raise it, he was necessarily ineffective. The reverse is the case here: if counsel was not ineffective, on a meritorious claim where prejudice is clear, then his performance must not have been deficient, and therefore he must not have known and should not have known about the meritorious claim. Therefore there would be no procedural bar. The correctness of state imposed procedural bars is a federal question, and this Court should find that the procedural bar was incorrectly applied. *See Owen v. Sec'y for Dep't of Corrs.*, 568 F.3d 894, 908 (11th Cir. 2009); *see also Wainwright v. Sykes*, 433 U.S. 72, 85-86 (1977) (interpreting state procedural rule to determine if procedural bar should apply).

Nevertheless, if this Court initially is inclined to find a procedural obstacle, this Court must next address the claim of ineffective assistance of counsel as cause and prejudice to excuse any default, and in the process will see that either (i) there was ineffective assistance of counsel, which is actually a substantive ground for relief, or (ii) that the claim can properly be raised in state Rule 32 proceedings.

(b)    <u>Ineffective Assistance of Trial Counsel</u>

First, as a procedural matter, the final state court ruling regarding trial counsel's ineffectiveness is clearly in error. The state court held that "Hamm's assertion that Alabama trial counsel had a duty to challenge in a Tennessee court the merits of the nine-year-old convictions so that he could then prevent consideration of the prior convictions is not supported by any legal authority," *Hamm v. State*, 913 So. 2d 460, 479 (Ala. Crim. App. 2002). That is contrary to clearly established federal law: *Strickland* establishes that trial counsel had a duty to *investigate*, which was not discharged here. Accordingly, the last state court ruling is contrary to well established federal law. A duty to investigate claim was clearly presented to the state courts, and the state court opinion unreasonably rejects that claim as unfounded in federal law.

The *Brief of Appellee* similarly argues that "As the district court found, Hamm failed to prove that the determination by the Alabama Court of Criminal Appeals … is 'contrary to, or involved an unreasonable application of, clearly established' Supreme Court precedent." *Brief of Appellee*, at p. 23-24. This too is incorrect, for the same reason: the final state court ruling—namely, that there was no legal authority for the claim—is an unreasonable application of *Strickland*, which governed long before Mr. Hamm raised this claim of ineffective assistance of counsel.

11

The demonstrable proof lies in the Supreme Court's decision in *Rompilla v. Beard*, 545 U.S. 374 (2005), which was decided contemporaneously with Mr. Hamm's federal habeas corpus case. *Rompilla* held, on similar facts, that there was ineffective assistance of counsel for failure to investigate properly the transcript of a prior conviction. As a procedural matter, *Rompilla* is on all fours with Mr. Hamm's case.

Second, as a substantive matter, the State has effectively conceded that trial counsel was ineffective. By arguing to this Court, to the district court, and to the state courts that the claim *could have been raised* on trial or appeal, the State implicitly argues that counsel knew or should have known about the invalidity of the convictions. *See Ex Parte Pierce*, 851 So. 2d 606, 616 (Ala. 2000). And if counsel knew or should have known about the invalidity of the prior convictions, counsel plainly was ineffective to not further investigate and challenge them. Mr. Harris himself admitted that he did no investigation beyond obtaining the record of the convictions. *See* Vol.21-PCR-16. If the State believes that counsel *should have known* that the convictions were invalid, then there was an unconscionable failure to investigate and challenge the priors—a clearly meritorious challenge.

The leading Supreme Court case on ineffective assistance of counsel, *Strickland*, focused precisely on *pre-trial investigation*. The Supreme Court required counsel "to make *reasonable investigations* or to make a reasonable

decision that makes particular investigations unnecessary." *Id.* at 691 (emphasis added).

Deficient performance is clearly established here, as it was in *Rompilla v. Beard*, 545 U.S. 374 (2005). Here too, but on substantive grounds, *Rompilla* provides guidance for this Court. Prejudice is also clearly established in this case. Any rational counsel that had investigated the convictions and simply read the plea transcript would have challenged them either in Tennessee or at trial in Alabama, and would have had them excluded. There is therefore a more than reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

(c) "Heads the State Wins, Tails the Petitioner Loses"

It is important to stop here for a moment and to be honest about what is going on in this case because Mr. Hamm's life depends on it. The State is making a "heads I win, tails you lose" argument. The State does not contest that Mr. Hamm should prevail on the merits of his first claim. Instead, the State is advancing mutually inconsistent procedural hurdles: (a) on the one hand, the State argues that trial counsel should have known ahead of time that the State was going to rely on the prior Tennessee convictions, should have investigated and should have raised the meritorious claim at trial, on pain of procedural default; but (b) on the other hand, the State argues that trial counsel was not ineffective for failing to do

anything regarding what would have been a meritorious challenge. In other words, trial counsel should have known about a concededly meritorious claim, but it is not ineffective assistance of counsel to do nothing about that meritorious claim. The State should not be allowed to advance these two mutually inconsistent arguments. Mr. Hamm should be allowed to respond in the alternative to the State's inconsistent procedural obstacles. But the State should not be allowed to make mutually inconsistent arguments where a man's life hangs in the balance.

2. The *Johnson* Question

Mr. Hamm has argued that this Court should be guided by *Johnson v. Mississippi*, 486 U.S. 578 (1988), on the merits of the challenge to the improper admission of the prior Tennessee convictions. The reason is simple: *Johnson* is a death penalty case that has never been overruled or limited *in the capital context*. Death is different, and it calls for special care in its administration. *See California v. Ramos*, 463 U.S. 992, 998-99 (1983) ("The Court, as well as the separate opinions of a majority of the individual Justices, has recognized that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.")

The State asserts, in its brief, that *Coss* applies in the capital context. But there is no legal authority for that claim. The entire line of cases that led to *Coss* involved only non-capital sentencing. *Custis v. United States,* 511 U.S. 485 (1994),

involved a non-capital federal sentence (at the time there was no federal death penalty); *Daniels v. United States*, 532 U.S. 374 (2001) was a case, again, about an ordinary "federal sentence;" and *Coss* involved a case about an ordinary "criminal sentence." *Coss*, 532 U.S. at 403-404. None of these cases deal with the validity of a death sentence. The State's argument that "Hamm's case is not distinguishable in any relevant way from *Coss*" is incorrect. *Brief of Appellee* at 34. Particularly since the limiting considerations in *Coss are merely prudential, and not jurisdictional*, the greater degree of scrutiny required by *Ramos* and the many other Supreme Court cases holding that "death is different" requires that those prudential considerations not apply to the death penalty context.

Moreover, the injustice of applying *Coss* retroactively to Mr. Hamm is clear. Mr. Hamm, under AEDPA, does not get the benefit of favorable changes in case law; he should not receive the burden of unfavorable changes. The legal principles underlying *Bouie v. City of Columbia*, 378 U.S. 347 (1964), counsel against applying *Coss* retroactively. *Johnson* provides the kind of careful review that is called for in death cases.

However, even if this Court finds that *Johnson* has been limited by *Coss*, this Court must address the *Coss* exceptions.

3.  The First *Coss* Exception Regarding *Gideon* Applies in this Case

Mr. Hamm made numerous arguments showing why *Coss* does not bar

review here. *See Brief of Appellant* at p. 24-28. The State now argues that the prudential limitations in *Coss* are somehow subject to AEDPA deference to a (non-existent) state court decision. *Brief of Appellee* at.37, lines 6-9; *see also id.* at 38, lines 9-11. The State keeps repeating that "Hamm, therefore, has failed to sustain his burden of proving that the state court decision is contrary to or involves an unreasonable application of established Supreme Court precedent as required by 28 U.S.C. § 2254(d)." *Id.* However, the state courts in Mr. Hamm's case have never passed on the limits of a federal court's scope of review under § 2254, nor would they ever have occasion to do so. This issue cannot be determined on the merits in state court, and is therefore not subject to AEDPA's deferential standard of review. *See* 28 U.S.C. § 2254(d). Instead, this aspect of the District Court's decision should be reviewed *de novo* as a pure question of law.

This case falls within the *Gideon* exception to *Coss*. Regarding the unconstitutionality of his Tennessee pleas, Mr. Hamm was constructively denied counsel at the Tennessee trial level, was completely denied counsel on appeal in Tennessee, was denied effective representation at trial and direct appeal in Alabama, and was denied effective counsel at the Rule 32 hearing. Mr. Hamm has been effectively denied counsel throughout, to the point where no court to date has ever reviewed the merits of his claim. This is a clear violation of the principle of equity at the heart of the *Martinez* decision. The *Martinez* Court was motivated by

the need to create a remedy to address inequitable situations in which a habeas petitioner had a substantial meritorious claim that had never been heard in court on the merits. This court should be guided by the same principles.

The State also argues, with regard to the first *Coss* exception, that the Supreme Court has never extended the exception to any claim other than the failure to appoint counsel at trial. However, the Supreme Court has made it clear that the constructive denial of counsel is a *Gideon* violation. *See United States v. Cronic*, 466 U.S. 648, 654 & n.11 (1984). *Cronic* states that the Sixth Amendment right to Assistance of Counsel "begins with the appointment of counsel, it does not end there. In some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided. Clearly, in such cases, the defendant's Sixth Amendment right to 'have Assistance of Counsel' is denied." (quoting *United States v. Decoster*, 624 F.2d 196, 219 (D.C. Cir. 1976) (MacKinnon, J., concurring)). This type of denial of assistance of counsel is precisely what is meant by a *Gideon*-type violation.

In Tennessee, Mr. Hamm was clearly denied his *Gideon* right to counsel. The conduct of his trial counsel, Mr. Travis Gobble, qualifies under the second category of constructive denial of counsel recognized in *Cronic*: the failure to subject the prosecution's case to meaningful adversarial testing. *Cronic*, 466 U.S. at 659. Mr. Gobble's performance reached *Gideon*-level deficiency because he

essentially forced his client to plead guilty without even ascertaining whether he was actually innocent of the charges. *See* Vol.13-PCR-574 et seq. (Affidavit of Mr. Travis Gobble). That is a blatant failure to subject the prosecution's case to the meaningful adversarial testing required to constitute the assistance of counsel. Moreover, Mr. Gobble wrongly agreed that Mr. Hamm had no right to appeal his guilty plea, *see* Vol.13-PCR-537 in *Appendix Volume II* (last page at tab "13-PCR-522), which resulted in an outright denial of his right to counsel on appeal. To add to that, trial counsel in Alabama failed entirely to investigate the Tennessee priors, resulting again in another blatant failure to subject the prosecution's sentencing case to meaningful adversarial testing. The combination of all these *Gideon* errors is exactly the type of situation envisaged by the Court in *Martinez*. Therefore Mr. Hamm has sufficiently alleged a *Gideon* violation, one cognizable as an exception to the limiting considerations in *Coss*.

    4.  <u>The Second *Coss* Exception Regarding Innocence Applies in this Case</u>

The applicability of the second exception to *Coss*—actual innocence of the prior convictions—is also a matter of *de novo* review by this Court. As a preliminary matter, as Mr. Hamm demonstrated in his main brief, this second exception is the narrower reading of the *Coss* decision and therefore binding on all federal courts. *See Brief of Appellant* at 27. The State is therefore incorrect to assert in its brief that "this exception does not apply because it was not part of the

holding of the Supreme Court." *Brief of Appellee* at 38. Particularly as the Supreme Court has recognized actual innocence related exceptions in related contexts post-*Coss*, *see e.g. McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), this Court should hold that the *Coss* actual innocence exception is viable and may apply in this case.

On the substance, the State's primary argument is that Mr. Hamm presented his evidence to the Tennessee state courts and on federal habeas review in the Sixth Circuit, therefore placing him "'outside of the type of petitioner arguably envisioned by Justice O'Connor.'" *Brief of Appellee* at 38 (quoting *Slip op.* at 63-64). But Mr. Hamm is precisely the type of petitioner envisioned by Justice O'Connor's exception. In Mr. Hamm's case, the Tennessee state courts and the Sixth Circuit denied review *solely on timeliness grounds* (which would not have applied in 1987 at the time of the capital trial). Justice O'Connor's opinion states that in the situation where a petitioner obtains compelling evidence of his innocence after the time for direct and collateral review has expired, "a habeas petition directed at the enhanced sentence may *effectively* be the first and only forum available for review of the prior conviction." *Coss*, 532 U.S. at 406 (emphasis added). Justice O'Connor's emphasis on *effective* review demonstrates precisely the problem with the State's argument: a "review" of the convictions that is decided against the petitioner solely on timeliness grounds is not *effective* review.

In any event, if this Court is not persuaded, it should remand to the district court for a first determination of this legal question. The district court erroneously held that the actual innocence exception was not part of the holding of the Supreme Court in *Coss*, and therefore did not address Mr. Hamm's argument. The logical sequence of the decision-tree flow chart in Appendix A necessarily implies that either Mr. Hamm is entitled to habeas relief or the case should be remanded to the district court.

II.    THE MITIGATION EVIDENCE IN THE RECORD—WHICH IS PROPERLY BEFORE THIS COURT—PROVES BOTH DEFICIENT PERFORMANCE AND PREJUDICE

The State does not contest that trial counsel, Hugh Harris, presented a death penalty mitigation case that lasted about 19 minutes. Despite a wealth of mitigation evidence—over 2,000 pages in the record before this Court proving, among other things, clear brain damage—trial counsel only presented the testimony of Mr. Hamm's sister and a cursory direct examination of a bailiff.

The State nevertheless raises, again, a procedural obstacle regarding one piece of evidence—although it does not in any way challenge the consideration of the remainder of the Rule 32 post-conviction record on the question of IAC—and argues, on the merits, that Mr. Harris's performance was constitutionally sufficient. Here too, the procedural obstacle can be overcome, and Mr. Hamm is entitled to relief on the merits.

1. <u>The Dale Watson Affidavit Is Properly Before This Court</u>

The State raises only one technical disagreement with Mr. Hamm regarding evidence related to the ineffectiveness claim: the affidavit of Dr. Dale Watson, which is included in the *Supplemental Appendix* filed contemporaneously with this *Reply Brief*. The State contends that the affidavit of Dr. Dale Watson should be excluded because Mr. Hamm could have called him to testify at the Rule 32 hearing but did not. This argument is without substance.

At the Rule 32 hearing, Mr. Hamm presented all of his evidence *pro se*, and the trial court admitted it all into the record of the proceedings. *See* Vol.21-PCR-5-7. Mr. Hamm stated, addressing the Rule 32 judge, speaking on his own behalf, in his own words:

> MR. HAMM:  I ask that the Court admit into evidence and consider in
>
> support of my Rule 32 petition all of the evidence that I sent to the courts.

Vol.21-PCR-5.

The Rule 32 judge then addressed a few other matters, and came back to this request. The judge included all of Mr. Hamm's evidence in the record of the Rule 32 proceedings. The Rule 32 judge stated:

> THE COURT: There is one other issue that you raised that I forgot.
>
> MS. NAIL:  The information that was sent to the Court last week.

THE COURT:  Yes. Yes. All of that has been file stamped and included as a

part of the Court record.

MR. HAMM:  Thank you.

THE COURT:  Thank you.

Vol.21-PCR-6-7.

Dr. Watson's affidavit is therefore in the state record and properly before

this Court. The State argues to the contrary by quoting from *Cullen v. Pinholster*,

131 S. Ct. 1388 (2011), in its *Brief of Appellee* at 45. As the State notes, *Pinholster*

holds that "review under § 2254(d)(1) is limited to the *record* that was before the

state court that adjudicated the claim on the merits." *Pinholster,* 131 S. Ct. at 1398

(emphasis added). But this quotation actually supports Mr. Hamm. The "record" in

Alabama consists of all the evidence presented to the state courts. *See McNair v.

State*, 706 So. 2d 828, 838 (Ala. Crim. App. 1997) ("the affidavits were not

admitted into evidence, however, they are in the record.").

Now, at the Rule 32 hearing, the attorney who had been appointed to

represent Mr. Hamm at his hearing, Ms. Pam Nail, then failed to call *any* of Mr.

Hamm's requested witnesses, including Dr. Watson. Dr. Watson made himself

available to her and was willing to testify, *see* Vol.11-PCR-182 (Supplemental

Appendix), but Ms. Nail *did not call any of Mr. Hamm's mitigation experts.* For

that reason, the State moved that the state court not to consider Dr. Watson's

affidavit, and the state court agreed not to consider it. Vol.21-PCR-62. But Dr. Watson's affidavit is nevertheless in the record of the Rule 32 proceedings and thus properly before this Court.

This sequence of events would also give rise to a clear application of *Martinez*. The State nevertheless argues that no *Martinez* issue is raised "because Hamm's ineffective assistance of counsel claim is not procedurally defaulted." *Brief of Appellee* at 45-46.

As a matter of law, the State is again trying to argue two irreconcilable positions. On the one hand, if the State is right that there is no procedural default related to the affidavit, then there is no procedural rule preventing consideration of it here, and in fact it must be considered under the *Pinholster* rule. On the other hand, if the State argues that Dr. Watson's affidavit cannot be considered because it was not admitted in the state court, *see Brief of Appellee* at 45, then it is relying on a *procedural rule* to preclude consideration of the affidavit, which it concedes would permit application of *Martinez*. On either theory, the Watson affidavit is properly before this court.

The State's position on *Martinez* makes little sense practically as well. Alabama's position bizarrely treats completely defaulted claims *more favorably* than partially presented claims. If Alabama's position prevails here, *Martinez* can be made irrelevant by counsel merely mentioning ineffective assistance of counsel

but not fully substantiating that claim. The promise of *Martinez* should not be limited to the rare situation where no ineffective assistance of counsel claim at all is made in state post-conviction proceedings. Instead, the better reading of *Martinez* is that if an attempt to make an ineffective assistance of counsel claim is made, but due to ineffective assistance of post-conviction counsel any otherwise proper evidence is partially precluded, that *Martinez* establishes cause for that partial preclusion.

The State does not contest that if a *Martinez* issue is raised, Mr. Hamm would be entitled to consideration of the Dr. Watson affidavit. Pam Nail's performance was clearly deficient in not calling available mitigation experts to testify, and the prejudice is plain: Dr. Watson's affidavit establishes that Mr. Hamm is suffering from "neuropsychological deficits and/or brain dysfunction" with "structural damage" to both left and right hemispheres—or in layman's terms "brain damage"—*see* Vol.11-PCR-164-65, 168 (in *Supplemental Appendix*), evidence that would have been extremely powerful before the jury in sentencing.

The Alabama state courts did not consider the effectiveness of Rule 32 counsel, nor the weight of the Dr. Watson affidavit, and therefore did not and could not have resolved all of these issues, including the influence of Dr. Watson on the jury. *Hamm v. State*, 913 So. 2d at 479, 487. Therefore the ineffective assistance of counsel claim, as supplemented by the Dr. Watson affidavit, was not decided on

the merits in the state court, and therefore is entitled to *de novo* review here. *See Cone v. Bell*, 556 U.S. 449, 472 (2009) (claims not determined on the merits in state court proceedings are reviewed *de novo*.)

2. <u>The mitigation evidence discovered by post-conviction counsel was powerful and would have made a difference at sentencing</u>

With regard to this claim of ineffective assistance of trial counsel, the State has not raised a procedural bar. Instead, the State argues that the evidence discovered by post-conviction counsel would have made no difference at sentencing. On the merits of this issue, Mr. Hamm would refer the Court back to his initial brief, but makes two points here. *See Appellant's Brief* at 33 et seq.

First, the State argues that trial counsel, Mr. Harris, would not have introduced prior criminal records at the penalty phase. *Brief of Appellee* at 46. It is crucial for this Court to distinguish here between prior criminal records of the defendant, Mr. Hamm, and those of his family members, including brothers and sisters. Obviously, trial counsel at the penalty phase of a death penalty trial is not going to introduce unsolicited additional evidence of a defendant's prior record. But that is not the issue here. The detailed and extensive records were about the criminal history of *Doyle Hamm's father, uncles, brothers and sisters*. Those are the records that are at stake here and they are overwhelming (the complete records are in the post-conviction record at PCR-978-1276; *see* a sample in *Appellant's*

*Brief* at 38 *et seq.*). They would have established the full weight of the mitigation evidence regarding Mr. Hamm's family background.

Second, it is important to emphasize, in the trial court's order sentencing Mr. Hamm to death, quoted at length by the State in its brief, the following sentences:

> Ruthie is slightly older than the Defendant and has no record of criminal activity. She is married and is a housewife…. Defendant has another Sister, Linda Hamm Murphree, age 29, who is married to Johnny Murphree and who appears to be a nice person who has never been in trouble…. The fact that the Defendant and all his Brothers have prison records is certainly an indication that their Father was a terrible influence on his children…. It is to be noted, however, that the two girl children were able to rise above this influence and appear to be good citizens.

*Brief of Appellee* at 47-48 (quoting *Hamm*, 913 So. 2d at 486-487).

While it is certainly the case that Ruthie and Linda are wonderful and remarkable women, it is worth noting that in the voluminous family criminal records that Mr. Harris ignored, there is evidence, for instance, that Ruthie Murphy was charged in case # CC-77-132, in Colbert County, Alabama, with *Assault with Intent to Murder* on June 14, 1977, *see* Vol.11-PCR-200, and that Linda was charged on June 16, 1978, with public drunkenness in case # 4,021 in the City of Boonville, Mississippi. *See* Vol.12-PCR-202. As Mr. Hamm argues in his main brief at 47-48, the failure to introduce this evidence not only establishes deficient performance by trial counsel, but also prejudice.

26

In fact, in this case there is *direct evidence of prejudice*. At the Rule 32 hearing, Mr. Harris testified that:

> I will never forget that in discussions with the jury after the case was over, them talking about his history … they indicated that they felt like that if Ruthie and her sister could have gone through life without being involved in crime that the boys could have too.

Vol.21-PCR-41 (Transcript of Rule 32 Hearing at 41). The evidence of Ruthie and Linda's own criminal involvement would have belied the jury's primary reason for imposing a death sentence.

### III.  THE SUPREME COURT'S RULING IN *MARTINEZ* MUST APPLY TO *BRADY* CLAIMS

The State's principal response to Mr. Hamm's *Brady* claim is, again, a set of procedural obstacles. But here too, they can be overcome. This Court should address the merits of the *Brady* claim.

The State's response tracks the district court's holding that *Martinez* does not apply to *Brady* claims. *Slip op.* at 47. As a preliminary matter, it is important to emphasize that the district court's ruling is subject to *de novo* review by this Court.

The *Brady* claim in this case was properly before the state Rule 32 court. Mr. Hamm specifically introduced the records of Douglas Roden *pro se* and asked the Rule 32 court to "admit into evidence and consider in support of my Rule 32 Petition all of the evidence that I sent to the courts." Vol.21-PCH-5. The state court granted that motion. Vol.21-PCH-6. The Roden records constitute the bulk of a whole volume of the record in the Rule 32 proceedings and before this Court. *See*

Vol.15-PCR. There is no possibility that the state court could have missed them or ignored them after having admitted them. The state court received all the records into evidence, and agreed to consider that evidence, *see* Vol.21-PCH-6.

However, even if this Court determines that Mr. Hamm failed to properly present his *Brady* claim, *Martinez* should provide an escape valve. The Court held in *Martinez* that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315. The Supreme Court extended this reasoning in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).

The Court's rulings in *Martinez* and *Trevino* should apply equally to claims of ineffective assistance of post-conviction counsel for failure to adequately litigate a *Brady* claim. To be sure, this is an open question in this Circuit. The Ninth Circuit recently held, in *Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013), that *Martinez* should not so extend; however, the more cogent analysis is in Judge Fletcher's dissenting opinion. As Judge Fletcher suggests,

> The Court has provided several reasons justifying its new equitable rule excusing procedural default…. Each of these applies with equal force to a defaulted *Brady* claim…. [J]ust as for a trial-counsel IAC claim, it is important for a *Brady* claim that a prisoner have effective assistance in developing evidence to support his claim. For both trial-counsel IAC and *Brady* claims, much—sometimes all—of the important evidence is outside the trial record. A prisoner acting pro se, or with only the assistance of ineffective collateral review counsel, cannot perform the necessary investigative work to collect and present the evidence in an initial-review collateral proceeding.

28

*Hunton*, 732 F.3d at 1129-30 (Fletcher, J. dissenting).

In a thorough law review article, Professor Eric Freedman demonstrates persuasively that "the equitable rationale of *Martinez* should apply to a number of claims other than ineffective assistance of trial counsel..... [T]here are other basic trial rights in that category which by their very nature can only be effectively enforced in post-conviction proceedings." Eric Freedman, Enforcing the ABA Guidelines in Capital State Post-Conviction Proceedings after *Martinez* and *Pinholster*, 41 Hofstra L. Rev. (2013). *Brady* claims are clearly of this type. The *Martinez* decision rested in part on the fundamental right to counsel; the right to access to exculpatory evidence is equally fundamental, and deserving of the same protection. *Martinez* should apply to *Brady* claims in the same manner it applies to *Strickland* claims.

CONCLUSION

For the foregoing reasons, this Court should address the merits of Mr. Hamm's three claims. To avoid substantive review by means of purely procedural obstacles, especially with regard to the prior Tennessee convictions which have *never* been reviewed on the merits, would amount to a violation of the principles of equity that drove the Supreme Court's holding in *Martinez*. For the above reasons, Doyle Hamm respectfully urges this Court to reverse the District Court's ruling and grant federal habeas corpus relief.

Respectfully submitted,

BERNARD E. HARCOURT
COLUMBIA LAW SCHOOL
Jerome Green Hall 515
435 West 116th Street
New York, New York 10027
Phone: (212) 854-1997

*Counsel for Mr. Hamm*

July 14, 2014

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,998 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Eleventh Circuit Rule 32-4. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word, in 14-point Times New Roman font.

BERNARD E. HARCOURT
COLUMBIA LAW SCHOOL
Jerome Green Hall 515
435 West 116th Street
New York, New York 10027
Phone: (212) 854-1997

*Counsel for Mr. Hamm*

July 14, 2014

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2014, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Beth Jackson Hughes
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL 36130


BERNARD E. HARCOURT
COLUMBIA LAW SCHOOL
Jerome Green Hall 515
435 West 116th Street
New York, New York 10027
Phone: (212) 854-1997

*Counsel for Mr. Hamm*

July 14, 2014

# Appendix A

**Decision Tree Flow Chart re.
Claim I (Tennesee Priors)**



*Blue Brief* at 15
*Red Brief* at 19, 39
*Gray Brief* at 7 *et seq.*

Procedural Default because claim could have been raised at trial or on appeal

Yes

*Blue Brief* at 16 *et seq.*
*Red Brief* at 20 *et seq.*
*Gray Brief* at 11 *et seq.*

Was trial counsel ineffective?

Yes → Hamm prevails on substantive IAC claim

No. Therefore by logic and the *Pierce* cases, Claim I could not be procedurally defaulted and must be a valid Rule 32 type claim, because if counsel was effective and was not aware of the claim, it "could not have been raised" under the *Pierce* reading of Ala R. Crim. P. 32.2(a)(3) and (5).

No, Claim I is a Rule 32 type claim

*Blue Brief* at 24
*Red Brief* at 32 *et seq.*
*Gray Brief* at 14-15

Does *Johnson* control resolution of Claim I?

Yes → Hamm prevails on substantive claim I

No, *Coss* Applies

*Blue Brief* at 24
*Red Brief* at 36-38
*Gray Brief* at 15-18

Does the *Coss Gideon* exception apply?

Yes → Hamm prevails on substantive claim I

No

*Blue Brief* at 24-28
*Red Brief* at 38-39
*Gray Brief* at 18-20

Does the *Coss* actual innocence exception apply?

Yes → Hamm prevails on substantive claim I

Uncertain (District Court never passed on question)

Remand to District Court